IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| VISTEON CORPORATION, et al. | : | Case No. 09-11786 (CSS) |
| | : | |
| | : | |
| Debtors. | : | |
| | : | Objections Due: July 13, 2009 at 12:00 p.m.[1] |
| | : | Hearing Date: July 16, 2009 at 2:00 p.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION
FOR ENTRY OF AN ORDER AUTHORIZING THE IMPLEMENTATION
OF THE VISTEON INCENTIVE PROGRAM**

In support of her objection (the "Objection") to the Debtors' Motion for Entry of an Order Authorizing the Implementation of the Visteon Incentive Program (the "Motion"), Roberta A. DeAngelis, the Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through her undersigned counsel, states as follows:

1. This Court has jurisdiction to hear the above-referenced Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard

---

[1] The objection deadline was extended by agreement of the parties.

to the above-referenced Objection.

## PRELIMINARY STATEMENT

4. The U.S. Trustee objects to the Motion on the grounds that the Debtors have not satisfied their burden under 11 U.S.C. §§ 503(b)(1)(A) and 503(c) to demonstrate, *inter alia*, that (i) payments under the Incentive Plans (as defined below) are not retention payments to "insiders,"(ii) the Incentive Plans are justified by the facts and circumstances of these cases, and (iii) the Incentive Plans represent the "actual, necessary cost of preserving the estate[s]." Second, the U.S. Trustee objects to the Debtors' assertions that section 503(c)(3) simply subjects the plans to review under the business judgment rule. The Debtors must demonstrate that the Incentive Plans are necessary to preserve the value of the Debtors' estates and are "justified by the facts and circumstances of the case." As noted by both Ford Motor Company and General Motors in their respective objections, the Incentive Plans are not justified by the facts and circumstances given that "Ford, GM and Chrysler, as well as countless publicly traded suppliers to the OEMs, have all announced that no annual incentive bonuses will be paid out for 2009." (See Ford Motor Company Objection, Docket No. 523, ¶ 17). Additionally, as noted by GM and Ford (the "Debtor Proposed DIP Lenders"), the Debtors do not currently have sufficient funding to pay for the proposed plan. Accordingly, this court should not authorize the Debtors to offer bonuses that they cannot fund. Moreover, as GM has noted, over 250,000 employees in the automotive industry have been severed in the last 12 months. Under these circumstances, bonuses of this magnitude are not warranted.

## BACKGROUND

5. On May 28, 2009 (the "Petition Date"), the Debtors[2] filed voluntary petitions for

---

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

6. On June 8, 2009, the UST appointed a statutory committee of unsecured creditors.

7. On June 30, 2009, the Debtors filed the Motion, along with a motion to shorten notice. The Motion seeks approval of (i) a key employee incentive plan (the "KEIP") and (ii) the 2009 annual incentive plan (the "AIP") and (iii) the current long-term incentive plan (the "LTIP", together with the KEIP and the AIP, the "Incentive Plans"). Each plan covers insider and non-insider employees. The KEIP is a new plan, but the AIP and LTIP are continuations of prepetition incentive programs.

8. As set forth in the Motion, pursuant to the KEIP, 100 key employees will be entitled to an incentive payment after meeting four metrics: (i) EBITDA less Cap-Ex performance for 3rd quarter 2009, (ii) EBITDA less Cap-Ex performance for 4th quarter 2009, (ii) confirmation of a plan of reorganization, and (iii) emergence from chapter 11. Each metric represents one-quarter of the incentive target levels. In addition, the percentage of payout under the first two metrics depends on the percentage of the target obtained. The maximum payout under the KEIP would be $30.1 million, of which 39% would be payable to insiders and 61% would be payable to non-insiders. (Motion, ¶ 16-19).

9. Pursuant to the AIP, 2,050 active and 400 inactive[3] employees are eligible to receive a bonus in February 2010 based upon free cash flow ("FCF") and product quality targets set by the board of directors for 2009 - currently negative $89 million and at or below 20 defects per million,

---

[3] The UST objects to the request for authority to make payments to inactive employees under the AIP in the absence of additional information justifying such payments.

respectively. The quality metric accounts for 25% of the target award and the FCF accounts for 75% of the award. If the quality metric is met, the payout is approximately $9.5 million, with 10% of that amount going to insiders. The Debtors assert that the FCF metric is unlikely to be met. (Motion, ¶ 23).

10. The LTIP is based on a three-year performance period with separate performance criteria for each year. The incentive awards consist of equity and cash. The Debtors indicate that the equity portion has been lost due to the bankruptcy filing but that target metrics have already been achieved to allow payouts of $3.6 million in 2010 and $2.6 million in 2011. An additional $6 million can be earned by achieving "certain performance objectives"[4] in 2009 and 2010, of which 38% would be payable to insiders.

## GROUNDS/BASIS FOR RELIEF

The Proposed Incentive Plans Violate Section 503(c)(1) of the Bankruptcy Code

11. The Debtors have not demonstrated in the Motion that the proposed Incentive Plans are appropriate under section 503(c) of the Bankruptcy Code. While the proposed KEIP contains certain performance targets, the targets based on approval of a plan of reorganization and emergence from chapter 11 appear to have retention as their primary purpose given that plan approval and emergence are the goals of a successful chapter 11 case. The Debtors have essentially guaranteed some payment to the insiders[5] so long as a plan is confirmed and goes effective. As fiduciaries of the Debtors' estates, these insiders already have a fiduciary obligation

---

[4] The Motion does not define the LTIP performance objectives.

