# **EXHIBIT B**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VISTEON CORPORATION, et al.,[1] | ) | Case No. 09-11786 (CSS) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## DECLARATION OF WILLIAM G. QUIGLEY, III, CHIEF FINANCIAL OFFICER AND EXECUTIVE VICE PRESIDENT OF VISTEON CORPORATION, IN SUPPORT OF THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF THE AMENDED INCENTIVE PROGRAM

1. My name is William G. Quigley, III. I am the Chief Financial Officer and Executive Vice President of Visteon Corporation.[2] Visteon Corporation is a publicly held company organized under the laws of the State of Delaware and is the direct or indirect parent corporation of each of the other debtors and debtors in possession in the above-captioned cases (collectively, together with Visteon Corporation, "Visteon" or the "Debtors"). In my role, I am

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Visteon Corporation (9512); ARS, Inc. (3590); Fairlane Holdings, Inc. (8091); GCM/Visteon Automotive Leasing Systems, LLC (4060); GCM/Visteon Automotive Systems, LLC (7103); Infinitive Speech Systems Corp. (7099); MIG-Visteon Automotive Systems, LLC (5828); SunGlas, LLC (0711); The Visteon Fund (6029); Tyler Road Investments, LLC (9284); VC Aviation Services, LLC (2712); VC Regional Assembly & Manufacturing, LLC (3058); Visteon AC Holdings Corp. (9371); Visteon Asia Holdings, Inc. (0050); Visteon Automotive Holdings, LLC (8898); Visteon Caribbean, Inc. (7397); Visteon Climate Control Systems Limited (1946); Visteon Domestic Holdings, LLC (5664); Visteon Electronics Corporation (9060); Visteon European Holdings Corporation (5152); Visteon Financial Corporation (9834); Visteon Global Technologies, Inc. (9322); Visteon Global Treasury, Inc. (5591); Visteon Holdings, LLC (8897); Visteon International Business Development, Inc. (1875); Visteon International Holdings, Inc. (4928); Visteon LA Holdings Corp. (9369); Visteon Remanufacturing Incorporated (3237); Visteon Systems, LLC (1903); Visteon Technologies, LLC (5291). The location of the Debtors' corporate headquarters and the service address for all the Debtors is: One Village Center Drive, Van Buren Township, Michigan 48111.

[2] I also serve as Vice President of each of the other Debtors in these chapter 11 cases, with the exception of Visteon Global Treasury, Inc. Additionally, I serve as Director and Trustee of The Visteon Fund, and I serve as Chief Financial Officer and Vice President of Visteon International Holdings, Inc.

intimately familiar with the Debtors' day-to-day operations, businesses, financial affairs, and books and records.

2. I submit this declaration in support of the *Motion of the Debtors for Entry of an Order Authorizing Implementation of the Amended Incentive Program* (the "Motion").[3] I am familiar with the contents of the Motion. In my opinion, for the reasons stated below, implementing the Amended Incentive Program will maximize value for all stakeholders in the Debtors' chapter 11 cases and will motivate the participants in the Amended Incentive Program during these chapter 11 cases by rewarding them for outstanding performance.

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information I have received from other members of management or the Debtors' advisors. I am authorized to submit this declaration on behalf of the Debtors and, if I were called upon to testify, I could and would testify competently to the facts set forth herein. I submit this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

## I. Amended Incentive Program

4. On June 29, 2009, the Debtors filed a motion requesting approval to implement a key employee incentive plan ("KEIP"), to continue the Debtors' 2009 annual incentive plan ("AIP"), and to honor the Debtors' current long-term incentive plan (the "LTIP," and with the KEIP and AIP, the "Original Incentive Program"). In response to objections filed by certain parties, the Debtors deferred presenting their motion and engaged in discussions with their major stakeholders to seek consensus around their proposed incentive program. As a result, the Debtors, with the assistance of their advisors, have substantially amended the incentive program

---

[3] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Motion.

2

and now seek authority to implement the Amended Incentive Program, which is supported by Visteon's ad hoc committee of term loan lenders and the official committee of unsecured creditors.

5. The Amended Incentive Program consists of a revised KEIP, which is a newly proposed plan, and the LTIP, which is a continuation of the Debtors' prepetition long-term incentive program as applied to non-KEIP participants. In addition to eliminating the 2009 AIP, the Amended Incentive Program substantially reduces the total potential cost of the incentive plan: the Original Incentive Program contemplated a maximum payout of approximately $80 million; the Amended Incentive Program's maximum payout is $11.4 million, an overall reduction of nearly $69 million. Also, the Debtors have revised the performance targets to address questions regarding whether, as originally constituted, the targets provided adequate incentives to key employees.

A. **Key Employee Incentive Plan**

6. Under the Original Incentive Program, the Debtors sought approval to implement a KEIP in which 96 employees would be eligible to participate. Target awards ranged from 60% to 250% of a participant's base salary. The target aggregate payout under the KEIP was $19.8 million, with a maximum potential payout of $30.1 million.

