# **EXHIBIT C**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| VISTEON CORPORATION et al.,[1] | ) Case No. 09-11786 (CSS) |
| Debtors. | ) Jointly Administered |

## DECLARATION OF DOUGLAS J. FRISKE, MANAGING PRINCIPAL OF TOWERS PERRIN, IN SUPPORT OF THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF THE AMENDED INCENTIVE PROGRAM

1. My name is Douglas J. Friske. I am over the age of 18 and competent to testify. I am a Managing Principal of the firm Towers, Perrin, Forster & Crosby, Inc., trading as Towers Perrin. My business address is 71 South Wacker Drive, Suite 2600, Chicago, Illinois 60606.

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the above-captioned debtors' and debtors in possession's (collectively, the "Debtors") operations and finances, information learned from my

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Visteon Corporation (9512); ARS, Inc. (3590); Fairlane Holdings, Inc. (8091); GCM/Visteon Automotive Leasing Systems, LLC (4060); GCM/Visteon Automotive Systems, LLC (7103); Infinitive Speech Systems Corp. (7099); MIG-Visteon Automotive Systems, LLC (5828); SunGlas, LLC (0711); The Visteon Fund (6029); Tyler Road Investments, LLC (9284); VC Aviation Services, LLC (2712); VC Regional Assembly & Manufacturing, LLC (3058); Visteon AC Holdings Corp. (9371); Visteon Asia Holdings, Inc. (0050); Visteon Automotive Holdings, LLC (8898); Visteon Caribbean, Inc. (7397); Visteon Climate Control Systems Limited (1946); Visteon Domestic Holdings, LLC (5664); Visteon Electronics Corporation (9060); Visteon European Holdings Corporation (5152); Visteon Financial Corporation (9834); Visteon Global Technologies, Inc. (9322); Visteon Global Treasury, Inc. (5591); Visteon Holdings, LLC (8897); Visteon International Business Development, Inc. (1875); Visteon International Holdings, Inc. (4928); Visteon LA Holdings Corp. (9369); Visteon Remanufacturing Incorporated (3237); Visteon Systems, LLC (1903); Visteon Technologies, LLC (5291). The location of the Debtors' corporate headquarters and the service address for all the Debtors is: One Village Center Drive, Van Buren Township, Michigan 48111.

review of relevant documents and information supplied to me by members of the Debtors' management and the Debtors' advisors. I am authorized to submit this Declaration in support of the *Motion of the Debtors for Entry of an Order Authorizing Implementation of the Amended Incentive Program* (the "Motion"), seeking, among other things, authority to make certain payments pursuant to a Key Employee Incentive Plan.[2] If called upon to testify, I could and would testify competently to the facts set forth herein.

## Overview & Background

3. On June 29, 2009, I submitted a Declaration In Support of the Debtors' Motion for the Entry of an Order Authorizing the Debtors to Implement the Key Employee Incentive Plan ("Original Declaration"). In my Original Declaration, I set forth my background and qualifications as an expert in executive and management compensation with almost 19 years of experience in the field. As explained in my Original Declaration, I analyzed the Debtors' original Key Employee Incentive Plan (the "Original KEIP") and concluded that it was designed consistent with typical market practice, was fair and reasonable given the facts and circumstances, provided anticipated value that is appropriate to competitively motivate talented staff and was required to maximize the value of the Debtors' estates for all parties in interest.

4. Since my Original Declaration, and in response to various objections to the Motion, the Debtors have revised the terms of the Visteon Incentive Program (the "Amended Incentive Program"). I have reviewed the Amended Incentive Program, and in particular

---

[2] Any capitalized term used herein, but not defined herein, shall have the meaning set forth in the Motion and Response.

2

the Debtors' revised Key Employee Incentive Plan (the "Revised KEIP"), and analyzed whether the Revised KEIP is consistent with typical market practice.

5. Based on my analysis, and the facts and circumstances currently in place, I have concluded that the Revised KEIP is reasonably designed and consistent with typical market practice for the Debtors' key employees. This conclusion is based on the following four key elements:

(a) the Revised KEIP awards Key Employees with an incentive payment if the Debtors' financial performance meets or exceeds the goals set by the Board of Directors of Visteon Corporation (the "Board"), thereby putting the success of the company and enhancement of the estate in line with any incentive payout;

(b) the Revised KEIP also awards Key Employees with an incentive payment if the Debtors' successfully work through the reorganization process as evidenced by emerging from Chapter 11 bankruptcy protection;

(c) the Revised KEIP provides the Debtors with a compensation structure that is consistent with other similarly situated businesses; and

(d) the estimated level of compensation provided under the Revised KEIP, when considered within the context of total compensation, is reasonable in comparison to market-based compensation of other similarly sized businesses.

### The Debtors' Revised Key Employee Incentive Plan

6. The Revised KEIP substantially narrowed the number of employees eligible to receive awards. In particular, only 12 of the Debtors' board-elected officers (collectively, the "Key Employees") are eligible for an award under the Revised KEIP. I understand that each of the Key Employees is critical to the organization's financial and operational success during the anticipated bankruptcy period.

7. In addition to limiting the number of participants in the Revised KEIP, the Debtors have also reduced potential payments under the plan. The Original KEIP assigned each participant a target opportunity level, ranging from 60% to 250% of the individual's base

3

salary. Under the Revised KEIP, the target opportunity levels range from 50% to 125% of the participant's base salary.

