# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------X
:
In re: : Chapter 11
:
VISTEON CORPORATION., *et al.*, : Case No. 09-11786 (CSS)
:
: Jointly Administered
:
Debtors. : Hearing Date: Oct. 7, 2009 at 10 am
: Objection Deadline: Sept. 30, 2009 at 4 pm
**Ref. Docket No. 994**

-------------------------------------------------------------------X

## UAW'S OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF THE AMENDED INCENTIVE PROGRAM

1. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), a creditor, party in interest, and representative of certain employees and retirees of the Debtors, objects as follows to the Debtors' September 17, 2009 Motion ("Motion") For Entry of an Order Authorizing Implementation of the Amended Incentive Program [Docket No. 994].

2. The Motion seeks approval of a plan ("Plan") -- styled a "key employee incentive plan" -- to pay approximately $5.4 to $8.1 million in bonus money to the Debtors' twelve board-elected officers. In effect, the top handful of insiders who run Visteon are seeking permission to enrich themselves with bonuses of between $450,000 and $675,000 each -- bonuses equal to many times the annual earnings of Visteon's rank-and-file employees.[1]

3. Visteon's top insiders request this bonus money at the same time that they are seeking to eliminate every penny of employer-provided health and life insurance coverage

---

[1] To put in perspective the magnitude of the proposed bonuses, we note that they would be equal in amount to about *nine to thirteen times* the amount of the median *annual* household income in the United States, which is about $50,000. *See* U.S. Census Bureau, press release, Aug. 26, 2008, *www.census.gov/Press-elease/www/releases/archives/income_wealth/012528.*

for the Company's retirees, *see* June 26, 2009 Motion of Certain Debtors For Order Authorizing Them To Terminate Post-Employment Health Care And Life Insurance Benefits, *etc.* [Docket No. 424], and, moreover, when the American automotive industry is continuing to struggle through one of the worst economic crises in its history.

4. The Motion should be denied first because, despite being labeled a "key employee incentive plan," the Plan is in fact a retention plan that violates the terms of Section 503(c)(1) of the Code, 11 U.S.C. §503(c)(1). To qualify for half of the bonus money, the corporate officers covered by the Plan need do nothing other than stay with Visteon until Visteon emerges from bankruptcy -- regardless of when the emergence occurs and regardless of what kind of a recovery is achieved for creditors. To qualify for the other portion of the bonus, the officers need only still be on the payroll when and if Visteon achieves a certain adjusted EBITDA for the second half of 2009, regardless of whether that individual officer, or his department, contributed in any measurable way to the achievement of that target. Moreover, the Debtors have presented no evidence that achieving the target EBITDA for the second half of 2009 -- a measurement period that is already more than half over -- would require the individual officers to engage in any exceptional performance.

5. Even if the Plan passes muster under Section 503(c)(1), the Motion should still be denied, because the Plan is not justified by the facts and circumstances of the case, as required by Section 503(c)(3) of the Code, 11 U.S.C. §503(c)(3). Among other things, the Debtors fail to establish that the Plan is fair and reasonable, given that it lavishes bonus money on the handful of individuals who control the Company, at a time when the Company is seeking to eliminate all employer-provided welfare benefits for Visteon's retirees. The Motion also gives no indication that the Debtors' compensation advisor, Towers, Perrin, Forster & Crosby, Inc.

("Towers Perrin"), performed due diligence showing that the proposed bonuses are consistent with current standards in the severely distressed automotive industry.

6. For these reasons, more fully explained below, the Motion should be denied.

## BACKGROUND

7. The top twelve board-elected officers of Visteon are already very well compensated. CEO Donald Stebbins, for example, is projected to earn approximately $2.27 million in total compensation in 2009. Nonetheless, the Plan would make available to them approximately $5.4 to $8.1 million in bonus money on top of their other compensation. *See* Declaration of William G. Quigley III in support of the Motion ("Quigley Dec.") [Docket No. 994, Ex. B], at ¶¶7, 8.[2]

8. Half of the bonus money would be available to the participants simply based on the Debtors emerging from Chapter 11 bankruptcy, *see* Quigley Dec. ¶9, regardless of when the reorganization occurs or what the magnitude of the recovery is for creditors.

9. The other portion of the bonus money would be paid if the Debtors achieved an adjusted EBITDA of $112.6 million for the second half of 2009, *see id*. ¶9 -- a measurement period that is now more than half over. The Plan does not condition payment on the individual performance of any of the eligible officers, nor on how that officer's department or division performs. So long as the Company overall achieves the EBITDA target, each officer qualifies for the bonus money, regardless of whether each officer actually contributed to achieving the target.

