IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| VISTEON CORPORATION, et al. | : | Case No. 09-11786 (CSS) |
| | : | |
| | : | |
| Debtors. | : | |
| | : | **Objections Due: October 1, 2009 at 4:00 p.m.**[1] |
| | : | **Hearing Date: October 7, 2009 at 10:00 a.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION
FOR ENTRY OF AN ORDER AUTHORIZING THE IMPLEMENTATION
OF THE AMENDED INCENTIVE PROGRAM**

In support of her objection (the "Objection") to the Debtors' Motion for Entry of an Order Authorizing the Implementation of the Amended Incentive Program (the "Motion"), Roberta A. DeAngelis, the Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through her undersigned counsel, states as follows:

1. This Court has jurisdiction to hear the above-referenced Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard

---

[1] The objection deadline was extended by agreement of the parties.

to the above-referenced Objection.

## PRELIMINARY STATEMENT

4. The Motion seeks approval of an amended incentive program with a maximum payout of $11.4 million (down from $80 million in the original incentive program). While the Debtors have reduced the proposed amounts payable under the amended incentive program (mainly by reducing the number of participants from over 2,500 to just 95), the criteria for payment remain essentially the same. The primary change appears to be that the Debtors removed lower level executives and rank and file employees from the plan so that the insiders will still receive bonuses. The amended incentive program now has two milestones instead of four, but the milestones are the same as those contained in the original program: achievement of EBITDA and plan emergence.

5. The U.S. Trustee's objection to the amended program remains the same as her objection to the original program: the Debtors have not satisfied their burden under 11 U.S.C. §§ 503(b)(1)(A) and 503(c) to demonstrate, *inter alia*, that (i) payments under the KEIP (as defined below) are not retention payments to "insiders,"(ii) the KEIP is justified by the facts and circumstances of these cases, and (iii) the KEIP represents the "actual, necessary cost of preserving the estate[s]." Second, the U.S. Trustee objects to the Debtors' assertions that section 503(c)(3) simply subjects the KEIP to review under the business judgment rule. The Debtors must demonstrate that the KEIP is necessary to preserve the value of the Debtors' estates and is "justified by the facts and circumstances of the case." The U.S. Trustee does not object to the Motion to the extent that it seeks approval of the LTIP (defined below) for non-insiders.

## BACKGROUND

6. On May 28, 2009 (the "Petition Date"), the Debtors[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

7. On June 8, 2009, the UST appointed a statutory committee of unsecured creditors (the "Committee").

The Original Motion

8. On June 30, 2009, the Debtors filed the Motion for Entry of an Order Authorizing the Implementation of the Visteon Incentive Program (the "Original Motion"). The Original Motion sought approval of (i) a key employee incentive plan (the "KEIP"), (ii) the 2009 annual incentive plan (the "AIP") and (iii) the current long-term incentive plan (the "LTIP", together with the KEIP and the AIP, the "Incentive Plans"). Each plan proposed to cover insider and non-insider employees.

9. The Original Motion requested approval of a KEIP pursuant to which 100 key employees would be entitled to an incentive payment after meeting four metrics: (i) EBITDA less Cap-Ex performance for 3rd quarter 2009, (ii) EBITDA less Cap-Ex performance for 4th quarter 2009, (ii) confirmation of a plan of reorganization, and (iii) emergence from chapter 11. Each metric represented one-quarter of the incentive target levels. The maximum payout under the KEIP would have been $30.1 million, of which 39% would have been payable to insiders. (Original Motion, ¶ 16-19).

10. The Original Motion also requested approval of the AIP pursuant to which 2,050

---

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

active and 400 inactive employees would be eligible to receive a bonus in February 2010 based upon free cash flow ("FCF") and product quality targets set by the board of directors for 2009. (Original Motion, ¶ 23).

