# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VISTEON CORPORATION, *et al.*, | ) | Case No. 09-11786 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing Date: November 12, 2009 at 2 p.m. |
| | ) | Objection Deadline: November 5, 2009 at 4 p.m.[1] |
| | ) | |
| | ) | Related to Docket No. 1200 |

**OBJECTION OF THE PENSION BENEFIT GUARANTY CORPORATION
TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING
THE DEBTORS TO OBTAIN SENIOR SUPERPRIORITY PRIMING POSTPETITION
FINANCING; (B) GRANTING PRIMING AND OTHER LIENS AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS; (C) GRANTING ADEQUATE PROTECTION
TO PREPETITION SECURED PARTIES; (D) AUTHORIZING THE USE OF
CASH COLLATERAL; AND (E) MODIFYING THE AUTOMATIC STAY**

The Pension Benefit Guaranty Corporation ("PBGC"), by and through their attorneys, hereby objects to *Debtors' Motion For Entry of an Order ("Order") (A) Authorizing the Debtors to Obtain Senior Superpriority, Priming Postpetition Financing; (B) Granting Priming and Other Liens and Superpriority Administrative Expense Claims; (C) Granting Adequate Protection to Prepetition Secured Parties; (D) Authorizing the Use of Cash Collateral; and (E) Modifying the Automatic Stay* ("Motion").[2] PBGC also generally supports the Objection ("Committee Objection") of the Official Committee of Unsecured Creditors (the "Committee"). In support of this Objection, PBGC respectfully states as follows:

---

[1]  Extended per agreement with the Debtors to November 6, 2009.

**PRELIMINARY STATEMENT**

PBGC generally supports the Committee Objection. In particular, PBGC stands with the Committee against the Debtors' unwarranted and unreasonable efforts to grant the Prepetition Term Agent and Prepetition Term Lenders (collectively, the "Term Lenders") an adequate protection guarantee and additional adequate protection liens in the unencumbered assets of Visteon Electronics Corporation ("VEC"). In view of the Debtors' strong performance in chapter 11 and substantial progress towards plan confirmation, these chapter 11 cases simply do not present the type of exigent circumstances or value deterioration that would justify the granting of additional liens against substantial unencumbered assets as adequate protection for the Term Lenders' prepetition claims, and the granting of a guarantee in support of the Term Loan Obligations effectively constitutes an impermissible cross-collateralization of such obligations. Moreover, there are no benefits that would accrue to the VEC chapter 11 estate that could justify the prejudice that would result to PBGC, as the largest (and possibly only non-insider) creditor of VEC.

With regard to the approval of the DIP Facility supported by VEC's assets, PBGC needs protection against the inequitable possibility that VEC will provide greater value towards the repayment of DIP Obligations than it receives under the DIP Facility. Thus, PBGC requests the insertion of language in the proposed Order that would provide a "true-up" mechanism in the event of such overpayment, and support such reimbursement by the granting of an Intercompany Superpriority Administrative Claim (as defined below).

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

## BACKGROUND

**The Debtors' Pension Liability and PBGC Claims**

1.  On May 28, 2009 (the "Petition Date"), the above-captioned debtors ("Debtors") filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). Since their filings, the Debtors have remained in possession of their assets and continue to manage their businesses as debtors-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 8, 2009, the United States Trustee appointed the Committee.

2.  The Debtors are contributing sponsors, or members of a contributing sponsor's controlled group (as defined below), with respect to the Debtors' defined benefit pension plans (together, the "Pension Plans" and each, individually, a "Pension Plan").[3]

3.  The Pension Plans are single employer plans covered by Title IV of the Employment Retirement Income Security Act of 1974 ("ERISA"), *as amended*, which created the nation's mandatory pension plan termination insurance program. PBGC is a wholly owned United States Government corporation and agency of the United States created under Title IV of ERISA to administer the federal pension insurance programs and enforce compliance with the provisions of Title IV. PBGC guarantees the payment of certain benefits upon termination of a pension plan covered by Title IV of ERISA.

