# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| VISTEON CORPORATION, et al.,[1] | Case No. 09-11786 (CSS) |
| | Jointly Administered |
| Debtors. | **Re: Docket Nos. 1200** |

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 AND 507: (A) APPROVING SENIOR SECURED SUPERPRIORITY PRIMING POSTPETITION FINANCING; (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (C) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (D) AUTHORIZING THE USE OF CASH COLLATERAL; AND (E) MODIFYING THE AUTOMATIC STAY

THIS MATTER having come before the Court upon the motion (the "DIP Motion") of the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 365, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Del Bankr. L.R. 4001-2, seeking entry of a final order (the "Order") *inter alia*:

      (i)      authorizing Visteon Corporation, as debtor and debtor in possession (the

---

1      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Visteon Corporation (9512); ARS, Inc. (3590); Fairlane Holdings, Inc. (8091); GCM/Visteon Automotive Leasing Systems, LLC (4060); GCM/Visteon Automotive Systems, LLC (7103); Infinitive Speech Systems Corp. (7099); MIG-Visteon Automotive Systems, LLC (5828); SunGlas, LLC (0711); The Visteon Fund (6029); Tyler Road Investments, LLC (9284); VC Aviation Services, LLC (2712); VC Regional Assembly & Manufacturing, LLC (3058); Visteon AC Holdings Corp. (9371); Visteon Asia Holdings, Inc. (0050); Visteon Automotive Holdings, LLC (8898); Visteon Caribbean, Inc. (7397); Visteon Climate Control Systems Limited (1946); Visteon Domestic Holdings, LLC (5664); Visteon Electronics Corporation (9060); Visteon European Holdings Corporation (5152); Visteon Financial Corporation (9834); Visteon Global Technologies, Inc. (9322); Visteon Global Treasury, Inc. (5591); Visteon Holdings, LLC (8897); Visteon International Business Development, Inc. (1875); Visteon International Holdings, Inc. (4928); Visteon LA Holdings Corp. (9369); Visteon Remanufacturing Incorporated (3237); Visteon Systems, LLC (1903); Visteon Technologies, LLC (5291). The location of the Debtors' corporate headquarters and the service address for all the Debtors is: One Village Center Drive, Van Buren Township, Michigan 48111.

"Borrower") to obtain secured, superpriority postpetition financing pursuant to the terms and conditions of that certain Senior Secured Super Priority Priming Debtor in Possession Credit and Guaranty Agreement, in substantially the form attached to the DIP Motion as Exhibit B (as may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Agreement"), by and among the Borrower and certain subsidiaries of the Borrower, each as a debtor and debtor in possession, who are signatories thereto (the "Guarantors"), Wilmington Trust FSB, administrative agent (in such capacity, the "DIP Administrative Agent"), and collateral agent, (in such capacity, the "Collateral Agent", and together with the DIP Administrative Agent, the "DIP Agent"), and certain lenders party thereto (collectively, the "DIP Lenders"), and which contemplates a multi-draw term loan in an amount equal to $150,000,000.00 (the "DIP Facility") of which, pursuant to and in accordance with the terms of the DIP Agreement, $75,000,000 (referred to as and as defined in the DIP Agreement, the "Closing Date Advance") shall be drawn on the Closing Date (as defined in the DIP Agreement), and the remainder may be drawn in one additional advance (referred to as and as defined in the DIP Agreement, the "Delayed Advance") no later than twenty (20) days prior to the Maturity Date (as defined in the DIP Agreement).

(ii)     authorizing the Debtors on a final basis to perform under the DIP Agreement and other related loan documents (collectively, and together with any amendments, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)     granting to the DIP Agent and the DIP Lenders allowed superpriority administrative expense claims in the Cases for the DIP Facility and all obligations owing thereunder and under the DIP Documents (collectively, and including all "Obligations" as

described in the DIP Documents, the "DIP Obligations"), subject to the priorities set forth herein;

(iv)     granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected security interests in and liens on all of the applicable DIP Collateral (as defined herein) which liens shall be subject to the priorities set forth herein;

(v)     authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Documents as they become due, including, without limitation, commitment fees, unused facility fees, closing fees, administrative agent's fees, collateral agent's fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisers, financial advisors, accountants, and other consultants, and the reasonable legal expenses of the DIP Lenders (but only to the extent incurred in connection with the enforcement of the DIP Obligations or preservation of the Lenders' rights in respect thereof), all to the extent provided by and in accordance with the terms of the DIP Documents;

(vi)     authorizing the Debtors' continued use of the Cash Collateral (as defined herein) pursuant to the terms of the ABL Cash Collateral Order (as defined herein), the Term Loan Adequate Protection Stipulation (as defined herein), and this Order;

(vii)     providing adequate protection to the Prepetition Term Agent (as defined herein), Prepetition Term Lenders (as defined herein), Prepetition ABL Agent (as defined herein) and the Prepetition ABL Lenders (as defined herein) for any diminution in value of their interests in the Collateral (as defined herein), including the Cash Collateral (as defined herein); and

(viii)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Order.

The Court having considered the DIP Motion, the Affidavit of William G. Quigley, III in

support of the chapter 11 petitions and first day motions, the exhibits attached thereto, the DIP Documents, the declarations in support of the DIP Motion, and the evidence submitted or adduced and the arguments of counsel made at the final hearing held on November 12, 2009 (the "Hearing"); and adequate notice of the Hearing having been provided in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

A.      *Petition Date:* On May 28, 2009 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.

B.      *Debtors in Possession.* The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

C.      *Jurisdiction and Venue.* Pursuant to 28 U.S.C. §§ 157(b) and 1334, this Court has jurisdiction over these proceedings, and over the property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceeding on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Statutory Committee.* On June 8, 2009, the United States Trustee (the "U.S.

---

2       As necessary and appropriate, findings of fact may be construed as conclusions of law, and conclusions of law as findings of fact, pursuant to Bankruptcy Rule 7052.

Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

E.   *Debtors' Stipulations.*   After consultation with their attorneys and financial advisors, the Debtors admit, stipulate, acknowledge, agree and shall be immediately bound by the following (collectively, paragraphs E(i) through E(xi) below are referred to herein as the "Stipulations"):

(1)   As of the Petition Date, the Debtors were parties to the following agreements:

(a)   Amended and Restated Credit Agreement dated as of April 10, 2007 (as amended by that certain Successor Agent Agreement and Amendment dated as of April 15, 2009, and as further amended, supplemented, and in effect from time to time, collectively, "Prepetition Term Loan Agreement"), in the original principal amount of $1,500,000,000, among Visteon Corporation, as borrower (the "Prepetition Borrower"), the several lenders from time to time party thereto ("Prepetition Term Lenders") and Wilmington Trust FSB, as administrative agent for the Prepetition Term Lenders and as the successor to JPMorgan Chase Bank, N.A. in such capacity , the "Prepetition Term Agent";

(b)   Guarantee and Collateral Agreement dated as of June 13, 2006, as amended as of April 10, 2007 pursuant to which certain subsidiaries of the Prepetition Borrower (the "Prepetition Guarantors") guaranteed the obligations of the Prepetition Borrower under the Prepetition Term Loan Agreement and the Prepetition Borrower and Prepetition Guarantors granted security interests in substantially of their assets (as amended and in effect from time to time, the "Guarantee and Collateral Agreement"), and

A/73168938.13

together with all other security agreements, pledge agreements, fixture filings, mortgages, deeds of trust, control agreements, and all other collateral and ancillary documentation executed or delivered in connection with the Prepetition Term Loan Agreement, the "Prepetition Term Security Documents", and the Prepetition Term Security Documents together with the Prepetition Term Loan Agreement, any amendment, supplement, or other modification of any of the foregoing, or any related agreement, instrument, or other document executed or delivered in connection therewith to which any of the Prepetition Borrower or any Prepetition Guarantor is a party (collectively, the "Prepetition Term Loan Documents");

(c)    Credit Agreement dated as of August 14, 2006 (as amended, restated, or otherwise modified from time to time, the "Prepetition ABL Credit Agreement"), among the Prepetition Borrower, certain Prepetition Guarantors, as borrowers, Ford Motor Company, as assignee and sole lender, and Ford CCA, LLC solely as collateral guarantor of certain outstanding letters of credit (Ford CCA, LLC, but only to the extent of its guarantees, collectively with Ford, "Prepetition ABL Lenders") and The Bank of New York Mellon, as administrative agent for the Prepetition ABL Lenders and successor to JPMorgan Chase Bank, N.A., in such capacity ("Prepetition ABL Agent"), and JP Morgan Chase Bank, N.A. as letter of credit issuing bank; and

(d)    Intercreditor Agreement, dated as of June 13, 2006 (as amended and in effect from time to time, the "Intercreditor Agreement"), among the Prepetition ABL Agent, the Prepetition Term Agent, Visteon Corporation and specified subsidiaries and affiliates of Visteon Corporation.

