## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>VISTEON CORPORATION, et al.,[1] | ) Chapter 11<br>)<br>) Case No. 09-11786 (CSS)<br>)<br>) Jointly Administered<br>)<br>) **Re: Docket Nos. 1523, 1588**<br>) |

## ORDER (A) APPROVING AN ASSET SALE AGREEMENT FOR THE PRIVATE SALE OF THE VISTEON RADAR ECU ASSETS TO AUTOLIV ASP, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, INTERESTS, AND LIABILITIES; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS IN CONNECTION THEREWITH; AND (C) GRANTING CERTAIN RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (the "Sale Order") (A) approving an asset sale agreement, dated as of December 22, 2009, by and among Visteon Corporation ("Seller"), Visteon Global Technologies, Inc., and Autoliv ASP, Inc. (the "Purchaser") for the private sale (the "Sale") of the Assets free and clear of all Liabilities, pursuant to section 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), a copy of which along with the Transaction Documents (together, the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Visteon Corporation (9512); ARS, Inc. (3590); Fairlane Holdings, Inc. (8091); GCM/Visteon Automotive Leasing Systems, LLC (4060); GCM/Visteon Automotive Systems, LLC (7103); Infinitive Speech Systems Corp. (7099); MIG-Visteon Automotive Systems, LLC (5828); SunGlas, LLC (0711); The Visteon Fund (6029); Tyler Road Investments, LLC (9284); VC Aviation Services, LLC (2712); VC Regional Assembly & Manufacturing, LLC (3058); Visteon AC Holdings Corp. (9371); Visteon Asia Holdings, Inc. (0050); Visteon Automotive Holdings, LLC (8898); Visteon Caribbean, Inc. (7397); Visteon Climate Control Systems Limited (1946); Visteon Domestic Holdings, LLC (5664); Visteon Electronics Corporation (9060); Visteon European Holdings Corporation (5152); Visteon Financial Corporation (9834); Visteon Global Technologies, Inc. (9322); Visteon Global Treasury, Inc. (5591); Visteon Holdings, LLC (8897); Visteon International Business Development, Inc. (1875); Visteon International Holdings, Inc. (4928); Visteon LA Holdings Corp. (9369); Visteon Remanufacturing Incorporated (3237); Visteon Systems, LLC (1903); Visteon Technologies, LLC (5291). The location of the Debtors' corporate headquarters and the service address for all the Debtors is: One Village Center Drive, Van Buren Township, Michigan 48111.

"Asset Sale Agreement") is attached as Exhibit B to the Motion;[2] (B) approving the procedures for and authorizing and approving the assumption and assignment of certain executory contracts in connection therewith (the "Assignment Procedures"); and (C) granting certain related relief; the Court having held a hearing to approve the Sale of the Assets pursuant to the terms of the Asset Sale Agreement (the "Sale Hearing"); and the Court having reviewed and considered: (i) the Motion; (ii) the proposed Sale by the Debtors to the Purchaser pursuant to the Asset Sale Agreement; (iii) the *Declaration of Albert Faraj, Global Director, Electronics Sales and Strategy of Visteon Corporation, in Support of the Debtors' Motion for Entry of an Order (A) Approving an Asset Sale Agreement for the Private Sale of the Visteon Radar ECU Assets to Autoliv ASP, Inc. Free and Clear of All Liens, Claims, Encumbrances, Interests, and Liabilities; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection Therewith; and (C) Granting Certain Related Relief* [Docket No. 1588]; and (iv) the arguments of counsel made and the evidence submitted, proffered or adduced, at the Sale Hearing; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interest of the Debtors, their estates, their creditors and all other parties in interest; and upon the record of the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good and sufficient cause appearing therefore, **IT IS HEREBY FOUND AND DETERMINED THAT:**

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Asset Sale Agreement or the Motion, as applicable.

