# THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VISTEON CORPORATION, et al.,[1] | ) Case No. 09- 11786(CSS) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Re: Docket Nos. 18, 93, 380, 599, 689, 792,** |
| | **952, 1110, 1161, 1242, 1445, 1710, 2368** |

## TWELFTH SUPPLEMENTAL INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL UNDER 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION UNDER 11 U.S.C. §§ 361, 362 AND 363 AND (III) SCHEDULING A FINAL HEARING UNDER BANKRUPTCY RULE 4001(B)

Upon the motion ("**Motion**"), dated May 28, 2009, of the above-captioned debtors and debtors in possession (collectively, "**Visteon**" or the "**Debtors**") in these chapter 11 cases ("Cases") under sections 361, 362, 363, and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 4001-2 and 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("**Local Bankruptcy Rules**"), having sought, among other things:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Visteon Corporation (9512); ARS, Inc. (3590); Fairlane Holdings, Inc. (8091); GCM/Visteon Automotive Leasing Systems, LLC (4060); GCM/Visteon Automotive Systems, LLC (7103); Halla Climate Systems Alabama Corp. (9188); Infinitive Speech Systems Corp. (7099); MIG-Visteon Automotive Systems, LLC (5828); SunGlas, LLC (0711); The Visteon Fund (6029); Tyler Road Investments, LLC (9284); VC Aviation Services, LLC (2712); VC Regional Assembly & Manufacturing, LLC (3058); Visteon AC Holdings Corp. (9371); Visteon Asia Holdings, Inc. (0050); Visteon Automotive Holdings, LLC (8898); Visteon Caribbean, Inc. (7397); Visteon Climate Control Systems Limited (1946); Visteon Domestic Holdings, LLC (5664); Visteon Electronics Corporation (9060); Visteon European Holdings Corporation (5152); Visteon Financial Corporation (9834); Visteon Global Technologies, Inc. (9322); Visteon Global Treasury, Inc. (5591); Visteon Holdings, LLC (8897); Visteon International Business Development, Inc. (1875); Visteon International Holdings, Inc. (4928); Visteon LA Holdings Corp. (9369); Visteon Remanufacturing Incorporated (3237); Visteon Systems, LLC (1903); Visteon Technologies, LLC (5291). The location of the Debtors' corporate headquarters and the service address for all the Debtors is: One Village Center Drive, Van Buren Township, Michigan 48111.

(i)      authorization for the Debtors to use the Cash Collateral (defined below) and any other Prepetition ABL Collateral (defined below) in which the Prepetition ABL Lenders (defined below) have an interest;

(ii)      the granting of adequate protection to the Prepetition ABL Lenders for any diminution in the value of the Prepetition ABL Lenders' interests in the Prepetition ABL Collateral, whether from the use of the Cash Collateral or the use, sale, lease, depreciation or other diminution in value of the Prepetition ABL Collateral, or as a result of the imposition of the automatic stay under section 362(a) of the Bankruptcy Code;

(iii)      approval of certain stipulations by the Debtors concerning the Prepetition ABL Credit Agreement (defined below) and the claims, liens and security interests arising from it;

(iv)      subject only to and effective upon entry of the Final Order, the limitation of the Debtors' right to surcharge collateral under section 506(c) of the Bankruptcy Code;

(v)      under Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-2, an interim hearing (the "**Interim Hearing**") on the Motion for the proposed interim order annexed to the Motion (the "**Interim Order**") authorizing the Debtors to use the Cash Collateral and granting the requested protection; and

(vi)      a final hearing (the "**Final Hearing**") to be held within 21 days after entry of the Interim Order to consider entry of a final order (the "**Final Order**")

authorizing (i) the Debtors' use of the Cash Collateral and (ii) the granting on a final basis of the requested adequate protection;

The Debtors having served notice pursuant to sections 102(1), 361, 362, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (c) and Local Bankruptcy Rule 2002-1(b) and 4001-2, of the Motion, the relief requested therein on an interim basis and the Interim Hearing on, among others, the Prepetition ABL Agent (defined below), the Prepetition ABL Lenders (defined below), Wilmington Trust FSB, as successor Administrative Agent (the "**Successor Prepetition Term Agent**") for the several lenders (the "**Prepetition Term Lenders**"; and together with the Successor Prepetition Term Agent, the "**Prepetition Term Secured Parties**") under that certain Amended and Restated Credit Agreement dated as of April 10, 2007 as amended, supplemented or modified (collectively, the "**Prepetition Term Credit Agreement**") in the original principal amount of $1,500,000,000 among Visteon Corporation, as borrower, the Prepetition Term Lenders and JPMorgan Chase Bank, N.A. , as original administrative agent for the Prepetition Term Lenders (the "**Original Prepetition Term Agent**"; and together with the Successor Prepetition Term Agent, the "**Prepetition Term Agent**"), the Debtors' thirty largest unsecured creditors as set forth in the list filed by the Debtors pursuant to Bankruptcy Rule 1007(d) (the "**Thirty Largest Creditors List**"), the Indenture Trustee under that certain Amended and Restated Indenture dated May 10, 2004 between the Debtors and JPMorgan Chase Bank, N.A., as Indenture Trustee, dated May 10, 2004 (the "**Indenture Trustee**"), all known holders of liens on the Debtors' assets, and the Office of the United States Trustee for the District of Delaware;

The Interim Hearing having been held by this Court on May 29, 2009, and this Court having entered an interim order, dated May 29, 2009 (the "**Interim Order**"), that, among other

things, (i) authorized the Debtors' use of cash collateral, (ii) granted the adequate protection described in the Interim Order and (iii) scheduled the Final Hearing on June 19, 2009, to consider entry of the Final Order, as set forth in the Interim Order and the Motion filed with this Court;

The Debtors having timely served, within one (1) Court day after May 29, 2009, by overnight mail (i) a notice of the Final Hearing and the briefing schedule thereon as set forth below (the "**Final Hearing Notice**"), and (ii) copies of the Interim Order on: (a) the United States Trustee; (b) counsel for the Prepetition ABL Agent; (c) counsel for Prepetition Term Agent; (d) counsel for the Indenture Trustee; (e) the Thirty Largest Creditors List; (f) all parties in interest on whom service is required by the Debtors' order limiting notice entered in these Cases and their counsel; (g) all known holders of liens on the Debtors' assets; and (h) the other parties on whom the Court directed service on the record;