[5] The Debtors allege that the Incentive Plans cover 12 "insiders" as defined in section 101(31) of the Bankruptcy Code. The U.S. Trustee has requested information identifying the titles of the remaining participants and reserves the right to raise additional objections after review of such information.

4

to pursue confirmation of a plan. The Motion also does not contain adequate information to support the Debtors' assertion that the KEIP targets based on EBITDA less Cap-Ex are performance-based. In particular, the target for the 3rd quarter 2009 is not disclosed. The Motion also does not disclose whether the insiders are required to perform at an objectively higher level than in the past.

12. With respect to the LTIP, the Motion does not disclose the performance objectives that the participants are required to meet. Such objectives must be disclosed in order for the Court to make a determination as to whether the LTIP is primarily retentive, or performance based.

13. Under section 503(c)(1) of the Bankruptcy Code, the Debtors must, "based on evidence in the record," demonstrate all three of the required elements set forth in section 503(c)(1). Section 503(c)(1), provides, in pertinent part, as follows:

> (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—
>
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
> (B) the services provided by the person are essential to the survival of the business; and
> (C) either—
>> (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>> (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during

such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

14. The limited case law that has developed under 11 U.S.C. § 503(c)(1) since the enactment of the 2005 reforms suggest that, in order for a debtor to avoid running afoul of section 503(c)(1)'s restriction on retention pay, the debtor must demonstrate that its bonus plan is tied to significant hurdles which are difficult to achieve. *See In re Dana Corp.*, 358 B.R. 567, 582 (Bankr. S.D.N.Y. 2006) (court found that benchmarks for the debtors' long-term incentive plan "are difficult targets to reach and are clearly no 'lay-ups'"); *In re Nobex Corp.*, 2006 Banrk. LEXIS 417 (Bankr. D. Del. Jan. 19, 2006)(plan that provided for payments exclusively upon improvement to "stalking horse" bid did not violate 11 U.S.C. § 503(c)(1)).

15. The description of the KEIP contained in the Motion suggests that, at least as to certain of the metrics, the KEIP payments are not intended to induce a particular level of performance by the insiders, but instead to induce them to remain employed until confirmation and emergence from chapter 11. If the only incentive created by the KEIP is to induce the insiders to remain with the Debtors until such time, the Motion must be denied because it fails to comply with section 503(c)(1).

16. The lack of true performance benchmarks for the metrics suggests that the KEIP is intended as a disguised retention bonus instead of a true incentive plan. The confirmation and emergence targets do not appear to be meaningful when the goal of this case (as in any chapter 11 case) is to confirm a plan of reorganization and emerge from bankruptcy protection. Indeed,

6

debtors operating under chapter 11 have a fiduciary obligation to either file a plan or seek conversion of their cases "as soon as practicable.' 11 U.S.C. § 1106(a)(5); see 11 U.S.C. 1107(a). The Debtors have thereby essentially guaranteed a payout of 50% of the proposed KEIP awards that range from 60-250% of base salary to those insiders who simply remain with the Debtors until confirmation and emergence from chapter 11.

<u>Bankruptcy Code §503(c)(3) does not Incorporate the Business Judgment Standard</u>

17. The Debtors assert that the Incentive Plans may be approved pursuant to section 363(b) or section 503(c)(3) of the Bankruptcy Code and that the business judgment rule is the proper standard for determining whether the Incentive Plans may be approved. While certain of the payments under the Incentive Plans appear to be incentive-based, the payments thereunder may not be justified solely by reference to section 363(b). Section 503(c)(3), added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, requires the Debtors to show that the Incentive Plans are justified by the facts and circumstances of the case.

18. The Debtors' assertion that section 503(c)(3) of the Bankruptcy Code subjects the proposed payments to review under the business judgment rule fails to accord proper meaning to the new limitations imposed by section 503(c)(3) of the Bankruptcy Code. Section 503(c)(3) states that "notwithstanding subsection (b), there shall neither be allowed nor paid– other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition." In enacting section 503(c), Congress clarified and specifically limited what might otherwise be allowed as an administrative expense under section 503(b).

7

19. Section 503(b) of the Bankruptcy Code provides that:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate including—
> (i) wages, salaries, and commissions for services rendered after the commencement of the case;

Administrative expenses may not be allowed unless they are actual and necessary to preserve the estate. *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D.Del. 2001). The Debtors must demonstrate that the Incentive Plans are necessary to preserve the value of the Debtors' estates and are "justified by the facts and circumstances of the case." The Court is required to make an independent determination that the Incentive Plans are justified by the facts and circumstances of the case, rather than deferring to the Debtors' business judgment.

20. The U.S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the Motion as written and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**ACTING UNITED STATES TRUSTEE**

**By:**   /s/ Jane M. Leamy
      Jane M. Leamy
      Trial Attorney
      J. Caleb Boggs Federal Building
      844 King Street, Suite 2207, Lockbox 35
      Wilmington, DE 19801
      (302) 573-6491
      (302) 573-6497 (Fax)

Dated: July 13, 2009