7. To both reduce the overall cost of the KEIP and identify only those employees who will most directly impact achievement of the KEIP metrics, the Debtors have narrowed the number of employees eligible to participate in the amended KEIP to a total of twelve, each of whom is a board-elected officer. These officers are integral to the Debtors' ability to develop and effect a plan of reorganization, to maximize value for the Debtors' estates, and to facilitate their successful restructuring.

3

8. In addition to limiting the number of KEIP participants, the Amended Incentive Program also substantially reduces the KEIP incentive opportunities. The target KEIP awards under the amended program range from 50% to 125% of a participant's base salary, with a target aggregate payout of approximately $5.4 million and a maximum aggregate payout potential of approximately $8.1 million.

9. The Amended Incentive Program also modifies the metrics of the KEIP. Awards under the amended KEIP are based on achieving two equally weighted metrics: (a) the Debtors' emergence from chapter 11 bankruptcy (the "Milestone Metric"); and (b) adjusted EBITDA of $112.6 million for the second half of 2009 (the "Financial Performance Metric").[4] These metrics are tailored to incentivize and reward progress toward a successful emergence from chapter 11 and achievement of financial performance measures linked to implementing the Debtors' long-term business plan. The metrics permit eligible employees to obtain incentive compensation only upon reaching challenging goals that require substantial and sustained efforts to increase value. Unless they accomplish these value-enhancing metrics, the KEIP participants will not receive any award, regardless of how long they remain in the Debtors' employ. Thus, there are no retentive features of the KEIP.

10. The Milestone Metric recognizes the realities of the automotive supply industry and reflects the Debtors' business judgment that achieving an efficient and expeditious conclusion to these chapter 11 cases will enhance the Debtors' going concern value. To finalize and obtain confirmation of a plan and to facilitate a plan becoming effective after confirmation,

---

[4] Achievement of $112.6 million in adjusted EBITDA during the performance period will result in payment of target level awards to KEIP participants. This amount is net of the $2.7 million payout under the Financial Performance Metric at target. Achievement of $212.6 million in adjusted EBITDA during the performance period will result in payment of maximum level awards to KEIP participants. This amount is net of the $5.4 million payout under the Financial Performance Metric.

4

will require the diligent efforts of each of the employees eligible for incentive payments. As a result, the Milestone Metric will benefit all parties to these cases by mitigating bankruptcy's negative effects on the Debtors' businesses, including reductions in business awards and the loss of existing business to competitors. Indeed, incentivizing the Debtors to achieve an expeditious exit from chapter 11 is especially important due to the difficulties the Debtors face in winning business and retaining existing business while in bankruptcy, particularly where, as here, approximately 20% of the Debtors' business rolls off each year. By impairing the Debtors' ability to replace business that naturally rolls off while operating in chapter 11, an extended stay in bankruptcy could have a negative impact on the Debtors' businesses and their creditors' eventual recoveries. To avoid these calamities that only will degrade the value of the Debtors' estates, the Debtors have tailored the Milestone Metric to incentivize the eligible employees to take all actions necessary for the Debtors to emerge from chapter 11 swiftly.

11. The Financial Performance Metric similarly motivates the eligible employees: it requires the Debtors to achieve adjusted EBITDA of $112.6 million from July 1 to December 31, 2009.[5] Given the current economic conditions in which the Debtors operate and the turmoil in the automotive industry as a whole, this metric poses a significant challenge and is by no means a "lay-up." Indeed, achieving the Financial Performance Metric will require achievement of 28 times the Debtors' adjusted EBITDA performance for the same period in 2008. Satisfying this metric also will require the sustained efforts of the eligible employees towards implementing substantial cost reductions and responding quickly to changes in global vehicle production volumes. The Debtors' adjusted EBITDA is dependent upon the Debtors' customers' actual and

---

[5] Importantly, the Financial Performance Metric is self-funded to the extent of $2.7 million at target and $5.4 million at the maximum payout opportunities, meaning that the adjusted EBITDA target under the Financial Performance Metric has been increased to ensure that adjusted EBITDA after KEIP awards are made will be equal to or greater than adjusted EBITDA without any payment under the KEIP.

projected vehicle production levels. The Debtors receive only short notice of changes to customer production, requiring the Debtors to work quickly to mitigate operating income and cash flow erosion. In light of the recent unpredictability in customer production volumes, the eligible employees' ability to respond to fluctuating volumes timely and cost-effectively will substantially affect whether the Debtors achieve the Financial Performance Metric.

12. In addition, the Financial Performance Metric requires implementing significant operational initiatives to improve adjusted EBITDA. Each eligible employee is responsible for or engaged in activities designed to transition certain operations and eliminate certain administrative overhead and other infrastructure support costs that will be necessary to achieve the Financial Performance Metric. Absent sustained efforts by each of the eligible employees, the Debtors cannot realize these goals or meet the Financial Performance Metric.