8. The Debtors have also revised the metrics under the Revised KEIP. The current metrics are equally weighted between (i) an adjusted EBITDA goal for the second half of 2009 and (ii) emergence from Chapter 11 bankruptcy protection.

9. The amount of the Revised KEIP opportunity allocated to Chapter 11 emergence will be earned if and when emergence is achieved. Adjusted EBITDA goals have been established for the six month measurement period, and the size of the award earned in connection with the EBITDA portion of the Revised KEIP will vary with performance. At target EBITDA performance, the earned award will be equal to 100% of the target Revised KEIP award allocated to that metric, whereas at maximum performance the earned award will be equal to 200% of the allocated target Revised KEIP award.

10. The Revised KEIP is purely incentive-based because the Debtors' success is the sole determinant as to whether the Key Employees earn an incentive payment. For example, for the Key Employees to earn an incentive payment related to financial performance, the company must achieve its targeted EBITDA goal in the six month measurement period. Additionally, the company must emerge from bankruptcy protection for the balance of the Revised KEIP awards to be paid. Thus, the Revised KEIP is designed to motivate Key Employees to perform at optimal financial levels and also be aligned with the critical non-financial goal of emergence, thus preserving and maximizing the value of the Debtors' estates for all parties in interest. Additionally, a portion of the KEIP is self-funded at target and maximum EBITDA performance levels. Under no circumstance would the Revised KEIP provide a payment solely for the employee's continued service.

11. The total cost of the Revised KEIP, if the financial component is earned at target and emergence is achieved, is approximately $5.4 million and at the maximum level is approximately $8.1 million, which both represent a 73% reduction from the $19.8 million target payout and $30.1 million maximum payout, respectively, under the Original KEIP.

**Towers Perrin's Independent Review Of The Reasonableness Of The Revised KEIP**

12. As explained in my Original Declaration, the Debtors engaged Towers Perrin to work with the Debtors and outside advisors to design a KEIP that is consistent with market practices and that addresses the need of the Debtors to motivate their Key Employees.

13. Subsequent to our review of the Original KEIP, the Debtors discussed the KEIP with a variety of constituents in the case. Over the course of the discussion, the Debtors revised the KEIP to 1) reduce the number of participants, 2) lower the individual target opportunities and 3) reduce the total potential cost associated with the plan. Each of these revisions serves to minimize the cost of the proposed program, and as such my opinions regarding the reasonableness of the Original KEIP still apply to the Revised KEIP.

14. Based upon my analysis of the Revised KEIP, it is my belief that the structure of the plan, as it currently stands, is consistent with typical market practice and properly aligns management's incentives with the Debtors' operating success.

15. Towers Perrin's analysis of the appropriate market data and the information supplied by the Debtors revealed several key pieces of information about the competitiveness of the Debtors' pre-petition compensation practices, specifically without consideration of the Revised KEIP:

 (a) the Debtors' base salaries were, on average, competitive with the 50th percentile of market practice, compared to other similarly sized businesses;

5

DOCS_DE:153230.1

(b) the Debtors' target annual incentive payment percentages were generally consistent with the 50th percentile market practice;

(c) the Debtors' target cash compensation levels (the sum of base salary and target annual cash bonus) were, on average, competitive with the 50th percentile of market practice without consideration of the Revised KEIP; and

(d) long-term incentive target values were at to above median market practice, depending on the level/position of the individual.

16. It is common for companies to provide their employees with annual and long-term incentive grants on an annual basis. In doing so, companies would not consider the value of past awards that might be realized in the current year as part of current compensation, regardless of whether those awards are payable in cash or equity (both of which are common).

17. The Debtors are not currently seeking approval for payout of the 2009 Annual Incentive Plan (the "AIP") or the 2009 Long-Term Incentive Plan (the "LTIP"). In addition, none of the proposed participants in the Revised KEIP will be eligible to earn the 2009 portion of prior LTIP grants. As such, the Key Employees that participated in both the 2009 Annual and Long-Term Incentive Plans are unable to receive any portion of their combined target total incentive opportnities for 2009.

18. The absence of any ongoing, meaningful incentive opportunity for the Key Employees significantly erodes the current competitiveness of the Debtors' compensation programs, which could impact the Debtors' ability to motivate current staff to achieve the desired business objectives. Moreover, in the absence of the Revised KEIP, the average total compensation for proposed participants would be 68% below the market 50th percentile level – i.e., their effective total direct compensation package would consist entirely of base salary. Even with the Revised KEIP, the average total target compensation for the

proposed participants is 35% below the market 50th percentile, and also below the 50th percentile at maximum performance.

19. Towers Perrin's analysis supports the Debtors' conclusion that payments under the Revised KEIP are not only reasonable and appropriate, but also necessary, to properly compensate and incentivize the Key Employees and to ensure the Debtors' successful reorganization. As noted, even if the Revised KEIP is adopted, total compensation will be below market levels, which could impact the effectiveness of the plan.

**Conclusion: The Debtors' Revised KEIP Is Reasonable And Justified By Market Practices**

20. Based on my education, experience and the work I have done in this case, it is my opinion that the Debtors' Revised KEIP is designed consistent with typical market practice, is fair and reasonable given the facts and circumstances and is required to maximize the value of the Debtors' estates for all parties in interest.

* * * * *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Chicago, Illinois

Date: September 17, 2009

_____
Douglas J. Friske