---

[2] Although Debtors seek approval of the Plan, there are no documents setting forth the terms of the Plan, other than the description set forth in the motion papers.

3

**ARGUMENT**

**I.     THE PLAN IS A RETENTION PLAN THAT VIOLATES SECTION 503(c)(1)**

10.     Transactions between a debtor and its insiders -- especially those that enrich the insiders -- require carefully scrutiny. *See generally Pepper v. Litton*, 308 U.S. 295, 306 (1939) (dealings by insiders subject to "rigorous scrutiny" and require a showing of their "inherent fairness"); *In re Regensteiner Printing Co.*, 122 B.R. 323, 326 (N.D. Ill. 1990) (courts "must scrutinize" transactions between insiders and debtor). Close scrutiny is particularly warranted with management bonus plans. *See In re Am. Plumbing & Mechanical, Inc.*, 323 B.R. 442, 463 (Bankr. W.D. Tex. 2005) ("appropriate to more closely scrutinize bonuses" to officers and directors; such insiders "bear the burden of proof as to fairness of any such arrangements").

11.     As the court noted in *In re U.S. Airways, Inc.*, 329 B.R. 793, 797 (Bankr. E.D. Va. 2005), management bonus plans "have something of a shady reputation":

> All too often they have been used to lavishly reward -- at the expense of the creditor body -- the very executives whose bad decisions or lack of foresight were responsible for the debtor's financial plight. But even where external circumstances rather than the executives are to blame, there is something inherently unseemly in the effort to insulate the executives from the financial risks all other stakeholders face in the bankruptcy process.

*Id*.

12.     Congress enacted Section 503(c) precisely for the purpose of reining in executive compensative schemes. *See In re Dana Corp.* ("*Dana I*"), 351 B.R. 96, 100-01 (Bankr. S.D.N.Y. 2006); *see also In re Dana Corp.* ("*Dana II*"), 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2006) (noting Congress' concern over the "'glaring abuses of the bankruptcy system by the executives of giant companies … who lined their own pockets, but left thousands of employees and retirees out in the cold.'") (quoting statement of Sen. Kennedy). To achieve this goal of limiting bonuses to insiders, Section 503(c)(1) generally prohibits payments to "an

insider of the debtor for the purpose of inducing such person to remain with the debtor's business." 11 U.S.C. §503(c)(1).[3]

13. There is no dispute that the twelve officers who would be eligible to participate in the Plan are insiders. *See* July 22, 2009 Declaration of Dorothy Stephenson, Visteon Senior Vice President of Human Resources ("Stephenson Dec.") [Docket No. 648, Ex. C], at ¶8 ("The Debtors readily concede that all twelve of these U.S.-based, board-elected officers are company insiders"); *see also* Quigley Dec. ¶7 (each of the participants in the proposed Plan is a "board-elected officer"); 11 U.S.C. §101(31)(B)(ii) (defining "insider" to include officers of the debtor corporation).

### A. The Plan Is A Retention Plan Because It Provides Bonuses To Insiders Simply For Staying With Visteon Until It Emerges From Bankruptcy

14. The Plan is a retention plan violative of Section 503(c)(1) because its purpose is to induce the insiders covered by the Plan to stay with Visteon until Visteon emerges from bankruptcy.

15. In *Dana I*, 351 B.R. 96, the court denied the debtors' motion for approval of a management bonus plan that made part of the bonus money payable upon the debtors' emergence from bankruptcy, since that feature of the plan constituted a retention bonus. *See id*. at 102. As Judge Lifland explained: "Without tying this portion of the bonus to anything other than staying with the company until the Effective Date, this Court cannot categorize a bonus of this size and form as an incentive bonus. Using a familiar fowl analogy, this compensation scheme walks, talks and is a retention bonus." *Id.* (footnote omitted). Because the Plan

---

[3] A retention plan can pass muster under Section 503(c)(1) if certain conditions are met, such as that the insider has a bona fide job offer from another company for the same or greater compensation and the insider's services are essential to the debtor's survival. *See* 11 U.S.C. §§503(c)(1)(A), (B). Visteon does not contend, and there is no evidence, that these conditions are met here.