11. Finally, the Original Motion sought approval of the LTIP, which was based on a three-year performance period with separate performance criteria for each year. The Debtors indicated that the target metrics were already achieved to allow payouts of $3.6 million in 2010 and $2.6 million in 2011. An additional $6 million can be earned by achieving "certain performance objectives" in 2009 and 2010, of which 38% would have been payable to insiders.

12. Several parties filed objections to the Original Motion, including the Committee, Ford Motor Company, General Motors, and the UAW. After adjourning the Original Motion for several hearings, the Debtors withdrew the Original Motion on September 17, 2009.

The Motion

13. On September 17, 2009, after withdrawing the Original Motion, the Debtors filed the Motion, seeking approval of an amended incentive program. The proposed amended incentive program consists of: (i) a key employee incentive plan (the "KEIP") and (ii) the current long-term incentive plan (the "LTIP").[3]

14. Pursuant to the KEIP, 12 key employees will be entitled to an incentive payment after meeting two metrics: (i) achievement of adjusted EBITDA of $112.6 million for the period July 1 to December 31, 2009 (the "Financial Performance Metric") and (iii) emergence from chapter 11 (the "Milestone Metric"). Each metric represents one-half of the incentive target levels.

---

[3] The amended incentive program eliminates the AIP, which applied to the largest number of employees and had the largest cash component.

The maximum payout under the KEIP is approximately $8.1 million. (Motion, ¶ 10 ).

15. Pursuant to the LTIP, 83 management employees will be eligible for awards based on a three-year performance period with separate performance criteria for each year. The Debtors seek to pay up to $3.3 million under the LTIP, with no amounts going to insiders. (Motion, ¶ 19).

16. As shown by the table below, the vast majority of the incentive program amounts are payable to insiders under the KEIP, as was the case with the original incentive program:

|  | Employees covered | | Amounts payable | |
| --- | --- | --- | --- | --- |
|  | Original program | Amended program | Original program | Amended program |
| KEIP | 100 | 12 | $30.1 million | $8.1 million |
| AIP | 2,450 | 0 | $38 million | $0 |
| LTIP | not specified, but included insiders | 83 (no insiders) | $12.2 million | $3.3 million |
| **Totals** | **2,550+** | **95** | **$80.3 million** | **$11.4 million** |

**GROUNDS/BASIS FOR RELIEF**

The Proposed KEIP Violates Section 503(c)(1) of the Bankruptcy Code

17. The Debtors have not demonstrated in the Motion that the proposed KEIP is appropriate under section 503(c) of the Bankruptcy Code. While the proposed KEIP contains certain performance targets, the Milestone Target based on emergence from chapter 11 appears to have retention as its primary purpose given that emergence is the goal of a successful chapter 11 case. As with the original incentive program, the Debtors have essentially guaranteed some payment to the insiders so long as a plan is confirmed and goes effective. As fiduciaries of the Debtors' estates, these insiders already have a fiduciary obligation to pursue confirmation of a

5

plan. The Motion also does not contain adequate information to support the Debtors' assertion that the Financial Performance Metric is performance-based. While the Motion states that achieving the Financial Performance Metric will require achievement of 28 times the adjusted EBITDA for the same period in 2008 (Motion, ¶ 15), the Debtors have provided no analysis as to whether the EBITDA target for the 2009 period will require participants to stretch based on past performance or whether the Debtors are anticipated to meet the EBITDA target given that the measuring period is almost half over.

18. Under section 503(c)(1) of the Bankruptcy Code, the Debtors must, "based on evidence in the record," demonstrate all three of the required elements set forth in section 503(c)(1). Section 503(c)(1), provides, in pertinent part, as follows:

> (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—
>
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
> (B) the services provided by the person are essential to the survival of the business; and
> (C) either—
> > (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
> > (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the

year in which such transfer is made or obligation is incurred;

19. The limited case law that has developed under 11 U.S.C. § 503(c)(1) since the enactment of the 2005 reforms suggest that, in order for a debtor to avoid running afoul of section 503(c)(1)'s restriction on retention pay, the debtor must demonstrate that its bonus plan is tied to significant hurdles which are difficult to achieve. *See In re Dana Corp.*, 358 B.R. 567, 582 (Bankr. S.D.N.Y. 2006) (court found that benchmarks for the debtors' long-term incentive plan "are difficult targets to reach and are clearly no 'lay-ups'"); *In re Nobex Corp.*, 2006 Banrk. LEXIS 417 (Bankr. D. Del. Jan. 19, 2006)(plan that provided for payments exclusively upon improvement to "stalking horse" bid did not violate 11 U.S.C. § 503(c)(1)).