4.  Under ERISA, the contributing sponsor of a pension plan covered by Title IV of ERISA and each member of its "controlled group" are jointly and severally liable for certain obligations relating to such plan. For purposes of ERISA, a "controlled group" is determined according to 29 U.S.C. § 1301(a)(14).

---

[3] The Pension Plans are named: (a) Visteon Pension Plan; (b) Pension Plan of Visteon Systems, LLC Connersville and Bedford Plants; (c) UAW Visteon Pension Account Plan; and (d) Pension Plan of Visteon Caribbean, Inc.

3

5. On or about October 9, 2009, PBGC filed 16 separate proofs of claim (detailed below) against the Debtors (collectively, the "PBGC Claims"). Under the Order Approving Stipulation Permitting Pension Benefit Guaranty Corporation To File Consolidated Claims Under A Single Case Number signed by this Court on September 28, 2009 (Docket No. 1024), a single proof of claim shall be deemed to constitute the filing of a proof of claim against each and every Debtor in these jointly administered cases.

6. PBGC filed four claims – one for each of the Debtors' Pension Plans – in these proceedings, for the estimated amount of the Pension Plans' unfunded benefit liabilities.[4] Should one or more of the Pension Plans terminate, its contributing sponsor and each member of the contributing sponsor's controlled group become jointly and severally liable to PBGC for the total amount of the Pension Plan's unfunded benefit liabilities – that is, the amount that the plan's liabilities, determined under PBGC regulations, exceed plan assets.[5]

7. On behalf of the Pension Plan, PBGC filed four claims – one for each of the Debtors' Pension Plans – in these proceedings, for the estimated amount of contributions that may be owed to the Pension Plans.[6] Whether or not a plan terminates, the contributing sponsor of the Pension Plan and each member of its controlled group are jointly and severally liable to the Pension Plan for contributions necessary to satisfy the minimum funding standards under sections 412 and 430 of the Internal Revenue Code ("IRC") and sections 302 and 303 of ERISA. IRC § 412(c)(11) (2007) (effective for pension plan years beginning on or before Dec. 31, 2007);

---

[4] PBGC timely-filed a claim for the unfunded benefit liabilities of the (a) Visteon Pension Plan in the amount of $438,100,000; (b) Pension Plan of Visteon Systems, LLC Connersville and Bedford Plants in the amount of $127,800,000; (c) UAW Visteon Pension Account Plan in the amount of $4,400,000; and (d) Pension Plan of Visteon Caribbean, Inc. in the amount of $1,800,000.

[5] 29 U.S.C. § 1362(a), (b); *see id.* § 1301(a)(18).

[6] PBGC timely-filed a claim on behalf of the Pension Plan for contributions that may be owed to the (a) Visteon Pension Plan in the amount of $490,943; (b) Pension Plan of Visteon Systems, LLC Connersville and Bedford

29 U.S.C.A. §1082(c)(11) (2007) (same); IRC § 412(b)(1) & (2) (2009) (effective for pension plan years beginning after Dec. 31, 2007); 29 U.S.C.A. §1082(b)(1) & (2) (2009) (same).[7] If one or more of the Pension Plans terminates, this liability may be owed to PBGC as the trustee appointed under 29 U.S.C. § 1342. *See* 29 U.S.C. § 1342(d)(1)(B)(ii) (trustee has the power "to collect for the plan any amounts due the plan, including but not limited to the power to collect from the persons obligated to meet the requirements of § 302 or the terms of the plan.") Also, each of the Debtors may be contractually obligated to contribute to the Pension Plans.