(2)    *Prepetition Term Loan Obligations:*    as of the Petition Date, (a) in

accordance with the Prepetition Term Loan Documents, the Prepetition Borrower and Prepetition Guarantors were (and they remain) indebted and liable to the Prepetition Term Agent and the Prepetition Term Lenders, without defense, counterclaim, or offset of any kind, in respect of the loans made by the Prepetition Term Lenders to the Prepetition Borrower under the Prepetition Term Loan Agreement in the aggregate principal amount of not less than $1,500,000,000 (plus accrued and unpaid interest); (b) in accordance with the Prepetition Term Loan Documents, the Prepetition Borrower and Prepetition Guarantors were indebted and liable to the Prepetition Term Agent and the Prepetition Term Lenders for fees, expenses (including any and all attorneys', accountants', appraisers', and financial advisors' fees and expenses) that are chargeable or reimbursable pursuant to the Prepetition Term Loan Documents, and for charges and other obligations incurred in connection with those loans as provided in the Prepetition Term Loan Documents; and (c) in accordance with the Prepetition Term Loan Documents, the Prepetition Borrower and the Prepetition Guarantors were indebted and liable for all other Obligations under and as defined in the Prepetition Term Loan Agreement (to the extent not described in clauses (1) and (2) above) (items (a) through (c) being herein referred to, collectively, as the "Prepetition Term Obligations");

(3)     *Prepetition Liens and Collateral.*   As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition Date, the Prepetition Borrower and Prepetition Guarantors granted to the Prepetition Term Agent, for the benefit of itself and the Prepetition Term Lenders, security interests in and liens on (the "Prepetition Liens"), among other things, substantially all of their existing and after-acquired assets (collectively, the "Collateral", for purposes of this Order, Collateral shall include all

collateral granted to the Prepetition Term Agent pursuant to any orders of the court, whether as adequate protection or otherwise, but shall expressly not include any "Post-Petition L/C Collateral" as defined in the Order Approving Post-Petition Secured Letter of Credit Facility and Authorizing the Debtors to Pay Certain Fees and Costs Related Thereto entered on or about the date hereof (the "L/C Order")) to secure the Prepetition Term Obligations.

(4)     *Prepetition ABL Liens and Prepetition ABL Collateral.*  As more fully set forth in the Prepetition ABL Credit Agreement and all security and other documents related thereto (the "Prepetition ABL Documents"), prior to the Petition Date, the Prepetition Borrower and Prepetition Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, security interest in and liens on substantially all of the Collateral in existence prior to the Petition Date to secure the obligations under the Prepetition ABL Documents.

(5)     *Priority.*  The priority between the Prepetition ABL Agent and Prepetition ABL Lenders, on the one hand, and the Prepetition Term Agent and Prepetition Term Lenders, on the other hand, as to the Collateral is established pursuant to the Intercreditor Agreement.

(6)     *Prepetition Term Loan Priority Collateral and Term Loan Cash Collateral.*

(a)     *Prepetition Term Loan Priority Collateral.*  The prepetition priority collateral of the Prepetition Term Loan Agent and the Prepetition Term Lenders is defined as "Term Loan Priority Collateral" in the Intercreditor Agreement and includes: (i) the Intellectual Property (as defined in the Intercreditor Agreement, and in

accordance with such definition, including all proceeds therefrom) owned, used, or licensed by the Debtors who are obligors under the Prepetition Term Loan Documents, provided that Term Loan Priority Collateral does not include computer programs embedded in goods and any supporting information to the extent included in "goods" under Section 9-102(44) of the Uniform Commercial Code (as in effect in the State of New York); (ii) all obligations under any indebtedness owed to any Debtor who is an obligor under the Prepetition Term Loan Documents by any Foreign Subsidiary (as defined in the Intercreditor Agreement); (iii) the shares of Pledged Stock[3] of (A) any Foreign Subsidiary, (B) Visteon International Holdings, Inc., (C) any other Foreign Stock Holding Company (as defined in the Intercreditor Agreement), (D) Halla Climate Control Corporation, and (E) any Securitization Subsidiary (as defined in the Intercreditor Agreement); (iv) all Foreign Investments (as defined in the Intercreditor Agreement); (v) to the extent evidencing or governing any of the items referred to in clause (i) above, all Supporting Obligations (as defined in the Uniform Commercial Code as in effect in the State of New York); provided that to the extent that the foregoing also relates to ABL Priority Collateral (as defined herein), only that portion related to the items referred to in clause (i) shall be included in Term Loan Priority Collateral; (vi) all books and records relating primarily to all or any of the foregoing; (vii) all proceeds of any of the foregoing, and (viii) all collateral security and guarantees given by non-debtor obligor consisting of

---

[3] "Pledged Stock" is defined in the Guarantee and Collateral Agreement as the shares of Capital Stock listed on Schedule 2 to the Guarantee and Collateral Agreement, together with any other shares, stock certificates, options, interests or rights of any nature whatsoever in respect of the Capital Stock of any Person that may be issued or granted to, or held by, any Loan Party while the Guarantee and Collateral Agreement is in effect; provided that in no event shall more than 65% of the total outstanding Foreign Subsidiary Voting Stock of any Foreign Subsidiary directly owned by a Loan Party be required to be pledged to secure the Prepetition Term Obligations or constitute "Pledged Stock"; and provided further that the Capital Stock the TMD Entities shall not be required to be pledged under the Guarantee and Collateral Agreement or constitute "Pledged Stock."

A/73168938.13

any of the foregoing, in each case, subject to certain limitations set forth in the Intercreditor Agreement.

(b) *ABL Priority Collateral.* As provided in the Intercreditor Agreement and ABL Cash Collateral Order (as defined herein), "ABL Priority Collateral" consists of substantially all Collateral, including assets of the same type as such prepetition collateral arising on or after the Petition Date to secure adequate protection claims of the ABL Agent and ABL Lenders, that is not Term Loan Priority Collateral. The Prepetition Term Agent holds a valid, binding, perfected, enforceable, priority lien on ABL Priority Collateral, which, pursuant to the terms of the Intercreditor Agreement, is junior to the Prepetition ABL Agent's lien on ABL Priority Collateral.

(c) *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations.* The liens and security interests granted to the Prepetition Term Agent (for its benefit and for the benefit of the Prepetition Term Lenders) under and in connection with the Prepetition Term Security Documents and Term Loan Adequate Protection Stipulation (as defined herein) are (i) valid, binding, perfected, enforceable, first-priority liens on the personal and real property described in the Prepetition Term Security Documents, but subject to subordination in certain instances to the liens of the Prepetition ABL Agent for the benefit of the Prepetition ABL Lenders in accordance with the Intercreditor Agreement, and further limited as to Restricted Assets (as defined in the Intercreditor Agreement) under and pursuant to the Intercreditor Agreement; (ii) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Term Obligations exist, and no portion of the Prepetition Liens or Prepetition Term Obligations is subject to any challenge or defense

10

including, without limitation, avoidance, disallowance, disgorgement, recharacterization or subordination (whether equitable or otherwise) under the Bankruptcy Code or applicable nonbankruptcy law; (iii) the Debtors and their estates have no offsets, claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against the Prepetition Term Agent or Prepetition Term Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Term Loan Documents; and (iv) the Debtors have waived, discharged and released any right they may have to challenge any of the Prepetition Term Obligations and the security for these obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and /or choses of action against the Prepetition Term Agent, the Prepetition Term Lenders and/or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees.

(d)     *Term Loan Adequate Protection Stipulation.* The Debtors are subject to a certain Stipulation, Agreement, and Final Order on Consent (I) Authorizing Use of the Prepetition Term Loan Priority Collateral and Term Loan Cash Collateral under 11 U.S.C. §361; and (II) Granting Adequate Protection under 11 U.S.C. §§ 361, 362, and 363 (as amended, supplemented or modified from time to time, the "Term Loan Adequate Protection Stipulation"), entered by this Court on July 16, 2009, which governs the use of Term Loan Cash Collateral (as defined in the Term Loan Adequate Protection Stipulation) and grants adequate protection liens and superpriority claims to the Prepetition Term Agent, Prepetition Term Lenders, Prepetition ABL Agent and

Prepetition ABL Lenders, in respect of the use of Term Loan Cash Collateral. The Debtors shall remain bound by the stipulations under the Term Loan Adequate Protection Stipulation.