2

## Jurisdiction and Statutory Predicates

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought herein are sections 363 and 365 of the Bankruptcy Code; Bankruptcy Rules 2002, 6004, and 6006; and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Notice of the Motion, Sale and Assignment Procedures

C. Actual written notice of the Motion, the Sale Hearing, the Sale, and the Assignment Procedures and a reasonable opportunity to object or be heard with respect to the Sale Motion and relief requested therein has been afforded to all known interested persons and entities, including, without limitation, the following parties: (i) the United States Trustee for the District of Delaware; (ii) counsel to the official committee of unsecured creditors (the "Committee"); (iii) counsel to the ad hoc group of lenders for the Debtors' prepetition senior secured term loan facility; (iv) counsel for the administrative agent for the Debtors' prepetition senior secured term loan facility; (v) counsel for the administrative agent for the Debtors' debtor-in-possession credit facility; (vi) counsel for the administrative agent for the Debtors' prepetition revolving senior secured credit facility; (vii) the indenture trustee for each of the Debtors' outstanding unsecured bond issuances; (viii) those persons who have requested notice pursuant to Bankruptcy Rule 2002; (ix) all persons or entities known or reasonably believed to have asserted a lien on any of the Assets; (x) the Purchaser and its counsel; (xi) the counterparties to the Acquired Contracts; and (xii) all applicable federal, state, and local taxing authorities.

3

D.    As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, and the Assignment Procedures has been provided in accordance with sections 102(l), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006; (ii) such notice was good and sufficient; and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the Assignment Procedures is required.

E.    In accordance with the Assignment Procedures, the Debtors have provided notice to each counterparty to an Acquired Contract (the "Cure Notice") indicating their intent to assume and assign such Acquired Contract to the Purchaser and of the related amount proposed to be paid by the Debtors to cure defaults under such Acquired Contract in accordance with section 365 of the Bankruptcy Code (the "Cure Amount"). The service and provision of the Cure Notices was good, sufficient, and appropriate under the circumstances and no further notice need be given with respect to the Cure Amounts for the Acquired Contracts. Each counterparty to an Acquired Contract has had an opportunity to object to both the Cure Amount listed in the Cure Notice and the assumption and assignment of the Acquired Contract (including objections related to adequate assurance of future performance).

### Private Sale Is Appropriate

F.    The Debtors have established that selling the Assets to the Purchaser through a private sale to the Purchaser is in the best interest of the Debtors' estates and their creditors for numerous reasons, including that: (i) the Assets are not necessary to the Debtors' reorganization efforts and are of a relatively de minimis value; (ii) the Debtors desire to exit the Radar System Business and the sale and transfer to the Purchaser will allow the Debtors to exit the Radar System Business without damage to the customers associated with the Radar System

4

Business, which are also customers of the Debtors for other products, and thus the sale to the Purchaser is important to the maintenance by the Debtors of customer relations; (iii) there are few, if any, other buyers that may be interested in the purchase of the Assets, and the benefit derived from the proposed Sale would be substantially diminished by the additional cost and expense of holding an open auction and the attendant costs of advertising and negotiating alternative proposals; and (iv) the Purchaser is a third party non insider and the Sale was conducted in a non-collusive, arm's-length, fair, and good faith manner.

## Sound Business Purpose for Sale

G.      The Debtors have articulated good and sufficient business reasons justifying the Sale, including, without limitation, that: (i) the Asset Sale Agreement constitutes the highest and best offer for the Assets under the circumstances where the costs of additional advertising, delay in sale and costs of negotiating and documenting any other agreements would substantially reduce the amount that could be received for the Assets; (ii) the Asset Sale Agreement and the closing thereon will present the best opportunity to realize the value of the Assets and avoid decline and devaluation of the Assets; and (iii) any other presently-available alternative would not have likely yielded as favorable an economic result.