The Prepetition Term Agent having filed on May 29, 2009 its "Motion of Prepetition Term Agent for Adequate Protection for the Debtors' Use of the Prepetition Term Loan Collateral" (the "**Term Adequate Protection Motion**"), and the Official Committee of Unsecured Creditors (the "**Committee**") having filed its "Objection of the Official Committee of Unsecured Creditors' to Debtors' Motion For Entry of a Final Order (A) Authorizing use of Cash Collateral and (B) Granting Adequate Protection to the Pre-Petition Secured Lender (the "**Committee Objection**");

A hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a second interim cash collateral hearing on June 19, 2009 (the "**Second Interim Hearing**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a third interim cash collateral hearing on July 1, 2009 (the "**Third Interim Hearing**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a fourth interim cash collateral hearing on July 16, 2009 (the "**Fourth Interim Hearing**");

The Court having considered the Term Adequate Protection Motion contemporaneously with Fourth Interim Hearing and having entered and agreed form of Stipulation, Agreement, And Final Order On Consent (I) Authorizing Use Of Prepetition Term Loan Priority Collateral And Term Cash Collateral Under 11 U.S.C. § 361; And (II) Granting Adequate Protection Under 11 U.S.C. §§ 361, 362, and 363, as amended, (the "**Term Cash Collateral Order**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a fifth interim cash collateral hearing on July 28, 2009 (the "**Fifth Interim Hearing**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a sixth interim cash collateral hearing on August 13, 2009 (the "**Sixth Interim Hearing**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a seventh interim cash collateral hearing on September 9, 2009 (the "**Seventh Interim Hearing**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as an eighth interim cash collateral hearing on October 9,

2009 (the "**Eighth Interim Hearing**"), and the Court having entered its Seventh Supplemental Interim Cash Collateral Order;

The Eighth Interim Hearing having been adjourned for the sole purpose of affording the Committee, the Debtors and Prepetition ABL Lenders to negotiate an agreement concerning the procedures governing the Committee's investigation of claims against the Prepetition ABL Lenders and their affiliates, and a holding date of October 21, 2009 for a continued Eighth Interim Hearing having been announced on the record of the Eighth Interim Hearing (the "**Continued Eighth Interim Hearing**") if such negotiations were not successful;

The negotiations between the Committee, the Debtors and Prepetition ABL Lenders having continued past the October 21, 2009 holding date, and the Debtors, the Committee and Prepetition ABL Lenders having entered into an Amended Seventh Supplemental Cash Collateral Stipulation, which extended the deadline for the Committee's filing of 510 Claims and Defenses (as defined in the Seventh Supplemental Interim Order) from October 20, 2009 until November 12, 2009;

The Committee, the Debtors and Prepetition ABL Lenders having thereafter having agreed upon procedures governing the Committee's investigation of claims against the Prepetition ABL Lenders and their affiliates, and having presented upon certification of counsel an agreed Second Amended Seventh Supplemental Interim Order;,

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a ninth interim cash collateral hearing on November 12, 2009 (the "**Ninth Interim Hearing**"), and the Court having entered its Eighth Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a tenth interim cash collateral hearing on December 10, 2009 (the "**Tenth Interim Hearing**"), and the Court having entered its Ninth Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as an eleventh interim cash collateral hearing on January 21, 2010 (the "**Eleventh Interim Hearing**"), and the Court having entered its Tenth Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a twelfth interim cash collateral hearing on February 18, 2010 (the "**Twelfth Interim Hearing**") and the Court having entered its Eleventh Supplemental Interim Cash Collateral Order ") (the foregoing Interim Order and the First through the Eleventh Supplemental Interim Orders, collectively, the "**Interim Orders**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a thirteenth interim cash collateral hearing on March 16, 2010 (the "**Thirteenth Interim Hearing**"); and

The Debtor having filed a motion (the "**DIP Motion**") for approval of Final Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 and 507: (A) Approving Senior Secured Superpriority Priming Postpetition Financing; (B) Granting Liens And Providing Superpriority Administrative Expense Status; (C) Granting Adequate Protection To Prepetition Secured Parties; (D) Authorizing The Use Of Cash Collateral; And (E) Modifying The Automatic Stay, which was heard concurrently with the Ninth Interim Hearing (the "**Final DIP Hearing**"), and the Court having entered an Order approving the DIP Motion (the "**DIP Order**") and having

approved a debtor in possession credit agreement and documents ancillary thereto (the "**DIP Documents**");

Upon the record made by the Debtors at the Interim Hearing, the Second Interim Hearing, the Third Interim Hearing, the Fourth Interim Hearing, the Fifth Interim Hearing, the Sixth Interim Hearing, the Seventh Interim Hearing, the Eighth Interim Hearing, the Ninth Interim Hearing, the Final DIP Hearing, the Tenth Interim Hearing, the Eleventh Interim Hearing, Twelfth Interim Hearing, Thirteenth Interim Hearing and the record in these Cases and the Declaration of William G. Quigley, III in support of First Day Pleadings, and after due deliberation and consideration and sufficient cause having been shown:

IT IS FOUND AND ORDERED that:

1.      *Disposition.* The Motion is granted on an thirteenth interim basis on the terms set forth in this Order (the "**Twelfth Supplemental Interim Order**"). Any objection to the relief sought in the Motion that has not been previously resolved or withdrawn is overruled on the merits as respects the Interim Order, the Supplemental Interim Order, the Second Supplemental Interim Order, the Third Supplemental Order, the Fourth Supplemental Order, the Fifth Supplemental Interim Order, the Sixth Supplemental Interim Order, the Seventh Supplemental Interim Order, the Amended Seventh Supplemental Interim Order, the Second Amended Seventh Supplemental Interim Order, the Eighth Supplemental Interim Order, the Ninth Supplemental Interim Order, the Tenth Supplemental Interim Order, the Eleventh Supplemental Interim Order and this Twelfth Supplemental Interim Order. This Twelfth Supplemental Interim Order is valid, binding and enforceable on all parties in interest and fully effective immediately upon entry.