13. Under the amended KEIP, no payment will be made for achieving the Financial Performance Metric before March 2010 and no payment will be made for meeting the Milestone Metric before the effective date of the Debtors' plan of reorganization. Because payments are made only upon the Debtors' achievement of the challenging adjusted EBITDA target and emergence from chapter 11, the KEIP is tailored to motivate participants to achieve a quick emergence from chapter 11 and improve the financial health and business performance of the company, which will enhance profitability of the Debtors' estates. By linking participants' increased compensation opportunities to enhanced value for the estates, the KEIP aligns the interests of the Debtors, their employees, and their creditors, which is important as the Debtors embark upon a plan of reorganization.

B. **Long-Term Incentive Plan**

14. Under the Amended Incentive Program, approximately 83 management employees are eligible to receive LTIP awards. No KEIP participant is eligible for an LTIP

award. Pursuant to the Debtors' pre-existing LTIP, the Debtors make annual awards based on achieving certain performance metrics established by Visteon's board of directors across three-year performance cycles. Each three-year period contains separate annual performance targets that build on prior years' performance. The Debtors are seeking authority to pay LITP awards as follows:

- approximately $1.8 million for achievement of the 2007 and 2008 metrics, which relate to (a) incremental consolidated new business wins totaling $750 million in 2007, (b) six targeted restructuring goals in 2007 and seven targeted restructuring goals in 2008, and (c) improvement in total administrative and engineering staff cost by 10.6% in 2008; and

- up to approximately $1.5 million if, in 2009, Visteon achieves a 21.9% reduction in administrative and engineering costs and obtains $1.0 billion in new business wins and gross re-wins – resulting in significant operational cost savings and increased earnings, both of which are key to the Debtors' long-term vitality and ability to emerge from chapter 11 successfully.

15. LTIP award payments for achieving the 2007 and 2008 performance metrics will not be made until the effective date of the Debtors' chapter 11 plan, and award payments for satisfying the 2009 performance metrics would not be made until March 2010.

16. As with the KEIP metrics, the Debtors carefully honed the LTIP metrics to motivate eligible employees to achieve difficult and value-enhancing financial and restructuring goals. The LTIP metrics properly incentivize eligible employees to obtain incentive compensation only upon reaching goals that require substantial and sustained efforts to increase value for the benefit of the Debtors' estates and creditors by attracting new business and reducing costs. And given that payments for the 2007 and 2008 metrics will not be made until the Debtors' emergence from chapter 11, the majority of LTIP awards are expressly conditioned upon successful emergence – a challenging metric itself.

7

## II. Need for the Amended Incentive Plan

17. As set forth in my declaration of June 29, 2009 filed in support of the Debtors' motion for authority to implement the Original Incentive Program, in my opinion Visteon's entry into chapter 11 and the current financial situation has raised substantial, real concerns for the Debtors' employees. The Debtors' employees are saddled with an overall reduction in compensation opportunities resulting from the suspension of the Debtors' prepetition incentive programs and the lack of any long-term incentive plan, while facing the possibility of a sale, merger, or reduction in force resulting in the loss of employment. I believe that employees' concerns are further exacerbated by management's efforts to continue to reduce costs and implement workforce reductions as part of their ongoing restructuring efforts. Indeed, since January 2009, the Debtors have reduced their workforce by more than 20% and have implemented salary cuts, shortened work weeks, and changed employees' medical benefits, all of which have resulted in a significant reduction to employee compensation. The Debtors' employees, therefore, have been asked to endure increased financial burdens and, at the same time, to take on significant responsibilities and duties in connection with the Debtors' restructuring efforts in addition to their day-to-day tasks.

18. In this light, the Debtors have concluded in the exercise of their business judgment that the likelihood of achieving a successful reorganization and extraordinary financial results is enhanced by providing the reasonable financial incentives offered by the Amended Incentive Program. As reflected above, the total amount potentially payable under the Amended Incentive Program has been decreased by nearly $69 million. And the Debtors have carefully structured the Amended Incentive Program to balance the Debtors' need to incentivize their key management employees and provide them with appropriate, market-competitive compensation with the need to ensure that the Debtors' estates receive enhanced value in exchange for

8

incentive payments. The Debtors have determined in their business judgment that the benefits to the Debtors' estates and all parties in interest in these chapter 11 cases resulting from the achievement of the Amended Incentive Program's metrics will far exceed the potential cost of the program.

19.  Based on my knowledge and experience as the Chief Financial Officer and Executive Vice President of Visteon Corporation, I believe that implementing the Amended Incentive Program is in the best interests of the Debtors' stakeholders and that the Amended Incentive Program participants' knowledge, skills, and motivation are essential to achieving the Debtors' restructuring and long-term business goals.

20.  For the reasons discussed above, I believe that implementing the KEIP and continuing the LTIP as proposed under the Amended Incentive Program will serve to motivate the participants during the Debtors' chapter 11 cases, leading them to maximize value for all of the Debtors' stakeholders. I believe that instituting the Amended Incentive Program is a sound exercise of the Debtors' business judgment.

* * * * *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Van Buren Township, Michigan

Dated: September 17, 2009

By: /s/ William G. Quigley, III
William G. Quigley, III
Chief Financial Officer and Executive Vice President
Visteon Corporation

DOCS_DE:153229.1