5

proposed here, like the one in *Dana*, makes the bonus money payable simply based on the participants remaining with the debtors until the debtors emerge from bankruptcy, it is a retention plan in violation of Section 503(c)(1).[4]

16.     Debtors nonetheless claim that the Plan is an incentive plan, intended to "motivate participants to achieve a quick emergence from chapter 11." Quigley Dec. ¶13. But the Plan does not condition the bonuses on the Debtors emerging from bankruptcy by any particular date, nor does it reward a quicker emergence with a greater bonus. The Plan simply rewards the covered officers for still being with Visteon when it emerges.[5]

17.     The Debtors may argue that the Plan gives the covered officers an incentive to emerge quicker because the sooner Visteon emerges, the sooner they get their bonus money. But the Debtors already have an obligation under the Code to file a plan of reorganization "as soon as practicable." *See* 11 U.S.C. §1106(a)(5); 11 U.S.C. §1107(a). The insiders who control the Debtors should not receive bonus money simply to induce them to comply with the Debtors' existing legal obligation.

---

[4] By contrast, in *Midway Games Inc.*, Chap. 11 Case No. 09-10465 (KG) (Bankr. D. Del.), an unpublished case cited by the Debtors, *see* Motion ¶30, the first "milestone" in the bonus program required not just emergence from bankruptcy but the filing of a plan of reorganization that provided for full payment of the lender's secured claims or a sale of the debtors' assets that yielded proceeds of at least $30 million. *See* Exhibit A to April 22, 2009 order, at §4.

[5] By contrast, in *WCI Communities, Inc.*, Chap. 11 Case No. 08-11643-KJC (Bankr. D. Del.), an unpublished bench decision cited by the Debtors, *see* Motion ¶¶30-31, the proposed plan had a sliding scale under which the bonuses were greater the earlier the debtor emerged from bankruptcy. *See* Trans. of Feb. 4, 2009 proceedings, at 19.

6

### B. The Plan Must Also Be Deemed A Retention Plan In The Absence Of Evidence That The Officers Covered By The Plan Would Have To Exert Exceptional Effort To Meet The EBITDA Target

18. The Plan is also a retention plan because it provides bonus money to the insiders simply for being on the payroll when and if Visteon achieves a particular financial target, namely, an adjusted EBITDA of $112.6 million for the second half of 2009.

19. To establish that an earnings target in a management bonus plan is not retentive in nature, a debtor must prove that meeting the target "will require management 'to stretch.'" *Dana II*, 358 B.R. at 581-83 (approving EBITDA benchmarks in management bonus program only because they "'are difficult targets to reach and are clearly not 'lay-ups'").

20. Here, the Debtors claim that the adjusted EBITDA target of $112.6 million for the second half of 2009 "is by no means a 'lay-up'" but "will require the sustained efforts of the eligible employees towards implementing substantial cost reductions and responding quickly to changes in global vehicle production volumes." Motion ¶27. However, their motion papers provide no financial data, financial projections or any other analysis supporting the bald assertion that meeting the target will be difficult or require such "sustained efforts."

21. Indeed, by time the Motion is heard, we will already be in the final quarter of 2009, just weeks away from the end of the year. The burden rests on the Debtors to demonstrate that, given Visteon's performance so far in the second half of 2009, the top officers will be required "to stretch" during the remaining weeks of 2009 to meet the adjusted EBITDA target. Absent such evidence, this part of the Plan too would have to be deemed retentive in nature and thus violative of Section 503(c)(1).

22. Moreover, while the Debtors claim that the EBITDA target will not be met "[a]bsent sustained efforts by *each* of the eligible employees," Quigley Dec. ¶12 (emphasis

7

added), the motion papers provide no explanation or evidence showing how the efforts of *each* of the officers will contribute to the goal. Among the twelve officers covered by the Plan, there are some -- for example, the corporate secretary; the vice president of information technology; the corporate controller/chief accounting officer; the treasurer/chief tax officer, *see* Stephenson Dec. ¶6 -- who, at least by their titles, appear to have no direct connection to operations or sales. It is far from apparent how the work of these individuals in the remaining weeks of 2009 would enable Visteon to achieve the EBITDA target. If the offer of bonuses to these individuals does not readily serve to help Visteon achieve its second half 2009 EBITDA target, the bonuses in fact serve only to induce them to remain on the payroll, in violation of Section 503(c)(1).