20. The description of the KEIP contained in the Motion suggests that, at least as to the Milestone Metric, emergence from chapter 11, the KEIP payments are not intended to induce a particular level of performance by the insiders, but instead to induce them to remain employed until confirmation and emergence from chapter 11. If the only incentive created by the KEIP is to induce the insiders to remain with the Debtors until such time, the Motion must be denied because it fails to comply with section 503(c)(1).

21. The lack of true performance benchmarks for the metrics suggests that the KEIP is intended as a disguised retention bonus instead of a true incentive plan**.** The emergence target does not appear to be meaningful when the goal of this case (as in any chapter 11 case) is to confirm a plan of reorganization and emerge from bankruptcy protection. Indeed, debtors operating under chapter 11 have a fiduciary obligation to either file a plan or seek conversion of their cases "as soon as practicable.' 11 U.S.C. § 1106(a)(5); see 11 U.S.C. 1107(a). The Debtors

have thereby essentially guaranteed a payout of 50% of the proposed KEIP awards that range from 50-125% of base salary to those insiders who simply remain with the Debtors until emergence from chapter 11.

Bankruptcy Code §503(c)(3) does not Incorporate the Business Judgment Standard

22. The Debtors assert that the KEIP may be approved pursuant to section 363(b) or section 503(c)(3) of the Bankruptcy Code and that the business judgment rule is the proper standard for determining whether the KEIP may be approved. While certain of the payments under the KEIP appear to be incentive-based, the payments thereunder may not be justified solely by reference to section 363(b). Section 503(c)(3), added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, requires the Debtors to show that the KEIP is justified by the facts and circumstances of the case.

23. Section 503(c)(3) states that "notwithstanding subsection (b), there shall neither be allowed nor paid– other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition." In enacting section 503(c), Congress clarified and specifically limited what might otherwise be allowed as an administrative expense under section 503(b).

24. Section 503(b) of the Bankruptcy Code provides that:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate including—
> (i) wages, salaries, and commissions for services rendered after the commencement of the case;

Administrative expenses may not be allowed unless they are actual and necessary to preserve the estate. *In re Unidigital, Inc*., 262 B.R. 283, 288 (Bankr. D.Del. 2001). The Debtors must demonstrate that the KEIP is necessary to preserve the value of the Debtors' estates and are "justified by the facts and circumstances of the case." The Court is required to make an independent determination that the KEIP is justified by the facts and circumstances of the case, rather than deferring to the Debtors' business judgment.

25. As noted by both Ford Motor Company and General Motors in their respective objections to the Original Motion, "Ford, GM and Chrysler, as well as countless publicly traded suppliers to the OEMs, have all announced that no annual incentive bonuses will be paid out for 2009." (See Ford Motor Company Objection, Docket No. 523, ¶ 17). Moreover, as GM has noted, over 250,000 employees in the automotive industry have been severed in the last 12 months. Given these facts and circumstances, bonuses of this magnitude to the Debtors' insiders are not warranted.

26. The U.S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the Motion as written and/or granting such other relief as this Court deems appropriate, fair and just.

    Respectfully submitted,

    **ROBERTA A. DeANGELIS**
    **ACTING UNITED STATES TRUSTEE**

    **By:**   /s/ Jane M. Leamy
        Jane M. Leamy
        Trial Attorney
        J. Caleb Boggs Federal Building
        844 King Street, Suite 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491
        (302) 573-6497 (Fax)

Dated: October 1, 2009