8. PBGC filed four claims – one for each of the Debtors' Pension Plans – in these proceedings, for the estimated amount of insurance premiums, interest, and penalties (collectively, "<u>Premiums</u>") owed to PBGC with respect to the Pension Plans.[8] Each member of the contributing sponsor's controlled group is jointly and severally liable to PBGC for Premiums with respect to the Pension Plans. 29 U.S.C. § 1307(e)(2).[9]

9. PBGC filed four claims – one for each of the Debtors' Pension Plans – in these proceedings, in unliquidated amounts, for shortfall and waiver amortization charges owed to PBGC. Under 29 U.S.C. § 1362(c), if the Pension Plan terminates, the Debtors and each

---

Plants in the amount of $728,974; (c) UAW Visteon Pension Account Plan in an unliquidated amount; and (d) Pension Plan of Visteon Caribbean, Inc. in an unliquidated amount.

[7] References to the IRC, or to 29 U.S.C.A. §§ 1082 and 1083, with a date of 2007 refer to the pre-PPA 2006 provisions in effect for pension plan years beginning *on or before* December 31, 2007. References with a date of 2009 refer to the PPA 2006 provisions in effect for pension plan years beginning *after* December 31, 2007.

[8] PBGC timely-filed a claim for Premiums that may be owed to the (a) Visteon Pension Plan in the amount of $59,070,000; (b) Pension Plan of Visteon Systems, LLC Connersville and Bedford Plants in the amount of $19,413,750; (c) UAW Visteon Pension Account Plan in the amount of $8,156,250; and (d) Pension Plan of Visteon Caribbean, Inc. in the amount of $990,000.

[9] If the Pension Plan terminates in a distress termination pursuant to 29 U.S.C. § 1341(c)(2)(B)(ii) or in a PBGC-intititated termination under 29 U.S.C. § 1342 while the Debtors are attempting to reorganize in chapter 11, and the Debtors ultimately obtain confirmation of a chapter 11 plan of reorganization, the reorganized Debtors' will then be liable to PBGC for Termination Premiums *See* 29 U.S.C. § 4006(a)(7)(B); *Pension Benefit Guar. Corp. v. Oneida Ltd., 562 F. 3d 154 (2nd Cir. 2009)*. Thus, under those circumstances, Termination Premiums are not a dischargeable claim or debt within the meaning of 11 U.S.C. §§ 101(5) and 1141.

member of their controlled group may be jointly and severally liable to PBGC as the trustee appointed under 29 U.S.C. § 1342(b) or (c) for:

- the sum of the shortfall amortization charge for the year in which the Pension Plan termination date occurs plus the aggregate total of shortfall amortization installments for succeeding plan years, and

- the sum of the waiver amortization charge for the plan year in which the Pension Plan termination date occurs plus the aggregate total of waiver amortization installments for succeeding plan years.

**The DIP Financing Motion**

10. On October 28, 2009, the Debtors filed the Motion to obtain a term loan facility in the amount of $150 million, with immediate availability of at least $75 million. As adequate protection for their interests in prepetition Collateral, the Debtors seek authorization to grant the Term Lenders an adequate protection guarantee and additional adequate protection liens in the unencumbered assets of VEC. *See, e.g.*, proposed Order, ¶¶ 12(a), 14.

## PBGC OBJECTIONS

11. PBGC objects to the Debtors' improper attempt to expand the scope of the Term Lenders' Collateral by granting to the Term Lenders a guarantee and additional adequate protection liens in the unencumbered assets of VEC.

12. PBGC first notes the cavalier manner by which the Debtors have sought to capture the VEC unencumbered assets and property for the benefit of the Term Lenders. The clear tenor of the Motion and the supporting declarations suggest that the adequate protection provisions would substantially mirror the existing prepetition collateral. *See*, *e.g.*, Quigley Declaration, ¶ 10; Snyder Declaration, ¶ 14. The proposed guarantee and adequate protection liens from VEC are disclosed, but absolutely no information whatsoever is provided in the Motion as to the potential windfall to the Term Lenders due to such protections. Upon

information and belief, VEC has little or no non-insider debt outside of the PBGC Claims, and significant assets consisting of account receivables and cash. This material omission, in and of itself, warrants denial of the Motion. As matters currently stand, VEC's assets represent substantial unencumbered value that is available to PBGC and possibly (through any intercompany claims) other unsecured creditors.