(e)     *ABL Cash Collateral Order*.  The Debtors are subject to a certain Seventh Supplemental Interim Order (I) Authorizing the Use of Cash Collateral Under 11 U.S.C. § 363, (II) Granting Adequate Protection Under 11 U.S.C. §§ 361, 362, and 363, and (III) Scheduling a Final Hearing Under Bankruptcy Rule 4001(B) (together with any further supplemental interim order and/or final order, the "ABL Cash Collateral Order") which governs the use of ABL Cash Collateral (as defined in the ABL Cash Collateral Order, and together with the Term Loan Cash Collateral, the "Cash Collateral") and grants adequate protection liens and superpriority claims to the Prepetition ABL Agent, Prepetition ABL Lenders, Prepetition Term Agent and Prepetition Term Lenders in respect of the use of ABL Cash Collateral; and.

(f)     *Cash Collateral*.  The continued use of Term Loan Cash Collateral and Term Loan Priority Collateral and ABL Cash Collateral shall continue to be governed by the Term Loan Adequate Protection Stipulation and the ABL Cash Collateral Order, as modified by this Order.

F.     *Findings Regarding the Postpetition Financing*.

(1)     *Request for Postpetition Financing*.  The Debtors seek authority to enter into the DIP Facility on the terms described herein and in the DIP Documents.

(a)     *Priming of the Prepetition Liens and Adequate Protection*.  As further described herein, the DIP Facility contemplates the priming of the Prepetition Liens and all other liens of the Prepetition Term Agent and the Prepetition Term Lenders

on the Collateral, and the priming of all liens of the Prepetition ABL Agent and the Prepetition ABL Lenders (including any liens granted under the Term Loan Adequate Protection Stipulation and the ABL Cash Collateral Order) only on the Term Loan Priority Collateral under Section 364(d) of the Bankruptcy Code. Such priming will enable the Debtors to obtain the DIP Facility and to continue to operate their business for the benefit of the estates and creditors. However, the Prepetition Term Agent, Prepetition Term Lenders, Prepetition ABL Agent and Prepetition ABL Lenders are entitled to receive adequate protection as set forth in this Order pursuant to Sections 361, 363 and 364 of the Bankruptcy Code, for any diminution in the value of their interests in the Collateral (which for the avoidance of doubt, includes Cash Collateral) resulting from the Debtors' use, sale or lease of such collateral, market value decline of such collateral from and after the date of entry of this Order, the imposition of the automatic stay, the priming of the Prepetition Liens, and the subordination to the Carve Out, as defined herein (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value"). Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Term Agent, for its benefit and the benefit of the Prepetition Term Lenders, will receive: (i) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein; (ii) a guaranty from Visteon Electronics Corporation ("VEC") as to all Term Loan Obligations and a valid, binding, perfected, enforceable, priority lien, only junior to the liens securing the DIP Facility (and subject to the terms of the Intercreditor Agreement), on all present and after acquired assets and property of VEC; (iii) ongoing payment of the reasonable fees, costs and expenses, including, without limitation, legal and other professionals' fees and expenses,

13

of the Prepetition Term Agent and Prepetition Term Lenders to the extent provided for in the Term Loan Adequate Protection Stipulation; and (iv) the agreement of the Debtors that the Debtors shall not, sell, transfer, lease, or otherwise dispose of all or substantially all of the assets or properties of the Debtors without the prior consent of the Prepetition Term Agent, unless such sale satisfies the claims of the Prepetition Term Agent and Prepetition Term Lenders in cash and in full. Additionally, pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition ABL Agent, for its benefit and the benefit of the Prepetition ABL Lenders, will receive: (i) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein; and (ii) a guaranty from VEC as to all obligations under the Prepetition ABL Credit Agreement and a valid, binding, perfected, enforceable, priority lien (subject to the terms of the Intercreditor Agreement), on all present and after acquired assets and property of VEC. Notwithstanding anything to the contrary herein, all rights solely with respect to adequate protection are preserved, including without limitation, rights to seek recharacterization under Section 506 of the Bankruptcy Code or other applicable law.

(b)      *Need for Postpetition Financing.*   The Debtors require the DIP Facility in order to, among other things, permit the continuation of their businesses, protect vendor, customer and other counterparties relationships, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes. The Debtors' use of the Collateral (including the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.

(c)      *No Credit Available on More Favorable Terms.*   Given their

A/73168938.13

current financial condition, financing arrangements, and capital structure, the Debtors have been unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain credit: (i) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (ii) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (iii) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders, (A) perfected security interests in and liens on (each as provided herein) the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 7 herein, (B) superpriority claims with the priorities set forth in paragraph 8 herein, and (C) the other protections set forth in this Order and the DIP Documents.

(d)     *Use of Proceeds of the DIP Facility.* As a condition to the entry into the DIP Agreement and the extension of credit under the DIP Facility, the DIP Agents and DIP Lenders required, and the Debtors agreed, that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Documents and in accordance with and to the extent set forth in a budget provided by the Debtors (including permitted variances) (as the same may be modified from time to time with the consent of the Majority DIP Lenders (as defined herein) and consistent with the terms of the DIP Documents, the "Budget") solely for (i) working capital, capital expenditures and other general corporate purposes; (ii) payment of costs of

administration of the Cases; (iii) payment of such prepetition expenses as are consented to by the Majority DIP Lenders, and/or are approved by the Court; and (iv) as otherwise permitted under the DIP Facility (together, the "Permitted Uses of Proceeds").

(e) *DIP Proceeds.* As a condition to the entry into the DIP Agreement and the extension of credit under the DIP Facility, the DIP Agents and DIP Lenders required, and the Debtors agreed, that until all DIP Obligations are satisfied in full, except as expressly provided to the contrary in the DIP Agreement, the proceeds of the DIP Facility (the "DIP Proceeds") shall be deposited and maintained by the Debtors in segregated bank accounts subject to control agreements (in form and substance satisfactory to the DIP Agent, the "Controlled Accounts") in favor of the DIP Agent, until such proceeds are used by the Debtors in accordance with the Budget and the terms of this Order and the DIP Documents. For the avoidance of doubt, DIP Proceeds are neither ABL Cash Collateral nor ABL Priority Collateral, and shall not be subject to any liens of the Prepetition ABL Agent.

(f) *Application of Proceeds of Collateral.* As a condition to the entry into the DIP Documents, the extension of credit under the DIP Facility and the continued authorization to use Cash Collateral and other Collateral pursuant to the Term Loan Adequate Protection Stipulation and the ABL Cash Collateral Order, the Debtors agree that as of and commencing on the date of the Hearing, the Debtors shall apply the proceeds of DIP Collateral as set forth in paragraph 21 herein.

G. *Sections 506(c) and 552(b).* In light of: (1) the agreement of the DIP Agent and DIP Lenders to subordinate their liens and superpriority claims to the Carve Out (as defined herein); and (2) the agreement of the Prepetition Term Agent and Prepetition Term Lenders to

A/73168938.13

subordinate their liens (and be primed) and claims to the Carve Out and the DIP Liens, the Debtors believe that each of the DIP Agent, DIP Lenders, Prepetition Term Agent and Prepetition Term Lenders are entitled to, and the Debtors agree to grant, the following: (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code; and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

H.      *Good Faith of the DIP Agent and the DIP Lenders*.

(1)      *Willingness to Provide Financing*.  The DIP Lenders each are willing to provide financing to the Debtors subject to:  (a) the entry of this Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents and satisfaction of all conditions precedent in the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and DIP Lenders have extended and are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of the Order or any other order, or by the filing or pendency of any motion or appeal seeking to reverse, modify, vacate, amend, reargue, or reconsider the Order or any other order.

(2)      *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP

Facility and the agreement by the Prepetition Term Agent and Prepetition Term Lenders to the priming of the Prepetition Liens, were negotiated in good faith and at arms' length among the Debtors, DIP Agent, DIP Lenders, Prepetition Term Agent and Prepetition Term Lenders. Credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent and DIP Lenders are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Order.