## Full Corporate Authority

H.      The Debtors have (i) full corporate power and authority to execute the Asset Sale Agreement and all other documents contemplated thereby, and the Sale of the Assets by the Debtors has been duly and validly authorized by all necessary corporate action of the Debtors, and (ii) full corporate power and authority necessary to consummate the transactions contemplated by the Asset Sale Agreement, including the execution of the other Transaction Documents (the "Transactions"). No consents or approvals, other than those expressly provided in the Asset Sale Agreement, are required for the Debtors to close the Sale.

5

## Good Faith of Debtors and Purchaser

I. The Purchaser is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code.

J. The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law, and otherwise has proceeded in good faith in all respects in connection with the Asset Sale Agreement and these chapter 11 cases in that, inter alia: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Assets; (ii) the Purchaser and Seller were represented by separate counsel with respect to negotiations concerning the Asset Sale Agreement and Transactions; (iii) the Purchaser in no way induced or caused the chapter 11 filing by the Debtors; (iv) neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Asset Sale Agreement to be avoided under section 363(n) of the Bankruptcy Code; (v) no common identity of incorporators, directors, or stockholders exists between the Purchaser and the Debtors; (vi) the Asset Sale Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia; and (vii) the Asset Sale Agreement and the Transactions were negotiated and have been and are entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.

## No Fraudulent Transfer

K. The total consideration provided by the Purchaser for the Assets pursuant to the Asset Sale Agreement (i) is fair and reasonable; (ii) is the highest and best offer for the Assets; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by

6

any other practical available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.

## Section 363(f) Satisfied

L.      The Purchaser would not have entered into the Asset Sale Agreement and would not consummate the Transactions if the Sale of the Assets to the Purchaser was not free and clear of all Liabilities pursuant to section 363(f) of the Bankruptcy Code (except for the Assumed Liabilities under the Asset Sale Agreement), or if the Purchaser would, or in the future could, be liable for any such Liabilities, except for the Assumed Liabilities under the Asset Sale Agreement. A sale of the Assets other than one free and clear of all Liabilities, except for the Assumed Liabilities under the Asset Sale Agreement, would yield substantially less value for the Debtors' estates, with less certainty, than the Sale. Therefore, the Sale contemplated by the Asset Sale Agreement is in the best interest of the Debtors and their estates, creditors, and all other parties in interest.

M.      The Debtors may sell the Assets free and clear of all Liabilities, except for the Assumed Liabilities under the Asset Sale Agreement, because, with respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liabilities who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Liabilities who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liabilities, if any, in each instance against the Debtors, their estates or any of the Assets, attach to the cash proceeds of the Sale ultimately attributable to the

7

Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

## Assumption and Assignment of the Acquired Contracts

N.     The Debtors have demonstrated that they have sound business justifications to assume and assign the Acquired Contracts to the Purchaser in connection with the consummation of the Sale. The assumption and assignment of the Acquired Contracts is in the best interests of the Debtors, their estates, and their creditors. The Acquired Contracts being assigned to the Purchaser are an integral part of the Assets being purchased by the Purchaser and, accordingly, such assumption and assignment of Acquired Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination. Except as otherwise provided in paragraph 23 of this Sale Order, as determined in accordance with the Assignment Procedures, the Cure Amounts, as set forth on each counterparty to an Acquired Contract's respective Cure Notice (as defined below), are the amounts required to be paid by the Debtors to the counterparties to the applicable Acquired Contracts pursuant to section 365(b) of the Bankruptcy Code and are hereby determined to comprise the entire cure obligation due and owing under the Acquired Contracts pursuant to Bankruptcy Code section 365. Upon payment of the respective Cure Amounts, there will be no outstanding defaults of the Debtors and their estates under the Acquired Contracts.

O.     The Purchaser has demonstrated adequate assurance of future performance under the Acquired Contracts within the meaning of Bankruptcy Code section 365. Upon the assumption and assignment of the Acquired Contracts to the Purchaser, the Acquired Contracts shall be deemed valid, binding, and in full force and effect in accordance with their terms, subject to the provisions of this Sale Order.