2.      *Jurisdiction and Venue.* This Court has jurisdiction over the Cases and the Motion as a core proceeding and over the affected parties and property under 28 U.S.C.

§§ 157(b) and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. No request has been made for the appointment of a trustee or examiner.

3. *Notice.* Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, the Interim Hearing and all subsequent interim hearings pursuant to Bankruptcy Rule 4001(b) and Local Bankruptcy Rule 4001-2, constituted appropriate, due and sufficient notice thereof and complied with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules.

4. *Conflicts.* The order is not intended to modify, diminish, or expand the relative rights, obligations, and priorities of the parties to the Intercreditor Agreement (defined below).

5. *Prepetition Secured Facilities.* As of the Petition Date, the Debtors were parties to the following agreements:

(a)  Visteon Corporation and 23 of its domestic subsidiaries, all of which are Debtors in these Cases (collectively, the "**Borrowers**"), Ford Motor Company ("**Ford**"), as sole lender, and such other persons and entities as may hereafter acquire interests in the Prepetition ABL Obligations (collectively with Ford, the "**Prepetition ABL Lenders**"), JPMorgan Chase Bank, N.A., as Issuing Bank (the "**Prepetition ABL Issuing Bank**"), and The Bank of New York Mellon, as Administrative Agent for the Prepetition ABL Lenders and the Prepetition ABL Issuing Bank (the "**Successor Prepetition ABL Agent**"), and successor to JPMorgan Chase Bank, N.A. as original administrative agent for the Prepetition ABL Lenders and the Prepetition ABL Issuing Bank (the "**Original Prepetition ABL Agent**,"; together with the Successor Prepetition ABL Agent, collectively, the "**Prepetition ABL Agent**"; and together with the Prepetition ABL Lenders and the Prepetition ABL Issuing Bank collectively, the "**Prepetition**

**ABL Secured Parties**"), are parties to that certain Credit Agreement dated as of August 14, 2006, as amended, supplemented or modified by that certain (i) First Amendment to Credit Agreement and Consent dated as of November 27, 2006; (ii) Second Amendment to Credit Agreement and Consent dated as of April 10, 2007; (iii) Third Amendment to Credit Agreement dated as of March 12, 2008; (iv) Fourth Amendment and Limited Waiver to Credit Agreement and Amendment to Security Agreement dated as of March 11, 2009; (v) Fifth Amendment to Credit Agreement dated as of May 13, 2009; (vi) Sixth Amendment to Credit Agreement dated as of May 13, 2009; (vii) Seventh Amendment to Credit Agreement dated as of May 21, 2009; and (viii) Eighth Amendment to Credit Agreement dated as of July 15, 2009 (thus amended, supplemented or modified, "**Prepetition ABL Credit Agreement**");

(b)     (i) Pledge and Security Agreement dated as of August 14, 2006, (ii) Trademark Security Agreement dated as of August 14, 2006, (iii) Patent Security Agreement dated as of August 14, 2006, and (iv) First Lien Aircraft Security Agreement dated as of March 28, 2008 (as amended, supplemented or otherwise modified before the Petition Date, ("**Prepetition ABL Security Agreements**"; and together with all other security agreements, pledge agreements, fixture filings, mortgages, deeds of trust, control agreements, and all other collateral and ancillary documentation executed or delivered in connection with the Prepetition ABL Credit Agreement, "**Prepetition ABL Security Documents**"), among the Borrowers and the Prepetition ABL Agent;

(c)     The Prepetition Term Credit Agreement; and

(d)     Intercreditor Agreement, dated as of June 13, 2006, as amended (the **"Intercreditor Agreement"**), among the Prepetition ABL Agent, the Prepetition Term Agent, Visteon and specified subsidiaries and affiliates of Visteon.

6.     *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations in paragraphs 23 and 24 of this Twelfth Supplemental Interim Order), the Debtors admit, stipulate and agree that:

(a)     as of the Petition Date, (i) each Borrower was indebted and liable to the Original Prepetition ABL Agent and the Prepetition ABL Lenders, without defense, counterclaim or offset of any kind, concerning the revolving loans made by the Prepetition ABL Lenders to the Borrowers under the Prepetition ABL Credit Agreement in the aggregate principal amount of not less than $88,632,432.13 (plus accrued and unpaid interest), (ii) each Borrower was contingently liable to the Prepetition ABL Issuing Bank under the Prepetition ABL Credit Agreement and to the Prepetition ABL Lenders for an aggregate face amount of not less than $58,827,158.28 on account of the Borrowers' reimbursement obligations for letters of credit issued under the Prepetition ABL Credit Agreement, that remained outstanding as of the Petition Date ($38,521,734 of which have been drawn since the Petition Date), (iii) each Borrower was indebted and liable to the Original Prepetition ABL Agent, the Prepetition ABL Lenders and the Prepetition ABL Issuing Bank for fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses) that are chargeable or reimbursable under the Prepetition ABL Credit Agreement, the Prepetition ABL Security Documents, any amendment, supplement or other modification of any of the foregoing, or any related agreement, instrument or other document executed or delivered in connection with them (the Prepetition ABL Credit Agreement and the Prepetition ABL Security Documents, collectively, **"Prepetition**

**ABL Loan Documents"**), and for charges and other obligations incurred in connection with those loans and letters of credit in each case as provided in the Prepetition ABL Loan Documents, and (iv) the Borrowers were indebted, jointly and severally, in connection with Swap Obligations and Banking Services Obligations (all as defined in the Prepetition ABL Credit Agreement) (items (i) through (iv), collectively, **"Prepetition ABL Obligations"**); the Prepetition ABL Loan Documents and the Prepetition ABL Obligations constitute the legal, valid and binding obligations of the Borrowers, enforceable in accordance with their terms (other than any concerning stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition ABL Obligations is subject to avoidance, recharacterization, reduction, disallowance, impairment, recovery or subordination under the Bankruptcy Code or applicable nonbankruptcy law;

(b)    the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Original Prepetition ABL Agent, in its capacity as such, the Prepetition ABL Lenders, in their capacities as such, or their respective affiliates, subsidiaries, members, agents, officers, directors, employees and attorneys, arising under the Prepetition ABL Loan Documents or otherwise in regard to the Prepetition ABL Obligations;