II. **IN THE ALTERNATIVE, THE PLAN VIOLATES SECTION 503(c)(3) BECAUSE IT IS NOT JUSTIFIED BY THE FACTS AND CIRCUMSTANCES OF THE CASE**

23. Even if the Plan survives scrutiny under Section 503(c)(1), the Motion should still be denied, because the Plan is not "justified under the facts and circumstances of the case" within the meaning of Section 503(c)(3).

24. *Dana II,* 358 B.R. at 575-77, a case on which the Debtors themselves rely, *see* Motion ¶33 & n.12, sets forth certain factors that a court should consider in determining whether a management bonus plan satisfies Section 503(c)(3). A court should ask, among other things, (1) whether the proposed plan is calculated to achieve the desired performance; (2) whether the scope of the proposed plan is fair and reasonable and whether it applies to all employees; (3) whether the plan is consistent with industry standards in the debtor's particular industry; (4) what due diligence the debtor undertook to analyze which employees should be covered by the proposed plan; and (5) whether debtor received independent counsel in performing the due diligence and in creating and authorizing the plan. Here, each of these factors weighs against approval of the Plan.

8

25. *First*, as already discussed, the plan does not appear calculated to achieve the desired performance. The Debtors claim the emergence-based portion of the bonus is intended to create an incentive for "a prompt emergence from chapter 11," Motion ¶35, but the bonuses are payable whether the emergence is prompt or not. The EBITDA-based portion of the bonus is intended to give each of the officers an incentive to engage in exceptional efforts, but the Debtors have produced no evidence that such efforts would be required to meet the EBITDA target.

26. *Second*, far from applying to all employees, or even all management employees, the proposed Plan is tightly restricted in scope to a small handful of top insiders who control the Company and who are, in effect, seeking to pay themselves. Far from being fair and reasonable, the Plan seeks to enrich these already well-compensated officers and to do so at the same time that these officers are seeking to wipe out *all* health and life insurance benefits for Visteon's retirees.

27. *Third*, there is no indication in the Motion that the Plan is consistent with standards in the automotive industry, which is suffering one of the worst economic crises in its history. *See* July 10, 2009 Objection of General Motors To Debtors' Motion For Entry Of An Order Authorizing Implementation Of The Visteon Incentive Program, *etc.* [Docket No. 517], at ¶7 (noting that in the automotive industry, "approximately 272,000 employees have been severed in the previous 12 months") (citing Bureau of Labor Statistics data). Indeed, according to Ford Motor Company, "Ford, Chrysler and GM and many suppliers (both in and outside of bankruptcy protection) have *eliminated* payment of performance bonuses for 2009." Ford's July 10, 2009 Objection To The Motion Of The Debtors For Entry Of An Order Authorizing The Implementation Of The Visteon Incentive Program [Docket No. 523], at ¶8 (emphasis added).

The Debtors provide no indication that the proposed bonuses are consistent with current practices in the automotive industry. Indeed, the Debtors give no indication in their motion papers of how the overall compensation of the officers covered by the Plan -- either before or after receiving the proposed bonuses -- compares to market-level compensation in the auto supply industry.

28. *Fourth*, there is no indication in the Debtors' motion papers that the Debtors or Towers Perrin performed any due diligence to determine which of the twelve top officers should receive the bonuses. In particular, the Debtors present no analysis showing why officers whose duties appear to have no direct connection to operations or sales -- such as the corporate secretary -- should receive a bonus when their efforts may have no significant impact on achieving the EBITDA target for the second half of 2009.

29. *Fifth* and last, there is no indication that the Debtors received independent counsel in formulating the Plan. Towers, Perrin, which apparently advised the Debtors on the Plan, does a substantial amount of other business for Visteon, having generated over $9 million in fees from Visteon since 2005. To keep this lucrative business, Towers, Perrin must stay in the good graces of Visteon's top officers. Towers Perrin, therefore, is in no position to render an independent opinion on a Plan that directly and significantly impacts the pay of these officers.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: September 30, 2009

/s/ Peter D. DeChiara
Babette A. Ceccotti
Peter D. DeChiara
COHEN, WEISS and SIMON LLP
330 West 42nd Street
New York, New York 10036
(212) 563-4100

Niraj R. Ganatra
International Union, UAW
8000 East Jefferson Avenue
Detroit, Michigan 48214
(313) 926-5216

/s/ Susan E. Kaufman
Susan E. Kaufman
Cooch and Taylor, P.A.
Brandywine Building
1000 North West Street, 10th Floor
Wilmington, Delaware 19801
(302) 984-3800

Counsel for UAW