13. The Debtors offer no justification for the guarantee or additional adequate protection liens against VEC. The guarantee in particular constitutes an impermissible cross-collateralization of the Term Lenders' prepetition obligations and cannot be justified as adequate protection under section 361 of the Bankruptcy Code. *See, e.g.*, *In re Saybrook Manufacturing Co.*, 963 F.2d 1490 (11th Cir. 1992) (holding that cross-collateralization is an impermissible means of postpetition financing); *In re Monach Circuit Industries, Inc.*, 41 B.R. 859, 861 (Bankr. E.D. Pa. 1984) (same). The Term Lenders are currently protected by the adequate protection set forth in the Term Loan Adequate Protection Stipulation. The Debtors have not explained why the Term Lenders are now entitled to substantial additional value in the form of the guarantee and liens from VEC to the detriment of PBGC and other unsecured creditors.

14. Finally, to the extent this Court were to approve the inclusion of the unencumbered assets of VEC as part of the collateral package directly supporting the obligations arising under the DIP Facility, PBGC requires protection against the inequitable possibility of VEC providing greater value towards the repayment of such obligations than it receives under such facility. Thus, PBGC proposes the following additional language to the proposed Order:

> Notwithstanding anything to the contrary in this Order, to the extent a Debtor (a "<u>Benefiting Debtor</u>") directly or indirectly utilizes borrowings giving rise to any of the obligations arising under the DIP Facility (including as a result of intercompany balances incurred after the Petition Date to the extent such balances arise from such borrowings) and such obligations are repaid by any other Debtor (a "<u>Repaying Debtor</u>"), (a) each such

7

Benefiting Debtor shall immediately reimburse the Repaying Debtor for such Benefiting Debtor's share of such repayment, and (b) pending such reimbursement, the Repaying Debtor shall have a superpriority administrative claim (a "<u>Intercompany Superpriority Administrative Claim</u>") under section 364(c)(1) of the Bankruptcy Code against each such Benefiting Debtor in respect of such rights of reimbursement, subject solely to (i) the claims described in Paragraph 13(b) of this Order and the Adequate Protection Superpriority Claim.

[remainder of page intentionally left blank]

## **CONCLUSION**

15. For the reasons stated in the Objection, PBGC strenuously objects to the unwarranted adequate protection package afforded the Term Lenders, and requests that the Motion be denied. Further, PBGC requests the insertion of additional language in the proposed Order to protect against the inequitable possibility of VEC providing greater value towards the repayment of the DIP Obligations than it receives under the DIP Facility.

Dated: November 6, 2009
       New York, New York

                           **KELLEY DRYE & WARREN LLP**

                           By: */s/ Gilbert R. Saydah Jr.*
                           Benjamin D. Feder
                           Gilbert R. Saydah Jr. (Del. Bar No. 4304)
                           Jason Alderson
                           101 Park Avenue
                           New York, New York 10178
                           Tel: (212) 808-7800
                           Fax: (212) 808-7897

                           -and-

                           **PENSION BENEFIT GUARANTY CORPORATION**
                           **OFFICE OF THE CHIEF COUNSEL**
                           Israel Goldowitz, Chief Counsel
                           Charles L. Finke, Deputy Chief Counsel
                           Joel W. Ruderman, Assistant Chief Counsel
                           Theresa Anderson, Attorney
                           Kelly Cusick, Attorney
                           1200 K Street, NW, Suite 340
                           Washington, D.C. 20005-4026
                           Tel: (202) 326-4020 ext. 6353
                           Fax: (202) 326-4112
                           anderson.theresa@pbgc.gov
                           efile@pbgc.gov

                           ATTORNEYS FOR PENSION BENEFIT
                           GUARANTY CORPORATION