I.      *Notice*.  Notice of the Hearing and the relief requested in the DIP Motion was provided by the Debtors, whether by fax, email, overnight courier or hand delivery, to certain parties in interest, including:   (i) the U.S. Trustee; (ii) each of the Debtors' thirty largest unsecured creditors; (iii) counsel to the Prepetition Term Agent for itself and for the Prepetition Term Lenders; (vi) counsel to the DIP Agent for itself and for the DIP Lenders; (v) counsel to the Creditors' Committee; and (vi) counsel to the Prepetition ABL Agent for itself and for the Prepetition ABL Lenders.  The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit the relief set forth in this Order.  The notice given complies with the governing rules, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      DIP Motion Approved.  The DIP Motion is granted on a final basis, subject to the terms and conditions set forth in this Order.

2.      Objections Overruled.  All objections, if any, to the extent not withdrawn or

resolved are hereby overruled.

**DIP Facility Authorization**

3.     <u>Authorization of the DIP Financing and DIP Documents</u>.  The DIP Documents are hereby approved on a final basis.  The Debtors are expressly and immediately authorized and empowered to execute and deliver all DIP Documents (and other documents in connection with the adequate protection provided to the Prepetition Term Agent and Prepetition Term Lenders) and any other relevant documentation and to incur and to perform the DIP Obligations in accordance with, and subject to, this Order and the DIP Documents, and to deliver all instruments and documents which may be necessary or advisable for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Order and the DIP Documents.  The Debtors are hereby authorized and directed to pay the principal, interest, fees, expenses and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, unused facility fee, commitment fees, administrative agent's fees, the fees and disbursements of the DIP Agent and DIP Lenders (including the reasonable fees and expenses of the DIP Agent's and DIP Lenders' attorneys, advisers, accountants, and other consultants, collateral examination, monitoring and appraisal fees, financial advisory fees, indemnification, and any other reimbursement of fees and expenses, all of which fees and expenses shall constitute DIP Obligations), all to the extent provided in the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation or otherwise, will be deposited and applied as required by this Order and the DIP Documents (subject to the Intercreditor Agreement, ABL Cash Collateral Order and the Term Loan Adequate Protection Stipulation).  Upon execution and delivery, the

19

DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms.

4.    Authorization to Borrow.  Subject to the terms and conditions set forth in the DIP Documents, DIP Facility, and this Order, the Debtors are hereby authorized on a final basis to borrow an aggregate principal amount equal to $150,000,000, of which, pursuant to and in accordance with the terms of the DIP Documents and this Order, $75,000,000 shall be drawn on the Closing Date, and the remainder may be drawn pursuant to the Delayed Advance (as both terms are defined in the DIP Documents).

5.    DIP Obligations.  The DIP Documents and this Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors (and Guarantors), their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (each a "Successor Case").  Upon entry of this Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Agent or DIP Lenders under the DIP Documents whether borrowed pursuant to the Closing Date Advance or the Delayed Advance (as both terms are defined in the DIP Documents), including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Documents and this Order. The DIP Obligations shall be due and payable, without notice or demand on the Termination Date (as defined in paragraph 27 hereof).

6.    DIP Liens and DIP Collateral.  In order to secure the DIP Obligations, effective

immediately upon the execution of the DIP Agreement and the entry of this Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") all presently owned and hereafter acquired (a) assets of the Borrower and Guarantors of a type constituting Collateral, (b) except as provided below, currently unencumbered assets of the Borrower and Guarantors (but excluding the assets of VEC and currently unencumbered stock of first-tier foreign subsidiaries such that no more than 65% of the capital stock and equity interests in the first-tier foreign subsidiaries shall be subject to the DIP Liens), (c) the proceeds of any avoidance action brought pursuant to Section 549 of the Bankruptcy Code to recover any post petition transfer of collateral, and (d) the Borrower's and any Guarantor's rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof (collectively, the "DIP Collateral"). The Prepetition Liens shall inure to the benefit of the DIP Agent and DIP Lenders in the priorities set forth in the DIP Agreement and herein (and consistent with the Intercreditor Agreement), shall secure the DIP Obligations, and shall be included in the definition of "DIP Liens." The DIP Agent's and the DIP Lenders' rights with respect to the DIP Collateral are not subject to any setoff, claims, withholdings, or other defenses.

7.     DIP Lien Priority.  The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Liens shall be junior only to: (a) the Carve Out, (b) pre-existing validly perfected liens having priority over the liens securing the obligations under the Prepetition Term Loan Agreement and the Prepetition

A/73168938.13

ABL Agreement, and (c) liens in favor of the Prepetition ABL Agent and Prepetition ABL Lenders on all presently owned and hereafter acquired assets of the Borrower and Guarantors of a type constituting ABL Priority Collateral. Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereafter granted in the Cases or any Successor Cases. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

8.      <u>DIP Superpriority Claim</u>.  Upon entry of this Order, the DIP Agent and DIP Lenders are hereby granted on a final basis, pursuant to section 364(c)(1) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claim</u>") for all DIP Obligations. The DIP Superpriority Claim shall be subordinate only to the Carve Out, and shall otherwise have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, and at all times be senior to the rights of the Debtors and their estates, any successor trustee or other estate representative to the extent permitted by law, or any other creditor in the Cases.

A/73168938.13

9.      No Obligation to Extend Credit.  None of the DIP Agents or DIP Lenders shall have any obligation to make any loan under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Documents and this Order have been satisfied in full or waived in accordance with the voting provisions of this Order and the DIP Documents.

10.     Use of DIP Facility Proceeds.  The Debtors shall use the proceeds of the DIP Facility only for the purposes specifically set forth in this Order, the DIP Documents, and in compliance with the Budget (as defined herein), a copy of which has been delivered to the DIP Agent.

**Cash Collateral and Authorization for Adequate Protection**

11.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Order and the DIP Documents, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral pursuant to the ABL Cash Collateral Order and the Term Loan Adequate Protection Stipulation.  However, the Debtors may only use Cash Collateral until the Termination Date (as defined herein); provided, however, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll obligations and pay expenses necessary, in the good faith judgment of the Debtors, to be paid at such time for the preservation of the Debtors and their estates, and as otherwise agreed by the DIP Agent and, as applicable, the Prepetition Term Agent and/or Prepetition ABL Agent, in their sole discretion.  Notwithstanding anything to the contrary in this Order, the ABL Cash Collateral Order or the Term Loan Adequate Protection Stipulation, if any DIP Proceeds are on deposit in the Controlled Accounts at any time that ABL Cash Collateral maintained in bank accounts and or investment accounts subject to control agreements with the Prepetition ABL Agent is less than $150,000,000 in aggregate, then the

23

Debtors shall not use any further ABL Cash Collateral unless and until all DIP Proceeds on deposit in the Controlled Accounts have been used pursuant to the DIP Agreement and this Order (and are no longer on deposit in the Controlled Accounts). Nothing in this Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting from a disposition of assets outside the ordinary course of business, except as permitted in this Order, the DIP Facility, the DIP Documents, the ABL Cash Collateral Order, the Term Loan Adequate Protection Stipulation, and the Order Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets.

12. <u>Adequate Protection Liens</u>.

(a) *Adequate Protection Liens.* Effective immediately upon entry of the Order and pursuant to section 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Agent and Prepetition Term Lenders in Collateral against any Diminution in Value of such interests resulting from the priming of their liens by the DIP Facility, or any deterioration in the value of the assets constituting Collateral from and after the date of entry of this Order, the Debtors grant on a final basis continuing valid, binding, enforceable, non-avoidable and automatically perfected replacement security interests in and liens on (i) all of the Debtors' right, title, and interest in, to and under all present and after acquired property and proceeds of the Debtors of the same nature or type as the Collateral, including all cash and cash collateral of the Debtors, whether now existing or later acquired, (ii) all present and after acquired assets and property of VEC, (iii) proceeds of any avoidance action brought pursuant to Section 549 of the Bankruptcy Code to recover any post petition transfer of collateral, and (iv) the Borrower's and any Guarantor's rights under Section 506(c) of

24

the Bankruptcy Code and the proceeds thereof (the "Term Loan Adequate Protection Liens").