8

## Compelling Circumstances for an Immediate Sale

P.     The Sale of the Assets must be approved and consummated promptly in order to preserve the value of the Assets. Therefore, time is of the essence in consummating the Sale, and the Seller and Purchaser intend to close the Sale as soon as practicable following the entry of a final order approving the Sale. Accordingly, there is cause to lift the fourteen (14) day stay period contemplated by Bankruptcy Rules 6004(h) and 6006(d).

## Other Findings

Q.     Purchaser will not be a successor to the Debtors or their affiliates upon consummation of the Sale and shall not incur any successor liability claims as a consequence of the Sale. Pursuant to the Asset Sale Agreement, Purchaser is not incurring any Liability, except for the Assumed Liabilities under the Asset Sale Agreement, and is not holding itself out to the public as a continuation of the Radar System Business. The Sale does not amount to a consolidation, merger, or de facto merger of the Purchaser's and Debtors' estates. Further, there is no substantial continuity between Purchaser and Debtors, there is no continuity of enterprise between the Debtors and Purchaser, Purchaser is not a mere continuation of the Debtors estates, and Purchaser does not constitute a successor to the Debtors.

R.     The Transactions do not constitute a sub rosa chapter 11 plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as they do not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in Bankruptcy Code sections 1125 and 1129; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

9

## IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is GRANTED and APPROVED as set forth below.

2.     All of the findings of fact and conclusions of law set forth above are incorporated herein by reference.

3.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled and all reservations of rights included therein, are overruled on the merits and denied with prejudice or the interests represented by such objections have been otherwise satisfied or adequately provided for.

### Approval of Asset Sale Agreement

4.     The Asset Sale Agreement and each other Transaction Document, substantially in the forms attached as Exhibit B to the Motion, are hereby approved.

5.     Pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004(f), the Debtors are authorized and empowered to: (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Asset Sale Agreement; (b) close the Sale as contemplated in the Asset Sale Agreement and this Sale Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the Asset Sale Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Sale Agreement and the Sale, including, without limitation, the other Transaction Documents.

6.     This Sale Order shall be binding in all respects upon the Debtors; their estates; all successors and assigns of the Debtors; all creditors of and holders of equity interests in the Debtors; holders of liens, claims, encumbrances, and other interests against or on the Assets; the Purchaser and all successors and assigns of the Purchaser; and any trustees, if any, subsequently appointed in any of these chapter 11 cases or upon a conversion of any of the

10

Debtors' cases to cases under chapter 7 of the Bankruptcy Code. This Sale Order and the Asset Sale Agreement shall inure to the benefit of the Debtors, their estates, the Purchaser, and each of their respective successors and assigns.

### Sale and Transfer of the Assets

7.    The transfer of the Assets by the Debtors to Purchaser upon Closing and payment of the Purchase Price will be a legal, valid, and effective transfer of the Assets, notwithstanding any requirement for approval or consent by any entity (as defined in section 101(15) of the Bankruptcy Code).

8.    The Debtors have demonstrated both: (a) good, sufficient, and sound business purposes and justification; and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code.

9.    Good and sufficient reasons exist for approval of the sale of the Assets to Purchaser under the terms of the Asset Sale Agreement. The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

10.    The transfer of the Assets to Purchaser pursuant to the Asset Sale Agreement will be a legal, valid, and effective transfer of the Assets, and vests the Purchaser with good and indefeasible title to the Assets free and clear of all liens, claims, and encumbrances, except for the Assumed Liabilities assumed by the Purchaser under the Asset Sale Agreement, and any such liens, claims, and encumbrances which existed prior to the Closing shall attach to the proceeds of the Sale in the same order and priority as existed before the Sale pursuant to section 363(f) of the Bankruptcy Code, subject to and with the full reservation of all rights by the Debtors and/or the Committee to contest and/or avoid the validity, perfection, priority, extent and enforceability of any such asserted liens, claims, encumbrances, and other interests as transferred and attached to said proceeds.