(c)    the liens and security interests granted to the Original Prepetition ABL Agent (for the ratable benefit of the holders of the Prepetition ABL Obligations) under and in connection with the Prepetition ABL Security Documents (including (i) liens and security interests securing any Banking Services Obligations (as defined in the Prepetition ABL Credit Agreement) provided or to be provided by the Original Prepetition ABL Agent or any former lender or other person under and as specified in the Prepetition ABL Credit Agreement and (ii)

the setoff rights described in the Prepetition ABL Loan Documents and arising by operation of law) are valid, binding, perfected, enforceable, first-priority liens on the personal and real property described in the Prepetition ABL Security Documents (the **"Prepetition ABL Collateral"**), subject to subordination in certain instances to the liens of the Prepetition Term Agent for the ratable benefit of the Prepetition Term Lenders in accordance with the Intercreditor Agreement, but not subject to avoidance, recharacterization or subordination under the Bankruptcy Code or applicable nonbankruptcy law and subject and subordinate only to (i) the Carve Out (defined below) and (ii) valid, perfected and unavoidable liens permitted under the Prepetition ABL Loan Documents to the extent those liens are permitted to be senior to or *pari passu* with the liens of the Prepetition ABL Agent on the Prepetition ABL Collateral; and

(d)     the aggregate value of the Prepetition ABL Collateral exceeds the aggregate amount of the Prepetition ABL Obligations as of the Petition Date.

7.     Findings Regarding the Use of Cash Collateral.

(a)     Good cause has been shown for issuance of this Twelfth Supplemental Interim Order. The Debtors do not have available sources of working capital and financing to carry on the operation of their businesses without the use of the Cash Collateral. The Debtors have an immediate need to use the Cash Collateral to enable them to, among other things, continue the operation of their businesses in an orderly manner, maintain business relationships with customers, suppliers and vendors, make payroll, make capital expenditures and satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtors.

(b)     Based on the record presented to the Court at the Interim Hearing, the Second Interim Hearing, the Third Interim Hearing, the Fourth Interim Hearing, the Fifth Interim Hearing, the Sixth Interim Hearing, the Seventh Interim Hearing, the Eighth Interim Hearing, the Ninth Interim Hearing, the Tenth Interim Hearing, the Eleventh Interim Hearing, the Twelfth Interim Hearing, the Thirteenth Interim Hearing and the Final DIP Hearing, the terms of the use of Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration for the Prepetition ABL Lenders' consent.

(c)     The Prepetition ABL Agent, the Prepetition ABL Lenders and the Debtors have negotiated in good faith and at arm's length regarding the Debtors' use of the Cash Collateral to fund the administration of the Debtors' bankruptcy estates and continued operation of their businesses. The Prepetition ABL Agent and the Prepetition ABL Lenders have agreed to permit the Debtors to use the Cash Collateral through the Expiration Date (as defined below) all subject to the terms and conditions set forth in this Twelfth Supplemental Interim Order and in the Prepetition ABL Credit Agreement, including the protection afforded an entity acting in "good faith" under section 363(m) of the Bankruptcy Code.

(d)     The Debtors have requested immediate entry of this Twelfth Supplemental Interim Order under Bankruptcy Rule 4001(b)(2) and Local Bankruptcy Rule 4001-2. Use of Cash Collateral under the Tenth Supplemental Interim Order terminates as of March 17, 2010, and unless the relief sought by this Twelfth Supplemental Interim Order is granted, the Debtors' bankruptcy estates will be immediately and irreparably harmed. The use of Cash Collateral in accordance with this Twelfth Supplemental Interim Order and the Prepetition ABL Credit Agreement is in the best interests of the Debtors' bankruptcy estates.

(e)    The Prepetition ABL Lenders object to the use by the Debtors of the Prepetition ABL Collateral, including the Cash Collateral, except on the terms of this Twelfth Supplemental Interim Order (or other order that may be issued by the Bankruptcy Court with the consent of the Prepetition ABL Agent and the Prepetition ABL Lenders). The Prepetition ABL Lenders are entitled, under section 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition ABL Collateral to the extent of diminution in value, including for the use of Cash Collateral; the use, sale, lease, depreciation or other diminution in value of the Prepetition ABL Collateral other than the Cash Collateral; and the imposition of the automatic stay under section 362 of the Bankruptcy Code. The Prepetition Term Agent and the Prepetition Term Lenders are entitled to adequate protection of their interests in the Prepetition Term Collateral to the extent of any diminution in the value of their interests in the Prepetition Term Collateral resulting from the use thereof by the Debtor, or the effect of the automatic stay, if any, but, in any case, only to extent permissible under the Intercreditor Agreement.

8.    *The Cash Collateral.*

(a)    Deposited Funds.  To the extent any funds were on deposit with the Prepetition ABL Agent, or were on deposit with any financial institution subject to the Prepetition ABL Security Documents as of the Petition Date (regardless of whether, at that time, those funds had been collected or made available for withdrawal by any Debtor), those funds ("**Deposited Funds**") are subject to rights of setoff in favor of the Prepetition ABL Agent to the extent set forth in the Prepetition ABL Credit Agreement or as provided by applicable law.  By virtue of those setoff rights and section 553 of the Bankruptcy Code, the Prepetition ABL Obligations are secured by the Deposited Funds for the purposes of these Cases under section 506(a) of the Bankruptcy Code.

(b)     Cash Collateral.  The Debtors' cash, including all cash and other amounts on deposit or maintained in any account subject to control in favor of the Prepetition ABL Agent or Prepetition ABL Lenders, including but not limited to deposit accounts subject to a deposit account control agreement with the Prepetition ABL Agent or in the concentration accounts maintained with the Prepetition ABL Agent (or any of their respective affiliates) (collectively, the "**Collateral Accounts**") and any proceeds of the Prepetition ABL Collateral (including the Deposited Funds or any other funds on deposit at any other institution as of the Petition Date), are "cash collateral" of the Prepetition ABL Lenders within the meaning of section 363(a) of the Bankruptcy Code.  The Debtors' cash, the Deposited Funds, the funds in the Collateral Accounts, all proceeds of Prepetition ABL Collateral and any other Prepetition ABL Collateral (but excluding any proceeds of the Term Loan Priority Collateral), constitutes the Prepetition ABL Lenders' cash collateral within the meaning of Bankruptcy Code §363(a) and are referred to as "**Cash Collateral**."   For the purposes of clarity, DIP Proceeds (as such term is defined in the DIP Order) do not constitute Cash Collateral.