(b)    Effective immediately upon entry of the Order and pursuant to section 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Agent and Prepetition ABL Lenders in the ABL Priority Collateral and the Term Loan Priority Collateral against any Diminution in Value of such interests from and after the date of entry of this Order, the Debtors grant on a final basis continuing valid, binding, enforceable, non-avoidable and automatically perfected replacement security interest in and liens on (i) all of the Debtors' right, title, and interest in, to and under all present and after acquired property and proceeds of the Debtors of the same nature or type as the Collateral, including all cash and cash collateral of the Debtors, whether now existing or later acquired, (ii) all present and after acquired assets and property of VEC, (iii) proceeds of any avoidance action brought pursuant to Section 549 of the Bankruptcy Code to recover any post petition transfer of collateral, and (iv) the Borrower's and any Guarantor's rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof (the "ABL Adequate Protection Liens", and together with the Term Loan Adequate Protection Liens, the "Adequate Protection Liens").

(c)    *Priority of Adequate Protection Liens.*    The Term Loan Adequate Protection Liens shall be junior only to:  (i) the Carve Out, (ii) pre-existing validly perfected liens having priority over the liens securing the obligations under the Prepetition Term Loan Agreement and the Prepetition ABL Agreement, (iii) liens (including ABL Adequate Protection Liens) in favor of the Prepetition ABL Agent and Prepetition ABL Lenders on all presently owned and hereafter acquired assets of the Borrower and Guarantors of a type constituting ABL Priority Collateral (which includes adequate protection liens on Collateral of such type granted pursuant to the ABL Cash Collateral Order and this Order), and (iv) DIP Liens.  The ABL

25

Adequate Protection Liens shall be junior only to: (i) the Carve Out, (ii) pre-existing validly perfected liens having priority over the liens securing the obligations under the Prepetition Term Loan Agreement and the Prepetition ABL Agreement, and (iii) liens (including Term Loan Adequate Protection Liens) in favor of the Prepetition Term Agent, Prepetition Term Lenders, DIP Lenders, and DIP Agent on all presently owned and hereafter acquired assets of the Borrower and Guarantors of a type constituting Term Loan Priority Collateral (which includes adequate protection liens on Collateral of such type granted pursuant to the Term Loan Adequate Protection Stipulation and this Order). The Adequate Protection Liens shall otherwise be senior to all other security interests, mortgages, collateral interests, liens or claims on or to any of the DIP Collateral. Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, or upon the dismissal of the Cases or any Successor Cases. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

13.     Adequate Protection Superpriority Claims.

(a)     *Adequate Protection Superpriority Claims.* As further adequate protection of the interests of the Prepetition Term Agent and Prepetition Term Lenders in the Collateral against any Diminution in Value of such interests in the Collateral, the Prepetition Term Agent and Prepetition Term Lenders are hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Cases and any Successor Cases (the "Adequate Protection Superpriority

Claim"). Additionally, to the extent of any Diminution in Value of the Prepetition ABL Lender's interest in Term Loan Priority Collateral, the Prepetition ABL Lenders and Prepetition ABL Agent are hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed junior superpriority administrative expense claim in the Cases and any Successor Cases (the "ABL Junior Adequate Protection Claim").

(b) *Priority of Adequate Protection Superpriority Claim.* The Adequate Protection Superpriority Claim shall be junior only to the (i) Carve Out, (ii) the DIP Obligations, and (iii) any Section 507(b) claim in favor of the Prepetition ABL Agent that exists pursuant to the ABL Cash Collateral Order in connection with the diminution in value, if any, of the Prepetition ABL Lenders' interest in the Prepetition ABL Priority Collateral. The ABL Junior Adequate Protection Claim shall be junior only to the (i) Carve Out, (ii) the DIP Obligations, (iii) the Adequate Protection Superpriority Claim; and (iv) any Section 507(b) claim in favor of the Prepetition Term Agent that exists pursuant to the Term Loan Adequate Protection Stipulation in connection with the diminution in value, if any, of the Prepetition Term Lenders' interest in the Prepetition Term Priority Collateral. Except as set forth herein, the Adequate Protection Superpriority Claim and ABL Junior Adequate Protection Claim shall (subject to the Carve Out) have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

14. <u>Adequate Protection Guarantee</u>. As further adequate protection of the interests of the Prepetition Term Agent, Prepetition Term Lenders, Prepetition ABL Agent and Prepetition

ABL Lenders in the Collateral against any Diminution in Value of such interests in the Collateral, the payment of all Term Loan Obligations and all obligations under the Prepetition ABL Agreement shall be unconditionally guaranteed by VEC. Any claims arising from such guarantees shall have superpriority status junior only to the Carve Out and any similar claim held by the DIP Agent for the benefit of itself and the DIP Lenders, and shall be subject to the Intercreditor Agreement.

15. <u>Adequate Protection Payments and Protections</u>. Pursuant to the Term Loan Adequate Protection Stipulation, the Debtors were authorized and directed (and such authorization is hereby ratified, confirmed and approved) to provide adequate protection to the Prepetition Term Agent and the Prepetition Term Lenders, in the form of Adequate Protection Payments (as defined in the Term Loan Adequate Protection Stipulation, the "<u>Adequate Protection Payments</u>"). For the avoidance of doubt such Adequate Protection Payments shall include payments to Houlihan Lokey Howard & Zukin Capital, Inc. ("<u>Houlihan Lokey</u>"), as financial advisor to the Prepetition Term Agent and certain Prepetition Term Lenders, in accordance with the terms of that certain fee letter dated as of February 18, 2009 and executed by Bingham McCutchen LLP, Houlihan Lokey, and the Borrower. Notwithstanding anything to the contrary herein, all rights solely with respect to adequate protection are preserved, including without limitation, rights to seek recharacterization under section 506 of the Bankruptcy Code or other applicable law, and rights to seek from the Court additional adequate protection should circumstances warrant.

16. <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code (subject to the Carve Out) in the event that the adequate protection provided to the Prepetition Term Agent and/or Prepetition Term Lenders

28

is insufficient to compensate for any Diminution in Value of their interests in the Collateral during the Cases or any Successor Cases.

**Additional Provisions**

17.     <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto, without a hearing, if:  (a) the amendment, modification, or supplement is: (i) in accordance with the DIP Documents; (ii) beneficial to the Debtors; and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy (which may be provided by fax or email) of the amendment, modification or supplement is provided to counsel for the Prepetition ABL Lenders, Creditors' Committee and the U.S. Trustee; and (c) the amendment, modification or supplement is filed with the Court; provided, however, that consent of the Creditors' Committee or the U.S. Trustee, and approval of the Court are not necessary to effectuate any such amendment, modification or supplement.  The written consent of the DIP Agent and the DIP Lenders holding greater than fifty percent (50%) of the outstanding loans and commitments under the DIP Facility (the "<u>Majority DIP Lenders</u>") shall be required to amend, modify, waive and/or forbear from acting upon any provisions of the DIP Documents, except as otherwise provided in the DIP Agreement.

18.     <u>Budget Maintenance</u>.  The Budget and any amendment made thereto with the consent of the Majority DIP Lenders and the Prepetition ABL Lenders shall be in form, detail, and substance satisfactory to the Prepetition ABL Agent and the DIP Agent and DIP Lenders, as provided for in the DIP Agreement.

19.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and Adequate Protection Superpriority

A/73168938.13

Claims; (b) permit the Debtors to perform such acts as the DIP Agent or the Prepetition Term Agent each may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, Prepetition Term Agent, and Prepetition Term Lenders under the DIP Documents, the DIP Facility and this Order; and (d) authorize the Debtors to pay, and the DIP Agents, DIP Lenders, Prepetition Term Agent, and Prepetition Term Lenders to retain and apply, payments made in accordance with the terms of this Order.

20.     Perfection of DIP Liens and Adequate Protection Liens.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders, the Prepetition Term Agent, the Prepetition Term Lenders, the Prepetition ABL Agent and the Prepetition ABL Lenders to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent, the Prepetition Term Agent and the Prepetition ABL Agent is authorized to file, as it deems necessary or advisable in its sole discretion, such financing statements, mortgages, notices and other instrument or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens and/or Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the date of the entry of this Order; provided, however, that no such filing or recordation shall be

necessary or required in order to create, evidence or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon request to the DIP Agent, Prepetition Term Agent and the Prepetition ABL Agent all such financing statements, mortgages, title insurance policies, notices, instruments, and other documents as the DIP Agent, Prepetition Term Agent or Prepetition ABL Agent may reasonably request. The DIP Agent, Prepetition Term Agent and Prepetition ABL Agent, each in its sole discretion, may file a photocopy of this Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instrument, or similar document.