11

11. All persons and entities holding liens or interests, except for the Assumed Liabilities under the Asset Sale Agreement, in all or any portion of the Assets arising under or out of, in connection with or in any way relating to the Debtors, the Assets or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' liens or interests against the Purchaser or its successors or assigns, their property or the Assets. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release any liens and interests on the Assets, as provided for herein, as such liens or interests may have been recorded or may otherwise exist.

12. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any of the liens, claims, encumbrances or other interests of record, except as may relate to the Assumed Liabilities.

13. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of the Asset Sale Agreement and this Sale Order.

14. If any person or entity which has filed statements or other documents or agreements evidencing liens, claims, encumbrances, or other interests on the Assets fails to deliver to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and easements and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all liens, claims, encumbrances or other interests, which the person or entity has or may assert with respect to the Assets, the Debtors and the Purchaser are hereby

12

authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Assets.

15.    The consideration provided by the Purchaser for the Assets under the Asset Sale Agreement (a) is fair and reasonable under the circumstances and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia; (b) may not be avoided under section 363(n) or any other provision of the Bankruptcy Code or otherwise; and (c) shall be available to the Debtors for working capital purposes and expenses of administration in these chapter 11 cases.

16.    This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions, as contemplated by the Asset Sale Agreement.

17.    The transfer of the Assets, and the assumption and assignment of the Acquired Contracts, does not and will not subject the Purchaser to any liability for liens, claims or encumbrances by reason of such transfers and assignments under the laws of the United States, any state, territory, or possession thereof or the District of Columbia based, in whole or in

13

part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor or transferee liability, and all creditors and parties in interest are prohibited from asserting such claims against the Purchaser or the Purchaser's Affiliates.

18.     All of the requirements of section 363 of the Bankruptcy Code for a sale free and clear of all liens, claims and encumbrances have been met.

## Assumption and Assignment of Acquired Contracts

19.     Pursuant to section 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors are hereby authorized to: (a) pursuant to the terms of the Asset Sale Agreement and in accordance with the Assignment Procedures, assume and assign the Acquired Contracts to the Purchaser, effective upon the Closing Date, free and clear of all Liabilities of any kind or nature, except for the Assumed Liabilities under the Asset Sale Agreement; (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Acquired Contracts to the Purchaser, and (c) pay the required Cure Amounts, if any, in accordance with the Assignment Procedures at Closing (or as soon thereafter as is reasonably practicable).

20.     The payment by the Debtors of the Cure Amounts, if any, in accordance with the Assignment Procedures shall be deemed to satisfy the requirements of section 365(b)(1) of the Bankruptcy Code.

21.     The Acquired Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Acquired Contract (including those of the type described in section 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or limits in any way such assignment or transfer and the mere assumption and assignment of the Acquired Contracts shall not cause any acceleration of payments, increase in payments, assignment fees, or

14

any additional fee for the Purchaser. The Debtors shall be relieved from any further liability with respect to an Acquired Contract after the assumption and assignment of such Acquired Contract to the Purchaser, except to the extent provided in the Asset Sale Agreement and paragraph 23 of this Sale Order.

22.     Except as provided in paragraph 23 of this Sale Order, upon entry of this Sale Order, (a) all defaults (monetary and non-monetary) under the Acquired Contracts through the Closing Date shall be deemed cured through the payment of the Cure Amounts; (b) no other amounts will be owed by the Debtors, their estates, or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before the Closing Date with respect to the Acquired Contracts, except as set forth in the Asset Sale Agreement; and (c) each counterparty to an Acquired Contract hereby is forever barred, estopped, and permanently enjoined from asserting a claim against the Debtors or the Purchaser or the property of either of them based on an asserted default that occurred on, prior to or as a result of the Closing, including the type of default specified in section 365(b)(1)(A) of the Bankruptcy Code, except as set forth in the Asset Sale Agreement.