(c)     Prepetition Term Lenders' Claimed Cash Collateral.  Prepetition Term Agent and the Prepetition Term Lenders and the Debtors have agreed upon and the Court  has entered the Term Cash Collateral Order, which governs the Debtors' use of any proceeds of the Term Loan Priority Collateral ("**Term Cash Collateral**").   Subject to the Intercreditor Agreement, the Prepetition ABL Lenders reserve all rights and arguments with respect to the Term Cash Collateral.  The segregation of, or failure to segregate alleged Term Cash Collateral pursuant to the Term Cash Collateral Order shall not be deemed to support or vitiate the classification of such claimed Term Cash Collateral as Term Priority Collateral or ABL Priority

Collateral, the classification of which shall in all cases be governed by the Intercreditor Agreement.

9. *Use of Cash Collateral.* Subject to compliance with the Budget (defined below) and the terms and conditions of this Twelfth Supplemental Interim Order and in the Prepetition ABL Credit Agreement (other than with respect to reimbursement obligations of Letters of Credit provisions), the Debtors are authorized, during the period from the Petition Date through and including the Expiration Date (defined below) to (i) use the Cash Collateral generated from the operation of the Debtors' businesses in the ordinary course through the collection of accounts receivable and the proceeds of other Prepetition ABL Collateral; (ii) use the Cash Collateral in the Collateral Accounts, subject to the limitations and adjustments contained in this Twelfth Supplemental Interim Order for the purposes authorized pursuant to the Budget or under the terms of this Twelfth Supplemental Interim Order; (iii) subject to the terms of this Twelfth Supplemental Interim Order, use up to no more than $20,000,000 of Cash Collateral in accordance with the Currency Contracts Order (as defined below) to provide credit support under the Currency Contracts ("**Permitted Currency Contract Deposits**") as defined in the Order Authorizing The Debtors To Enter Into And Provide Credit Support Under Currency Contracts entered November 12, 2009 (the "**Currency Contracts Order**"); and (iv) subject to the terms of this Twelfth Supplemental Interim Order, use up to no more than $40,000,000 of Cash Collateral ("**Permitted DIP LC Deposits**") for the purposes of securing DIP Letter Of Credit Obligations as defined in the "Order Approving Post-Petition Secured Letter Of Credit Facility And Authorizing The Debtors To Pay Certain Fees And Costs Related Thereto" entered November 12, 2009 (the "**DIP LC Order**"). The term **"Expiration Date"** means the earlier of (x) April 14, 2010 or, such later date to which the Prepetition ABL Lenders who hold amounts of the

Prepetition ABL Obligations sufficient to issue such a consent pursuant to the Prepetition ABL Credit Agreement (the **"Required Prepetition ABL Lenders"**), may consent in writing, or (y) the date specified as the expiration date in any notice of an Event of Default (as defined below) delivered by the Prepetition ABL Agent (acting at the direction of the Required Prepetition ABL Lenders) to the Debtors, the Prepetition Term Agent, the Office of the United States Trustee, and the Committee appointed in these Cases, which Expiration Date must be at least three (3) Business Days (the first day after the date considered which is not a Saturday, Sunday, or Federally observed holiday being defined as a "**Business Day**") after delivery of such notice. The Debtors must use any cash (except Term Cash Collateral, if any Term Cash Collateral exists) that is not Cash Collateral before using Cash Collateral, and any non-Cash Collateral must be used only for the same purposes as permitted for Cash Collateral in accordance with the terms and conditions of this Twelfth Supplemental Interim Order and the Budget. If Required Prepetition ABL Lenders and the Debtors consent to an extension of the Expiration Date, they shall notify the Committee and the Prepetition Term Agent. The Required Prepetition ABL Lenders and the Debtors may mutually consent to one or more extensions of the Expiration Date of this Twelfth Supplemental Interim Order (or a subsequent Supplemental Interim Order) or to the modification of the Budget. The Committee or the Prepetition Term Agent may object to the extension of the Expiration Date established by a Final Order (or a subsequent Supplemental Interim Order) or to the modification of the Budget within 3 Business Days thereafter, and the Debtors may move on 4 Business Days' notice to the Committee and the Prepetition Term Agent for an Order authorizing the extension of the Expiration Date or approval of the Budget as modified.

(a)    Subject to the limitations of this Twelfth Supplemental Interim Order, including the Budget and the Variance (as defined below), so long as the Expiration Date has not occurred and no Event of Default has occurred and is continuing, the Debtors may use Cash Collateral by delivering to the Prepetition ABL Agent, on a weekly basis, (x) a written request for release of Cash Collateral (**"Cash Collateral Request"**) in the form acceptable to Required Prepetition ABL Lenders and Prepetition ABL Agent in their sole discretion and (y) a certificate, prepared in accordance with the criteria applicable to Borrowing Base Certificates as defined in the Prepetition ABL Credit Agreement, (each, a "**Collateral Base Certificate**"), calculating and classifying the Debtors' accounts receivable and inventory (the "**Collateral Base**") using the same methodology as used by the Debtors prepetition to calculate the Borrowing Base (as defined in the Prepetition ABL Credit Agreement), and providing the supporting information and as had been provided by the Debtors to the Prepetition ABL Secured Parties prepetition, each duly executed by a representative of the Debtors authorized to do so by the Prepetition ABL Credit Agreement and each of which will be deemed to be the Debtors' representation and warranty that (i) the Cash Collateral Request is necessary to fund the Debtors' operating expenses after utilization and application of all other available non-Cash Collateral of the Debtors, (ii) the intended uses thereof are consistent with the terms of this Twelfth Supplemental Interim Order and the Budget and are necessary, after utilization and application of all other available cash of the Debtors, in order for the Debtors to satisfy their obligations in the ordinary course of business or as otherwise permitted under this Twelfth Supplemental Interim Order, the Budget, and the Prepetition ABL Credit Agreement; (iii) the Debtors have observed and performed in all material respects all applicable obligations and requirements contained in this Twelfth Supplemental Interim Order, and satisfied each condition to the continued use of Cash

Collateral contained in this Twelfth Supplemental Interim Order and the Prepetition ABL Credit Agreement to be observed, performed or satisfied by them, and (iv) no Event of Default under this Twelfth Supplemental Interim Order or the Prepetition ABL Credit Agreement (other than any default thereunder occurring solely as a result of the commencement of these Cases), and no event or condition that with notice or the lapse of time, or both, would constitute an Event of Default, has occurred and is continuing under this Twelfth Supplemental Interim Order.