21.     Application of Proceeds of Collateral, Payments and Collections.  As a condition to entry into the DIP Documents and the extension of credit under the DIP Facility, the Debtors have agreed that (i) in connection with any payment or prepayment of DIP Obligations under the DIP Agreement, this Order or any other order, proceeds of DIP Collateral and  amounts held on account of DIP Collateral and (ii) only if an Event of Default has occurred any unused DIP Proceeds and all payments and collections received by the Debtors shall be applied as follows:

(a)     *first*, with respect to the DIP Obligations and the Carve Out in accordance with the DIP Documents; then:

(b)     *second*, with respect to the Prepetition Term Obligations in accordance with the Prepetition Term Loan Documents; then

(c)     *third*, with respect to proceeds of Collateral not constituting currently unencumbered property or ABL Priority Collateral (addressed below), with respect to the Prepetition ABL Credit Agreement obligations; then

(d)     *fourth,* to the Debtors.

Provided, that, all proceeds of ABL Priority Collateral shall first be applied (to the extent permitted or required by the ABL Cash Collateral Order or Prepetition ABL Agreement) to the outstanding obligations under the Prepetition ABL Agreement or treated in accordance with the ABL Cash Collateral Order (as applicable, or as otherwise directed by the Prepetition ABL Agent), and thereafter, only if all obligations under the Prepetition ABL Agreement have been paid in full, applied pursuant to (a), (b) and (d) of this paragraph 21.

22.     Proceeds of Subsequent Financing.   If any of the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and the termination of the DIP Agent's and DIP Lenders' obligation to make the Delayed Advance under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, and such financing is secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent or the Prepetition ABL Agent, as the case may be, to be applied as set forth in paragraph 21 herein.  For the avoidance of doubt, to the extent any such subsequent financing primes the Prepetition ABL Agent and Prepetition ABL Lenders as to ABL Priority Collateral, a portion of the proceeds of such financing (which shall be determined based upon the percentage of ABL Priority Collateral subject to priming as compared to the percentage of Term Loan Priority Collateral subject to priming under such financing) shall be classified as ABL Priority Collateral and treated in accordance with the ABL Cash Collateral Order.

23.     Maintenance of DIP Collateral and Cash Management System.   Until the

indefeasible payment in full in cash of all DIP Obligations and the termination of the DIP Lenders' obligation to extend credit pursuant the DIP Facility, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order entered by the Court, and, with respect to any order entered after the date of this Order which could adversely affect the rights of the DIP Lenders, agreed to by the Majority DIP Lenders (and if the rights of the Prepetition ABL Lenders would be adversely impacted, as agreed to by the Prepetition ABL Lenders), or as otherwise agreed to by the Majority DIP Lenders, or as otherwise required by the DIP Documents.

24. <u>Disposition of DIP Collateral; Rights of DIP Agent and DIP Lenders</u>. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral outside the ordinary course of business without the prior consent of the Majority DIP Lenders, except as (i) otherwise provided for in the Order Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets or (ii) permitted in the DIP Agreement.

25. <u>Postpetition Financing Termination</u>. On the Termination Date (as defined herein), (a) all DIP Obligations shall be immediately due and payable and all commitments to extend the Delayed Advance under the DIP Facility will terminate; and (b) all authority to use Cash Collateral shall cease, <u>provided, however</u>, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 and 27 herein.

26. <u>Events of Default</u>. The occurrence of an "Event of Default" under the DIP Agreement, as set forth therein shall constitute an event of default under this Order, unless waived in writing by the Majority DIP Lenders (the "<u>Events of Default</u>").

27. <u>Rights and Remedies Upon Event of Default</u>. Immediately upon the occurrence

and during the continuation of an Event of Default: (a) the DIP Agent at the request of (or with the consent of) the Majority DIP Lenders may declare: (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable; (ii) the termination of any remaining commitment to lend to the Debtors; and (iii) the termination of the DIP Agreement and any other DIP Document as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations; and (b) the DIP Agent at the request of (or with the consent of) the Majority DIP Lenders may declare a termination of the DIP Lenders' consent to the Debtors' use of Cash Collateral including the DIP Proceeds (any such declaration, shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by email (or electronic means) to counsel to the Debtors, counsel to the Prepetition Term Agent, counsel to the Creditors' Committee, counsel to the Prepetition ABL Agent and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Date"). On the Termination Date, the DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral including DIP Proceeds shall automatically cease; provided, however, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll obligations and pay expenses necessary, in the good faith judgment of the Debtors, to be paid at such time for the preservation of the Debtors and their estates, and as otherwise agreed by the DIP Agent and, as applicable, the Prepetition Term Agent and/or Prepetition ABL Agent, in their sole discretion. Any automatic stay otherwise applicable to the DIP Agent or the DIP Lenders is hereby modified so that during the five (5) business days after the Termination Date (the "Remedies Notice Period"), the Debtors shall be entitled to seek an emergency hearing with the Court solely to determine whether an

34

Event of Default has occurred. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred, the automatic stay shall be automatically terminated at the end of the Remedies Notice Period without further notice or order. In such instance, (i) the DIP Agent (at the direction of the Majority DIP Lenders) shall be entitled to: (A) exercise all rights and remedies against the DIP Collateral in accordance with the DIP Documents and this Order (and subject to the Intercreditor Agreement) and shall be permitted to satisfy the DIP Obligations, DIP Superpriority Claims and DIP Liens, subject to paragraph 21 and the Carve Out, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests in the DIP Collateral and Collateral or any other rights and remedies granted to the DIP Agent and the DIP Lenders with respect thereto pursuant to the DIP Agreement, DIP Documents, or this Order; and (B) the Prepetition Term Agent shall be entitled to exercise its rights and remedies to satisfy the Prepetition Term Obligations, Adequate Protection Superpriority Claims and Adequate Protection Liens. Any remedies taken affecting any leases or premises subject to any leases shall be in accordance with applicable federal and state law, the Bankruptcy Code, the governing leases, consent of the applicable landlord (if required), or as otherwise ordered by the Court.

28.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order. The DIP Agent, DIP Lenders, Prepetition Term Agent and Prepetition Term Lenders each have acted in good faith in connection with this Order and their reliance on this Order is in good faith. Based on the findings set forth in this Order and the record made during the Hearing, in the event any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent and

DIP Lenders are each entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created previously or hereby. Any liens or claims granted to the DIP Agent or DIP Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

29. _Expenses._ The Debtors are authorized and directed to pay all fees in connection with paragraph 15 of this Order and reasonable out-of-pocket expenses of the DIP Agent and the DIP Lenders in connection with the DIP Facility, to the extent provided in the DIP Documents, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other Consultants, and indemnification and reimbursement of fees and expenses. Payment of all such fees and expenses shall not be subject to allowance by the Court. Without otherwise limiting paragraph 15 of this Order, professionals for the DIP Agent, the DIP Lenders, the Prepetition Term Agent and the Prepetition Term Lenders shall not be required to comply with the U.S. Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide copies of its fee and expense statements to the U.S. Trustee and counsel for the Creditors' Committee.

30. _Indemnification of DIP Agent and DIP Lenders._ Subject to the limitations in the DIP Agreement, the Debtors shall indemnify and hold harmless the DIP Agent and each DIP Lender, and their respective shareholders, directors, agents, officers, subsidiaries and affiliates,

successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Documents, or the DIP Facility or the transactions contemplated thereby and by this Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Documents and as further described therein and herein, except to the extent resulting from such indemnified party's bad faith, gross negligence or willful misconduct as finally determined by a final non appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Agent's and each DIP Lenders' exercise of discretionary rights granted under the DIP Facility. In all such litigation, or the preparation therefore, the DIP Agent and each DIP Lender shall be entitled to select their own counsel and, in addition the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

31. <u>Proofs of Claim</u>. The DIP Agent, DIP Lenders, Prepetition Term Agent and Prepetition Term Lenders shall not be required to file proofs of claim in any of the Cases or any Successor Cases, and the Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim. Any order entered by the Court in connection with the establishment of a bar date for any claim (including, without limitation, administrative expense claims) in the Cases or any Successor Cases shall not apply to the DIP Agent, the DIP Lenders, Prepetition Term Agent, or the Prepetition Term Lenders.