23.     Notwithstanding anything provided in this Sale Order and the Asset Sale Agreement to the contrary, Honda's right to assert any warranty and indemnity claims against the Debtors relating to parts, components or systems manufactured prior to the Closing Date in the Radar System Business and sold to Honda is expressly preserved to the extent the liability for such warranty and indemnity claims has not been assumed by the Purchaser pursuant to the Asset Sale Agreement.

15

## Assignment Procedures

24. The Assignment Procedures, as set forth in the *Executory Contract Assumption and Cure Notice*, a form of which is attached to the Motion as Exhibit C (the "Cure Notice"), are hereby approved.

25. The Court finds that any counterparty to an Acquired Contract who fails to file an objection to the Cure Amount set forth on such counterparty's Cure Notice in accordance with the Assignment Procedures has waived and released and shall be forever barred from asserting against either the Debtors, the Purchaser or any other assignee of the relevant Acquired Contract any Cure Amounts other than those set forth in the respective Cure Notice, or that any additional amounts are due, defaults exist or prohibitions or conditions to assignment exist or must be satisfied, under such Assumed Contract for the period prior to the assumption and assignment of such Acquired Contract.

## Reservation of Rights

26. Pursuant to, and as described in, (i) the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 364, 365, and 507 (A) Authorizing the Debtors to Obtain Senior Superpriority, Priming Postpetition Financing; (B) Granting Priming and Other Liens and Superpriority Administrative Expense Claims; (C) Authorizing the Use of Cash Collateral; (D) Granting Adequate Protection to Prepetition Secured Parties; and (E) Modifying the Automatic Stay [Docket No. 1311] (the "DIP Order") and (ii) the Stipulation, Agreement, and Final Order on Consent (I) Authorizing Use of the Prepetition Term Loan Priority Collateral and Term Loan Cash Collateral under 11 U.S.C. §361; and (II) Granting Adequate Protection under 11 U.S.C. §§ 361, 362, and 363 [Docket No. 608] (the "Term Loan Adequate Protection Stipulation"), the DIP Agent and DIP Lenders (as both terms are defined in the DIP Order) hold a first priority perfected security interest, and the Prepetition Term Agent and the Prepetition Term Lenders (as

16

both terms are defined in the Term Loan Adequate Protection Stipulation) hold a second priority perfected security interest, in (with certain limited exceptions) the intellectual property owned, used, or licensed by the Debtors (the "IP Collateral"). Additionally, the DIP Agent, DIP Lenders, Prepetition Term Agent, and the Prepetition Term Lenders hold a security interest in certain proceeds of IP Collateral (as further described in the DIP Order, the "IP Cash Collateral"). Therefore, the DIP Agent (on its behalf and on behalf of the DIP Lenders) and the Prepetition Term Agent (on its behalf and on behalf of the Prepetition Term Lenders) reserve all rights to claim those portions of any payment received pursuant to the terms of the Asset Sale Agreement are proceeds of IP Collateral and should be treated as IP Cash Collateral in accordance with the terms of the DIP Order and Term Loan Adequate Protection Stipulation.

27.     Pursuant to, and as described in, the Ninth Supplemental Interim Order (I) Authorizing the Use of Cash Collateral Under 11 U.S.C. § 363, (II) Granting Adequate Protection Under 11 U.S.C. §§ 361, 362, and 363, and (III) Scheduling a Final Hearing Under Bankruptcy Rule 4001(B) [Docket No. 1445] (together with any further supplemental interim order, amended order, and/or final order, the "ABL Cash Collateral Order"), the Prepetition ABL Agent and Prepetition ABL Lenders (as both terms are defined in the ABL Cash Collateral Order) hold a first priority perfected security interest in the Prepetition ABL Collateral (as defined in the ABL Cash Collateral Order). Therefore, the Prepetition ABL Agent (on its behalf and on behalf of the Prepetition ABL Lenders) reserves all rights to claim those portions of any payment received pursuant to the terms of the Asset Sale Agreement are proceeds of Prepetition ABL Collateral and should be treated as Prepetition ABL Collateral in accordance with the terms of the ABL Cash Collateral Order.