(b)     Notwithstanding the provisions of any order entered in these Cases, the Debtors' expenditures of Cash Collateral shall be governed by this Twelfth Supplemental Interim Order and the Budget, subject to the Variance; provided, however, that the Debtors may pay the (i) reasonable fees and expenses of the Original Prepetition ABL Agent incurred during the term of its appointment, and (ii) reasonable fees and expenses of the Successor Prepetition ABL Agent incurred during the term of its appointment.

10.     Budget

(a)     Format of Budget.   Debtors may use the Cash Collateral solely as provided in this Twelfth Supplemental Interim Order and the Prepetition ABL Credit Agreement. The Debtors will only use the Cash Collateral for the payment of the costs and expenses associated with the operation of the Debtors' businesses and the conduct of the Cases in the amounts and categories of the Debtors' Projected Expenditures, Revenues and Collateral Base Forecast delivered to and agreed by the Prepetition ABL Agent and the Required Prepetition ABL Lenders prior to entry of this Twelfth Supplemental Interim Order and attached hereto as Exhibit "1" (the "**Budget**"), and the additional items set forth in this Twelfth Supplemental Interim Order, including, but not limited to, the Permitted DIP LC Deposits, the Permitted

Currency Contract Deposits, and the fees and expenses set forth in Section 9(b) and 11(f) hereof. The Budget shall set forth by line item net cash flow (including cash receipts and cash disbursements), expenditures (accounts payable) and collateral values projected by the Debtors for the time period from the Petition Date through April 23, 2010 (it being understood that notwithstanding the end date of the Budget, that Cash Collateral is authorized for use only through April 14, 2010).

(b)     Reporting.    Debtors will provide the Prepetition ABL Agent, the Prepetition ABL Lenders with any written financial information or reporting on the same terms as provided in the Prepetition ABL Credit Agreement or any other Prepetition ABL Loan Document. In addition:

(i)     From and after entry of this Twelfth Supplemental Interim Order, on each Thursday, beginning with Thursday of the first week following entry of this Twelfth Supplemental Interim Order, Debtors shall deliver to Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a rolling 13 week forecast by line item of net cash flow (including cash receipts and cash disbursements), expenditures (accounts payable) and Collateral Base (each a "**Thirteen Week Forecast**"), which Thirteen Week Forecast shall be subject to the reasonable consent of Required Prepetition ABL Lenders.

(ii)     From and after entry of this Twelfth Supplemental Interim Order, on each Thursday, beginning with Thursday of the first week following entry of this Twelfth Supplemental Interim Order, the Debtors shall deliver to Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a report, for the

week ending on the preceding Thursday, of actual net cash flow (including cash receipts and cash disbursements), expenditures (accounts payable) and an updated weekly Collateral Base, in each case comparing the Debtors' actual performance to the Budget and to most recent the Thirteen Week Forecast, in a form reasonably satisfactory to the Required Prepetition ABL Lenders, and a certification from a Financial Officer (defined in the Prepetition ABL Credit Agreement), certifying that the reports fairly present the financial condition and results of operations of the Debtors for such period (each an "**Actual Cash Flows and Collateral Base Report**").

(iii)    From and after entry of this Twelfth Supplemental Interim Order, on each Business Day, beginning on the Business Day following the entry of this Twelfth Supplemental Interim Order, the Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a report, as of the close of the immediately preceding Business Day, stating the Debtors' actual cash balances.

(iv)    No later than three business days after a request by Prepetition ABL Agent or Required Prepetition ABL Lenders (a single request may be issued by them no more than one time per week), the Debtors shall provide the Prepetition ABL Agent with a report as of the close of business on the date of such request as to the aggregate amount of all collateral securing all Currency Contracts and, if such aggregate amount is in excess of $20.0 million, a description of the Debtors' plans to reduce such aggregate amount.

(v)     No later than three business days after a request by Prepetition ABL Agent or Required Prepetition ABL Lenders (a single request may be issued by them no more than one time per week), the Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a statement of the amount of letters of credit issued under the DIP LC Order and which were outstanding as of the date of such request.

(vi)    From and after entry of this Twelfth Supplemental Interim Order, on each Tuesday, beginning with Tuesday of the second week following entry of this Twelfth Supplemental Interim Order, the Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a reasonably detailed explanation for any Variance in the Actual Cash Flows and Collateral Base Report from the Budget and the most recent Thirteen Week Forecast which was delivered to the Prepetition ABL Lenders on the previous Thursday, in a form reasonably satisfactory to the Required Prepetition ABL Lenders (each, a "**Budget Variance Report**").

(vii)   From and after entry of this Twelfth Supplemental Interim Order, on the first Business Day after the 15th day of each month, Debtors shall provide Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee its preliminary monthly results for the immediately preceding month.

(viii)  From and after entry of this Twelfth Supplemental Interim Order, on the 30th day of each month (if a Business Day, otherwise extended to the next Business Day), Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL

Lenders, the Prepetition Term Agent and the Committee a report (a) identifying the customers (if any) that have executed Accommodation Agreements, the value in dollars of the financial accommodations received from each customer pursuant to the Accommodation Agreement, and the amount of accounts receivable due from each customer, and (b) providing an update regarding the operations of the Debtors, including, without limitation, material information regarding relationships with carriers, suppliers and vendors after the Petition Date.