32. <u>Rights of Access and Information</u>. Without limiting the rights of access and information afforded the DIP Agent and DIP Lenders under the DIP Documents or the

Prepetition Term Agent and Prepetition Term Lenders under the Prepetition Term Loan Agreement, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent, DIP Lenders, Prepetition Term Agent and Prepetition Term Lenders reasonable access to the Debtors' premises and their books and records to the extent set forth in the DIP Documents and Prepetition Term Loan Documents, as the case may be, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested (subject to reasonable confidentiality undertakings as shall be reasonably satisfactory to the Debtors). In addition, by consenting to entry of this Order, the Debtors have authorized their independent certified public accountants, financial advisors, restructuring advisers, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and Prepetition Term Agent (and each DIP Lender) all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtors (subject to reasonable confidentiality undertakings as shall be reasonably satisfactory to the Debtors).

33. <u>Carve Out</u>

(a)     For purposes of this Order, the "<u>Carve Out</u>" shall mean the sum of:

(i)     all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in subparagraph (iii) below) ("<u>Court and UST Fees</u>");

(ii)     fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in subparagraph (iii) below) (the "<u>Reserved Chapter 7 Trustee Fees</u>");

(iii)    to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses ("Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code and by the Creditors' Committee (collectively, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Agent, Prepetition Term Agent or the Prepetition ABL Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice ("Allowed Pre-Trigger Notice Fees");

(iv)    after the first business day following delivery by the DIP Agent, Prepetition Term Agent or Prepetition ABL Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, the payment of Professional Fees of Professional Persons ("Post-Carve Out Trigger Notice Professional Fees") in an aggregate amount not to exceed $15 million (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"); provided, however, that (A) the Professional Fees of Professional Persons incurred in connection with or arising from investigation or prosecution of Challenges (as defined herein) shall be limited as set forth in paragraph 34; (B) the Post-Carve Out Trigger Notice Professional Fees shall not include any success, transaction or completion fee or any other similar fee of any Professional Persons retained by the Creditors' Committee; and (C) the Post-Carve Out Trigger Notice Cap shall not increase the Post-Carve Out Trigger Notice Cap provided under the ABL Cash Collateral Order or the Term Loan Cash Collateral Order; and

(v)    for the avoidance of doubt, any success, transaction or completion fee or any other similar fee of any Professional Persons retained by the Creditors' Committee shall not be paid out of the Carve Out if the Court approves a chapter 11 liquidating plan to

which any of the DIP Agent, Prepetition Term Agent and the Prepetition ABL Agent does not consent.

(b)     For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by the DIP Agent, Prepetition Term Agent or Prepetition ABL Agent to the Debtors, the Debtors' counsel, the U.S. Trustee, the Prepetition ABL Agent (or the Prepetition Term Agent or DIP Agent), and counsel to the Creditors' Committee, which notice may be delivered only after the Termination Date.

(c)     Beginning on the first business day following the issuance of a Carve Out Trigger Notice, the Debtors shall deposit the Post-Carve Out Trigger Notice Cap amount, the amount of the Reserved Chapter 7 Trustee Fees, and, as and when capable of ascertainment, the amount of the Court and UST Fees ("Carve Out Reserve"), and hold such Carve Out Reserve in a segregated account at a depository to be designated by the Debtors, in trust, to pay the Carve Out. If a Carve Out Trigger Notice (i) is issued jointly by the DIP Agent, Prepetition ABL Agent and the Prepetition Term Agent, (or by (x) either the DIP Agent or Prepetition Term Agent, and (y) the Prepetition ABL Agent) each of (x) the ABL Cash Collateral and (y) the Term Loan Cash Collateral and proceeds of the DIP Facility shall be the source of fifty percent (50%) of the funding for the Carve Out Reserve; (ii) is issued solely by the Prepetition ABL Agent, and not by the Prepetition Term Agent or DIP Agent, only the ABL Cash Collateral, shall be the source of the funding for the Carve Out Reserve; or (iii) is issued solely by one or more of the Prepetition Term Agent and DIP Agent and not by the Prepetition ABL Agent, only the Term Loan Cash Collateral and the proceeds of the DIP Facility, shall be the source of the funding for the Carve Out Reserve. Subclauses (i), (ii) and (iii) shall be collectively referred to as the "Carve Out Allocation". The Debtors' obligations to deposit the Carve Out Reserve and to satisfy the Carve

Out shall be senior to (A) all liens securing the DIP Obligations, (B) the Adequate Protection Term Liens and the liens of the Prepetition Term Agent and Prepetition Term Lenders, (C) the liens (including any adequate protection liens) of the Prepetition ABL Agent and Prepetition ABL Lenders, (D) any 507(b) claims, and (E) any and all other forms of adequate protection, and any other prepetition obligations granted in favor of the Prepetition Term Lenders or the Prepetition ABL Lenders. In the event of the liquidation of the Debtors' estates, the amount of the Carve Out not previously deposited into the Carve Out Reserve shall be so deposited prior to any distributions. All rights, liens and claims of the DIP Agent and the DIP Lenders, the Prepetition Term Lenders and the Prepetition Term Agent, and the rights, liens and claims of the Prepetition ABL Agent and Prepetition ABL Lenders, or Section 507(b) claims in favor of any of such parties, are subordinated to the Carve Out, and such rights, liens and claims are subordinated to Court and UST Fees, the Reserved Chapter 7 Trustee Fees, and the Post-Carve Out Trigger Notice Professional Fees; provided, however, that upon (x) deposit in full of the Post-Carve Out Trigger Notice Cap to the Carve Out Reserve and (y) payment in full of Allowed Pre-Trigger Notice Fees, the subordination of the Prepetition Term Agent, the Prepetition ABL Agent, and the DIP Agent shall be limited to the amounts deposited into the Carve Out Reserve, it being understood that such requirement shall not limit rights of enforcement as to collateral. In the event of the liquidation of the Debtors' estates, the amount of the Carve Out not previously deposited into the Carve Out Reserve shall be so deposited prior to any distribution, it being understood that such requirement shall not limit rights of enforcement as to collateral and that the application of the proceeds of such enforcement (as referred to in this and the previous sentence) shall at all times remain subject to the Carve Out irrespective of their application to any obligations under the DIP Facility, the Term Loan Adequate Protection Stipulation, the

41

Prepetition Term Loan Documents, the Prepetition ABL Credit Agreement or the ABL Cash Collateral Order. All rights, liens, and claims of the DIP Lenders are subordinated to the payment in full of the Carve Out (whether or not funds in respect thereof are on deposit in the Carve Out Reserve). Subject to the Intercreditor Agreement and paragraph 21, except for any amount required to be deposited in respect of any Allowed Pre-Trigger Notice Fees not yet invoiced or allowed at such time, any excess remaining in the Carve Out Reserve after payment in full of the Carve Out obligations shall be paid to the DIP Agent for the benefit of the DIP Lenders, to the Prepetition Term Agent for the benefit of the Prepetition Term Lenders and to the Prepetition ABL Agent for the benefit of the Prepetition ABL Lenders in proportion to their respective Carve Out Allocation, unless the DIP Obligations have been paid in full, in which case any such excess shall be paid to the Prepetition Term Agent for the benefit of the Prepetition Term Lenders and Prepetition ABL Agent for the benefit of the Prepetition ABL Lenders, in proportion to their respective remaining Carve Out Allocation.

(d)     For the avoidance of doubt, (i) disbursements by the Debtors from the Carve Out Reserve shall not increase or reduce the DIP Obligations; (ii) the failure of the Carve Out Reserve to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out; and (iii) so long as a Carve Out Trigger Notice has not been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, and such payments shall not reduce the Carve Out.

(e)     *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.* The DIP Agents, DIP Secured Parties, Prepetition Term Agents, and Prepetition Lenders shall not be responsible for the direct payment or reimbursement of any fees or

disbursements of any Professionals Fees incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Order or otherwise shall be construed: (i) to obligate the DIP Term Agent, DIP Lenders, Prepetition Term Agent or Prepetition Term Lenders, in any way to pay compensation to or to reimburse expenses of any Professional Persons, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) as consent to the allowance of any Professional Fees or expenses of Professional Persons; or (iii) as consent to the allowance of any expenses of the Creditors' Committee. Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Order, the DIP Documents, the Bankruptcy Code and applicable law.