17

28.     For the avoidance of doubt, any proceeds received by the Debtors in connection with an order granting the Motion shall be treated in accordance with the DIP Order, Term Loan Adequate Protection Stipulation, and ABL Cash Collateral Order.

## Additional Provisions

29.     Any creditor or other party in interest that did not file and serve, on or before 4:00 p.m. prevailing Eastern Time on January 14, 2010, a written objection to the Motion, the Sale contemplated by the Asset Sale Agreement, or the Assignment Procedures shall be, and hereby is, conclusively deemed to have waived any objection it may have to the Motion, the Sale of the Assets to the Purchaser and the Assignment Procedures and to have waived and released all liens, claims, or encumbrances in or on or with respect to the Assets.

30.     The Purchaser is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of this Sale Order shall not affect the validity of the Sale as to the Purchaser, except to the extent such authorization is duly stayed pending such appeal prior to such consummation.

31.     Except to the extent otherwise agreed to by the Debtors and Purchaser in the Asset Sale Agreement, no governmental unit or regulatory authority may revoke or suspend any right, license, trademark or other permission relating to the use of the Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

32.     The Debtors will cooperate with the Purchaser and the Purchaser will cooperate with the Debtors, to ensure that the Transactions contemplated in the Asset Sale Agreement are consummated, and the Debtors will make such reasonable modifications or

18

supplements to any bill of sale or other document executed in connection with the Closing necessary to facilitate such consummation as contemplated by the Asset Sale Agreement.

33.    The terms and provisions of this Sale Order and the Asset Sale Agreement shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective Affiliates, successors and assigns, their estates, and their creditors, the Purchaser and its respective affiliates, successors and assigns and any affected parties including, without limitation, all persons asserting Liabilities in the Assets and any trustees, examiners, "responsible persons," or other fiduciaries appointed in these chapter 11 cases or upon a conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

34.    The failure to specifically include any particular provisions of the Asset Sale Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Sale Agreement be authorized and approved in its entirety.

35.    The Asset Sale Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

36.    Nothing contained in any order entered in these chapter 11 cases subsequent to entry of this Sale Order, nor in any chapter 11 plan confirmed in these chapter 11 cases, shall conflict with or derogate from the provisions of the Asset Sale Agreement or the terms of this Sale Order.

19

37.     The provisions of this Sale Order are nonseverable and mutually dependent.

38.     The provisions of this Sale Order and the Transaction Documents shall not be amended, modified, or altered in any way by any subsequent order, pleading, or agreement, including any plan of reorganization or plan confirmation order.  The provisions of this Sale Order shall be binding on any subsequently appointed trustee or similar party and shall survive any dismissal or conversion of these chapter 11 cases.  In the event of a conflict between this Sale Order and the Transaction Documents or other agreements of the Debtor or orders entered in these chapter 11 cases, this Sale Order shall control.  In the event of an asserted conflict between this Sale Order and the Transaction Documents or other agreements of the Debtors or orders entered in these chapter 11 cases, there shall be a rebuttable presumption that the terms of the Sale Order and the Transaction Documents are not in conflict.

39.     The Sale shall not be subject to any bulk sale law or any similar law of any state or other jurisdiction.

40.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Sale Order and the Asset Sale Agreement in accordance with the Motion.

41.     The automatic stay of section 362 of the Bankruptcy Code is hereby modified to allow the Closing and implementation of the agreements contained in the Asset Sale Agreement.

42.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective immediately upon its entry and the Debtors and the Purchaser are authorized to transfer the Assets immediately upon entry of this Sale Order.

43.    This Court shall retain jurisdiction to interpret, implement, and enforce the terms and provisions of this Sale Order and the terms of the Asset Sale Agreement, any amendments thereto and any waivers and consents thereunder and resolve any disputes arising under or related to the Asset Sale Agreement, the Sale, or the Transactions, except as otherwise provided in the Asset Sale Agreement.

Wilmington, Delaware
Dated:    1/20    , 2010

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

21