(ix)     From and after entry of this Twelfth Supplemental Interim Order, on the 30th day after the close of each month (if a Business Day, otherwise extended to the next Business Day), Debtors shall provide to Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a report identifying the Debtors' inventory, in the form used by the Debtors prior to the Petition Date showing production and non-production inventory, adjusted for reserves as calculated in the Debtors' ordinary course; provided, however, that for any month that is the close of a fiscal quarter such report will be provided by the 60th day after the close of the month.

(x)     From and after entry of this Twelfth Supplemental Interim Order, on the 30th day after the close of each month (if a Business Day, otherwise extended to the next Business Day), Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a report reflecting the age of the Debtors' accounts receivable listed by account debtor as of the close of the prior month; provided, however, that for any month that is the close of a fiscal quarter such report will be provided by the 60th day after the close of the month.

(xi)    From and after entry of this Twelfth Supplemental Interim Order, on the 30th day after the close of each month (if a Business Day, otherwise extended to the next Business Day), Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee an accounts payable aging report by vendor identifying post-Petition payables accrued at the time of the close of the prior month; provided, however, that for any month that is the close of a fiscal quarter such report will be provided by the 60th day after the close of the month.

(xii)    On the 30th day after the close of each month (if a Business Day, otherwise extended to the next Business Day) the Debtors shall provide to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee, internal basis (i.e., not GAAP-compliant) financial statements for the prior month in the format provided by the Debtors pursuant to the Prepetition ABL Credit Agreement prior to the Petition Date; provided, however, that for any month that is the close of a fiscal quarter such financial statements will be provided by the 60th day after the close of the month.

(xiii)    Any and all reports given or provided under the Term Cash Collateral Order, contemporaneously with the delivery thereof to the Prepetition Term Agent or the Prepetition Term Lenders.

(xiv)    Any and all reports given or provided under any Permitted DIP Financing, contemporaneously with the delivery thereof to the Administrative Agent thereof or the lenders under such Permitted DIP Financing.

(xv)    The Required Prepetition ABL Lenders and the Committee are each permitted to retain expert consultants, counsel, and financial advisors as reasonably required under the circumstances, and the Debtors shall be responsible, jointly and severally for paying the reasonable invoiced expenses of such expert consultants and financial advisors, as, with respect to the Required Prepetition ABL Lenders, to the extent set forth in the Prepetition ABL Credit Agreement.  The Debtors will permit the expert consultants, counsel, of financial advisors retained by the Required Prepetition ABL Lenders and the Committee to have reasonable access to the Debtors' premises and non privileged records during normal business hours upon reasonable notice and will cooperate, consult with and provide the Required Prepetition ABL Lenders' and the Committee's consultants and advisors all non-privileged information and reports as may be reasonably requested by their respective consultants and advisors.  (Sub-paragraphs 10(b)(i)–(xv), collectively, the "**Reporting Requirements**").

(c)    Approved Variance to the Budget and Projections:

(i)    Cash Flow. As measured commencing with results shown for the second Post-Petition week of the Budget, as shown in the Budget Variance Reports and Monthly Variance Reports provided, and as reported and measured weekly thereafter at the times set forth in subclause b above, the Debtors' actual cumulative net cash flow for the two (2) full weekly periods preceding and inclusive of the weekly period being considered, divided by two (2), shall not be less than 90% of the cumulative net cash flow set forth on the Budget for the two (2) full weekly periods immediately preceding the weekly period being considered, divided by two (2) (the "Variance").

(d)     Compliance with Budget and Variance. Subject to the Variance, and unless otherwise ordered by the Court after notice and a hearing, the Debtors shall comply with the Budget.  The Budget was prepared by the Debtors and it represents the Debtors' actual good faith projection of its  net cash flow (including cash receipts and cash disbursements), expenditures (accounts payable) and collateral values post-petition, and the Monthly Cash Collateral Forecast will present the Debtors' actual good faith forecast of their anticipated Cash Collateral needs under this Twelfth Supplemental Interim Order and the effect, giving effect to such anticipated Cash Collateral usage, on the Collateral Base.  The intent and purpose of the Budget is to provide a standard for determining whether the financial performance of the Debtors meet the criteria of the Prepetition ABL Agent and the Prepetition ABL Lenders, for purposes of determining whether there has been a default such that the use of Cash Collateral under this Twelfth Supplemental Interim Order should terminate and Prepetition ABL Agent and the Required Prepetition ABL Lenders, should be free to pursue default remedies under the terms of this Twelfth Supplemental Interim Order.  Unless the Court orders otherwise after notice and a hearing, the Debtors will not use any Cash Collateral to fund the operations or expenditures of any non-debtor affiliate except in the ordinary course of the Debtors' businesses (i.e., LERA and Maquilladora payments) in accordance with the Budget, and as otherwise agreed in writing by the Required Prepetition ABL Lenders.

(e)     Debtors agree with the Prepetition ABL Agent and the Prepetition ABL Lenders that: (i) the Debtors shall not enter into any Currency Contract if immediately after giving effect to such Currency Contract the Debtors would be required to grant security interests to third-parties in, or post or deposit with third-parties, cash collateral and other assets of the Debtors of more than $20.0 million in aggregate as security for all then outstanding Currency

Contracts; and (ii) if at any time such aggregate security nonetheless does exceed $20.0 million, the Debtors shall use commercially reasonable efforts to reach agreement with one or more Counterparties to terminate one or more Currency Contracts (or individual transactions thereunder) so as to reduce such aggregate security to an amount less than or equal to $20.0 million within 30 days of such aggregate security first exceeding such amount.

(f)     [Reserved].

(g)     Each party performing Banking Services (defined in the Prepetition ABL Credit Agreement) is authorized to comply with any instructions originated by the Prepetition ABL Agent directing disposition of funds, without further consent of the applicable Debtor, including instructions delivered by the Prepetition ABL Agent (acting at the written direction of the Required Prepetition ABL Lenders) to a party performing Banking Services before the Petition Date. The Debtors and the financial institutions where the Debtors' cash collection accounts are maintained are authorized to implement and/or continue in accordance with the Prepetition ABL Loan Documents daily cash sweeps from the cash collection accounts to Collateral Accounts. The automatic stay is modified and vacated to permit the actions permitted under this Twelfth Supplemental Interim Order. Except as otherwise provided in this Twelfth Supplemental Interim Order or in any other Order, the Debtors shall maintain their pre-Petition Date cash management and accounts receivable collection systems, including the Collateral Accounts.