34.    <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Carve Out</u>. The DIP Facility, the DIP Collateral, the Cash Collateral, and the Carve Out may not be used to pay "<u>Ineligible Professional Expenses</u>". Ineligible Professional Expenses means any fees or expenses incurred by any Person, including a Creditors' Committee or any Debtor in (A) preventing, hindering or delaying the DIP Agent's enforcement or realization upon any of the Collateral once an Event of Default has occurred (it being understood that litigation to determine if an Event of Default has occurred during a Remedies Notice Period shall not constitute such prevention, hindrance or delay), (B) using or seeking to use Cash Collateral not in compliance with the Budget and this Order, or selling any other Collateral (except as otherwise provided for herein or in the DIP Agreement), in each case without the Majority DIP Lenders' consent, (C) incurring Indebtedness not permitted by the DIP Documents and (D) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Term Obligations or security

interests with respect thereto or any other rights or interests of the DIP Agent, DIP Lenders, Prepetition Term Agent and the Prepetition Term Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Agent, DIP Lenders, Prepetition Term Agent or the Prepetition Term Lenders, provided, however, that in accordance with the terms and specified limitations (which shall include, but not be limited to, the limitations on dollar amounts) of the Term Loan Adequate Protection Stipulation, Cash Collateral was permitted to be used for the process of investigating or analyzing any of the foregoing items listed in clause (D) hereof prior to the filing of an objection or a lawsuit, or the commencement of a contested matter or adversary proceeding, with respect to the Prepetition Term Obligations or Prepetition Liens.

35. <u>Letters of Credit; Exclusive Lien in Post-Petition L/C Collateral</u>. The DIP Facility shall permit the Borrower and its subsidiaries to enter into a letter of credit facility with U.S. Bank National Association pursuant to Letter of Credit Reimbursement and Security Agreement between the Borrower and U.S. Bank National Association effective on or about the date hereof (the "L/C Agreement") and the L/C Order, providing for the issuance of up to $40,000,000 of letters of credit to replace pre-petition letters of credit issued by JPMorgan Chase Bank, N.A. and for such other lawful purposes as may be permitted by the terms of the L/C Agreement. Cash Collateral may be provided to secure such letters of credit in an amount not to exceed 105% of the face amount of the letters of credit; any Cash Collateral so provided shall immediately become "Post-Petition L/C Collateral" under the L/C Agreement and all liens relating thereto shall be governed by the terms of the L/C Order.

36. <u>Access Rights of General Motors and Chrysler</u>. Notwithstanding anything in this Order or the DIP Documents to the contrary, (a) nothing in this Order or the DIP Documents

amends, modifies or supersedes any provision of the Order Authorizing Entry Into An Accommodation Agreement With General Motors Corporation Pursuant To Bankruptcy Rule 9019 And Sections 363(b), 363(f), And 363(m) Of The Bankruptcy Code entered by this Court on September 25, 2009 (the "GM Approval Order"), or the Order Authorizing Entry Into An Accommodation Agreement With Chrysler Group LLC (the "Chrysler Approval Order"), (b) the DIP Liens are subject to General Motor's right of access under, and the other terms of, the Access and Security Agreement among the Debtors, Carplastics S.A. de C.V. and General Motors (the "GM Access Agreement") and Chrysler's right of access under, and the other terms of, the Access and Security Agreement among the Debtors, Carplastics S.A. de C.V. and Chrysler Group LLC (the "Chrysler Access Agreement"), and (c) the DIP Lenders and DIP Agent shall not take any action to impair GM's rights under the GM Access Agreement or Chrysler's rights under the Chrysler Access Agreement.

37.     No Third Party Rights.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

38.     Section 506(c) Claims.  No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, DIP Lenders, Prepetition Term Agent or Prepetition Term Lenders or any of their respective claims, the DIP Collateral or the Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the affected DIP Agent, DIP Lender, Prepetition Agent or Prepetition Term Lender, and no such consent shall be implied, directly or indirectly, from any action, inaction, or acquiescence by any such agents or lenders.

39.     No Marshaling/Applications of Proceeds.   The DIP Agent, DIP Lenders,

Prepetition Term Agent, and Prepetition Term Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Collateral, as the case may be, and proceeds shall be received and applied pursuant to paragraph 21 of this Order and subject to the Intercreditor Agreement to the extent applicable, notwithstanding any other agreement or provision to the contrary.

40.     Section 552(b).   The DIP Agent, DIP Lenders, Prepetition Term Agent, and Prepetition Term Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Agent or Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the Collateral.

41.     Joint and Several Liability.  Nothing in this Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents.

42.     Discharge Waiver.   The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.

43.     Rights Preserved.

(a)     Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (i) the DIP Agent's, any DIP Lender's, the Prepetition Term Agent's or any Prepetition Term Lender's right

to seek any other or supplemental relief in respect of any Debtor, including the right to seek additional adequate protection (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection); or (ii) any of the rights of the DIP Agent, any DIP Lender, the Prepetition Term Agent or any Prepetition Term Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (A) request modification of the automatic stay of section 362 of the Bankruptcy Code, (B) request dismissal of any of the Cases or any Successor Cases, conversion of any of the Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (C) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

(b)    Other than as expressly set forth in this Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, DIP Lenders, Prepetition Term Agent, and Prepetition Term Lenders are preserved.

44.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, any DIP Lender, the Prepetition Term Agent or any Prepetition Term Lender to seek relief or otherwise exercise its respective rights and remedies under this Order, the DIP Documents, the Prepetition Term Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the applicable DIP Agent, DIP Lender, Prepetition Term Agent or Prepetition Term Lender.

45.    <u>Binding Effect of Final Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Term Agent, the Prepetition Term Lenders, the

Prepetition ABL Agent, the Prepetition ABL Lenders, all other creditors of the Debtors, the Creditors' Committee or any other court appointed committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any of the Cases or any Successor Cases.

46.     No Modification of Final Order.    Until and unless the DIP Obligations and Prepetition Term Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) and the commitment to extend the Delayed Advance under the DIP Facility has been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:    (a) without the prior written consent of the DIP Agent (which consent shall be provided only at the direction or with the consent of the Majority DIP Lenders) and Prepetition Term Agent (and the Prepetition ABL Agent, but only to the extent the rights of the Prepetition ABL Lenders or Prepetition ABL Agent are adversely affected) (i) any modification, stay, vacatur or amendment to this Order (and no such consent shall be implied by any other action, inaction or acquiescence of the applicable DIP Agent, DIP Lenders, Prepetition Term Agent, Prepetition Term Lenders, Prepetition ABL Lenders or Prepetition ABL Agent); or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Cases or any Successor Cases equal or superior to the DIP Superpriority Claim or Adequate Protection Superpriority Claim, other than the Carve Out; and (b) without the prior written consent of the Majority DIP Lenders, DIP Agent and the Prepetition

A/73168938.13

Term Agent (and to the extent adversely affected, the Prepetition ABL Agent), any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, Prepetition Liens, or Adequate Protection Liens, other than the Carve Out. For the avoidance of doubt, the DIP Agent shall use its reasonable best efforts to provide the Prepetition ABL Agent notice of all circumstances in which the consent of the Prepetition Term Agent is required pursuant to this paragraph 46.

47.     <u>Order Controls</u>.   In the event of any inconsistency between the terms and conditions of the DIP Documents and this Order, the provisions of this Order shall govern and control.

48.     <u>Continuing Effect of Intercreditor Agreement</u>.  The Debtors, the DIP Agent, DIP Lenders, Prepetition Term Agent, Prepetition Term Lenders, Prepetition ABL Agent, and the Prepetition ABL Lenders each shall be bound by and subject to the terms, provisions and restrictions of the Intercreditor Agreement as given effect and implemented by this Order or any other order of the Court.

49.     <u>Survival</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases, to the extent authorized by applicable law; or (d) pursuant to which this Court abstains from hearing any of the Cases or any Successor Cases.  The terms and provisions of this Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders, Prepetition Term Agent and Prepetition Term Lenders pursuant to this Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following

A/73168938.13

dismissal of any of the Cases or any Successor Cases, and shall maintain their priority as provided by this Order until all DIP Obligations and Prepetition Term Obligations have been indefeasibly paid in full in cash and all commitments to extend Delayed Advance under the DIP Facility are terminated. The indemnification provisions herein and in the DIP Documents shall survive dismissal of any of the Cases or any Successor Cases, and termination of the DIP Documents and/or the repayment of the DIP Obligations.

50. <u>Effect of this Final Order</u>. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

51. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Order according to its terms.

SO ORDERED by the Court this 12th day of November, 2009.

_____
United States Bankruptcy Judge

A/73168938.13