11.     *Adequate Protection.*  The Prepetition ABL Agent, the Prepetition ABL Lenders and their affiliates are entitled to adequate protection of their interest in the Prepetition ABL Collateral, including the Cash Collateral, under section 363(e) of the Bankruptcy Code, for and

equal in amount to the aggregate diminution in the value of the Prepetition ABL Lenders'
interest in the Prepetition ABL Collateral, including any diminution resulting from (x) the
Debtors' use of the Cash Collateral under section 363(c) of the Bankruptcy Code, (y) the sale,
lease or use by the Debtors (or other decline in value) of the Prepetition ABL Collateral, and/or
(z) the imposition of the automatic stay under section 362 of the Bankruptcy Code (the amounts
of any diminution are **"ABL Adequate Protection Obligations"**). As adequate protection, the
Debtors grant the following:

(a) <u>Prepetition ABL Secured Parties' Adequate Protection Liens</u>. To secure
the ABL Adequate Protection Obligations, the Debtors grant to the Prepetition ABL Agent (for
the benefit of the Prepetition ABL Lenders) (effective and perfected retroactively to the Petition
Date and without the necessity of execution by the Debtors of mortgages, security agreements,
pledge agreements, financing statements or other agreements) a valid, binding, enforceable and
perfected replacement security interest in, and lien on (**"Adequate Protection ABL Liens"**), all
of the Debtors' right, title and interest in, to and under all present and after-acquired property and
proceeds of the Debtors of the nature and type of the Prepetition ABL Collateral, including the
ABL Priority Collateral, Common Collateral and Term Loan Priority Collateral (each term
having the meaning defined in the Intercreditor Agreement), and including all cash (except DIP
Proceeds) and cash collateral of the Debtors (whether maintained with the Prepetition ABL
Agent, any Prepetition ABL Lenders or other financial institution), whether now existing or later
acquired and all assets in or on which the Prepetition ABL Agent was granted liens pursuant to
the DIP Order (collectively, **"Postpetition ABL Collateral,"** which, for the avoidance of doubt,
excludes property owned by Texas Instruments Incorporated and provided to the Debtors on a
consignment basis). Subject to the Carve Out (as defined below) the Adequate Protection ABL

Liens granted to the Prepetition ABL Agent (for the ratable benefit of the Prepetition ABL Lenders) shall be (x) a first priority, senior and perfected lien on that portion of the Postpetition ABL Collateral of the same nature as the ABL Priority Collateral (as that term is defined in the Intercreditor Agreement) that is not subject to a validly perfected lien or security interest, with priority over the Prepetition ABL Agent's liens on the Prepetition ABL Collateral and Common Collateral as of the Petition Date and (y) second priority, junior perfected lien on Postpetition ABL Collateral of the same nature and to the same extent as the Prepetition ABL Collateral that is subject to a lien that is senior to the liens securing the Prepetition ABL Obligations (e.g., Term Loan Priority Collateral, as defined in the Intercreditor Agreement, or as provided in the DIP Order), provided, however, that the Adequate Protection ABL Liens shall not include Avoidance Actions (as defined below) and the proceeds thereof;

(b)     Term Secured Parties' Adequate Protection Liens.    To secure the diminution, if any, in the Prepetition Term Lenders' subordinate interests in the Cash Collateral (the amount of any diminution are, "**Term Adequate Protection Obligations**"), the Debtors hereby grant a valid, enforceable, binding and perfected adequate protection lien, which shall be subject and subordinate to the Adequate Protection ABL Liens and the Prepetition ABL Liens, on that portion of the Postpetition ABL Collateral that is of the same nature as the ABL Priority Collateral to the Prepetition Term Agent, for the benefit of the Prepetition Term Lenders (the "**Adequate Protection Term Liens**" and together with the Adequate Protection ABL Liens, the "**Adequate Protection Liens**").    The Adequate Protection Term Liens shall be entitled to distributions on the same basis and subject to the same limitations that are provided in the DIP Order and the Intercreditor Agreement, provided, however, that the Adequate Protection Term Liens shall not include Avoidance Actions and the proceeds thereof.

(c)     The rights of the Prepetition Term Agent and the Prepetition Term Lenders and the Prepetition ABL Agent and the Prepetition ABL Lenders to seek or exercise any rights or remedies (whether in these Cases or any subsequently converted cases) relating to the Adequate Protection Liens and other liens granted in this Twelfth Supplemental Interim Order shall be governed by the Intercreditor Agreement;

(d)     In the event of a conflict between the extent and priority of the liens granted to the Prepetition ABL Secured Parties pursuant to subparagraph 11(a) and the extent and priority of the liens granted to the Prepetition Term Secured Parties pursuant to subparagraph 11(b), or pursuant the Term Cash Collateral Order, the terms of the Intercreditor Agreement shall control.  For the avoidance of doubt, any property and proceeds of the Debtors of whatever nature that were not Common Collateral as defined in the Intercreditor Agreement ("**Unencumbered Assets**") prior to the Petition Date shall not be encumbered by the Adequate Protection ABL Lien or the Adequate Protection Term Lien granted herein or in any such Term Cash Collateral Order.  Debtors agree that they will not pledge, hypothecate or otherwise encumber any Unencumbered Assets except in connection with a Permitted DIP Financing.

(e)     *Section 507(b) Claims.*  The ABL Adequate Protection Obligations and Term Adequate Protection Obligations shall constitute, subject in each case to the payment of the Carve Out on the terms specified in this Twelfth Supplemental Interim Order, superpriority claims as provided in section 507(b) of the Bankruptcy Code in favor of (i) the Prepetition ABL Agent and the Prepetition ABL Lenders (and their affiliates) and (ii) the Prepetition Term Agent and the Prepetition Term Lenders (and their affiliates), with priority in payment (but subject, in each case, to the payment of the Carve Out) over any and all administrative expenses of the kinds specified or ordered under any provision of the Bankruptcy Code, including sections 105, 326,