**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| VISTEON CORPORATION, et al., ) | Case No. 09-11786 (CSS) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | Hearing Date: TBD. |
| ) | Objection Deadline: TBD |

**MOTION TO APPOINT RETIREE COMMITTEE, TO IMMEDIATELY
RE-INSTATE RETIREMENT BENEFITS AND FOR DETERMINATION
OF ADMINISTRATIVE CLAIM**

Robert Dudon, Michael Jarema, III, Miriam Rosario, William Shillingford, Julio Soto, Dean Turner, Ronald Young and Thomas Zurek, on behalf of themselves and all other similarly situated salaried retirees of Visteon Corporation and its affiliated debtor entities ("Debtors") (the "Salaried Retirees"), pursuant to 11 U.S.C. §1114 ("Section 1114") and consistent with the Opinion issued by the Third Circuit Court of Appeals on July 13, 2010, respectfully request that this Court: (a) authorize and instruct the United States Trustee for the District of Delaware to immediately appoint an Official Retiree Committee; (b) Order immediate reinstatement of all retiree benefits terminated outside of Section 1114 in this proceeding; and (c) to Order the Debtors to cooperate in the determination of the Salaried Retirees' allowed administrative expense claim. In support thereof, the Salaried Retirees state as follows:

**Preliminary Statement and Overview**

1. On December 10, 2009, the Debtors' motion to terminate their retiree benefits pursuant to 11 U.S.C. §363 ("Section 363") was granted. Because the Debtors brought their motion under Section 363, they did not seek formation of a Retiree

Committee to speak on behalf of the Salaried Retirees or otherwise comply with Section 1114. Accordingly, the Salaried Retirees were unrepresented when their benefits were eliminated. Indeed, even now the Debtors maintain that they are under no obligation to follow Section 1114 with respect to the Salaried Retirees.

2. This Court's underlying grant of the 363 Motion and the District Court's affirmation of that decision were reversed by the Third Circuit Court of Appeals on July 13, 2010. *Visteon Corp. v. Visteon Corp.*, 2010 U.S. App. LEXIS 14307 (3d Cir. Del. July 13, 2010). The Third Circuit Opinion is attached as Exhibit 1 and referred to as the "Third Circuit Opinion." The Third Circuit's accompanying judgment order is attached as Exhibit 2 and referred to as the "Third Circuit Judgment."

3. In relevant part, the Third Circuit Judgment states that:

> The district court shall direct the bankruptcy court to order Visteon Corporation to take whatever action is necessary to immediately restore *all terminated or modified benefits to their pre-termination/modification levels, and shall also direct the bankruptcy court not to permit any future termination or modification of the benefits except through compliance with the procedures set forth in 11 U.S.C. § 1114*.

(Ex. 2, p. 2, emphasis supplied).

4. The Third Circuit made no differentiation between union or salaried retiree benefits. Of course, no such differentiation would make sense because the Third Circuit found that the Debtors erred in the first instance by seeking termination under Section 363 rather than under Section 1114. Accordingly, by the Debtors' own choice, the entire retiree benefit termination process was improper.

5. To this end, the Third Circuit held that "Section 1114 is unambiguous and clearly applies to any and all retiree benefits, including the ones at issue here." *Visteon*

2

*Corp. v. Visteon Corp.*, 2010 U.S. App. LEXIS 14307 *23 (3d Cir. Del. July 13, 2010).

The Third Circuit Court further found that:

> Section 1114 could hardly be clearer. It restricts a debtor's ability to modify *any* payments to *any* entity or person under *any* plan, fund, or program in existence when the debtor files for Chapter 11 bankruptcy, and it does so notwithstanding any other provision of the bankruptcy code. There is therefore no ambiguity as to whether § 1114 applies here.
> *Id*. (emphasis added.)

6. Despite the clarity of the Third Circuit's Order, the Debtors take the position that they are under no obligation whatsoever to restore the Salaried Retirees' benefits. The Debtors seem to believe that they could ignore Section 1114 in the first instance and now use their own failure to comply with Section 1114 as a sword against the Salaried Retirees by insinuating a waiver because the Salaried Retirees did not participate in the Section 363 hearings. This not only stands contrary to the Third Circuit Order, it turns Section 1114 on its head.

7. Section 1114 was designed to give retirees a "voice" in a bankruptcy proceeding—in particular non-union retirees who lack a formal labor organization to act of their behalf. As stated by the Third Circuit:

> For the most part, all §1114 guarantees retirees is a voice, and some minimal amount of leverage, in a process that could otherwise be nothing short of devastating to them and to their families and communities. … We therefore reject Visteon's characterization of §1114 as a "hammer." It is much more accurately characterized as a "microphone," intended to elevate the voices of those who would otherwise not be heard above the din of more powerful creditors carving up the pie of the bankruptcy estate.
> *Id*. at *75-76.

8. This Court's charge is straightforward. To comply with the Third Circuit Opinion and Judgment, it is necessary to form a Retiree Committee immediately so that the Salaried Retirees can ensure restoration and protection of the benefits they worked a lifetime to earn. This immediacy is heighted by the catastrophic harm caused by the Debtors' improper Section 363 termination of their retirement benefits. Every day that passes for the Salaried Retirees without healthcare coverage is one of peril. An automobile accident today would mean financial ruin. A diagnosis of cancer or diabetes tomorrow could mean a lifetime of uninsurability.

9. Not to be ignored either is the risk to the Debtors' estates. If any of these catastrophic events—or innumerable variations thereof—occur, then the retirees will seek redress against the Debtors based on (a) the improper termination of benefits and, now, (b) the Debtors refusal to "immediately" reinstate the Salaried Retirees' benefits in contravention of the Third Circuit's ruling. There are also Section 1129 ramifications that would affect confirmation of the Debtors' proffered plan of reorganization.

10. It should not have been this way. Had the Debtors followed Section 1114 there would have been a voice for the Salaried Retirees via a Retiree Committee. If there had been a termination of benefits, it would have been because of a demonstrated need as required by Section 1114.

11. Instead, the Debtors employed a strategy that denied the Salaried Retirees an opportunity to evaluate the Debtors' purported unilateral termination rights or to otherwise advocate for themselves. For example, a debtors' conclusion of a unilateral termination right should be viewed with scrutiny. Often debtors assert these rights based on the most recent benefit plan documents in their possession, whereas examination of

historical benefit plans can upend the debtors' conclusion that it possesses a termination right over some or all of its salaried retirees.

12. Nevertheless, as a result of the Debtors' end-run around Section 1114, the retirees were devastated as they scrambled to find insurance for themselves and their families (if they could). A process, even one that led to the same result, would have afforded a Retiree Committee the opportunity to educate and assist the retirees, not just cut them off. That is why retiree benefits are supposed to be modified within the confines of Section 1114, not Section 363. Indeed, what happened to the Salaried Retirees mirrors the devastation wrought by LTV Steel when it terminated its retiree benefits under Section 363…the event the was the catalyst for enactment of Section 1114 in the first place.

13. This Motion seeks three results, all of which are necessitated by the Third Circuit ruling: (1) the immediate formation of a Retiree Committee to act on behalf of the Salaried Retirees; (2) immediate restoration of retiree benefits for the Salaried Retirees;[1] and (3) determination of an administrative priority claim for the costs caused by the Debtors' termination of the Salaried Retirees' benefits outside of Section 1114. Notably, neither points (2) or (3), nor any negotiations with the Debtors on behalf of the Salaried Retirees as a group can take place without the formation of a Committee to act and speak on behalf of the Salaried Retirees.

14. The relief sought in this motion would not harm the Debtors in any way. Indeed, in the context of the Debtors' desire to eliminate millions of dollars in OPEB

---

[1] The Debtors have apparently told the IUE-CWA (defined herein) that it will take 'three months' to get coverage for that group's retirees. This is simply not tenable. Counsel for the Salaried Retirees has participated in plan formations for much larger groups in only a fraction of that time, without the resources of a multi-billion dollar company. Moreover, COBRA options exist under the Debtors' continuing benefit plans.

5

liabilities for the Salaried Retirees, having the modest protection of a Retiree Committee for a group who gave their working lives to the Debtors (and Ford Motor Company before that) is a miniscule price. Regardless of this underlying equity, however, Congress and now the Third Circuit have mandated that this group be heard, that its benefits be restored, and that Section 1114 be followed.

**Procedural History**

15. On May 28, 2009, Debtors filed petitions for chapter 11 bankruptcy protection. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

16. On June 26, 2009, Debtors filed *Certain Debtors' Motion for Order Authorizing Them to Amend or Terminate Post-Employment Health Care and Life Insurance Benefits for Certain Employees and Retirees, Third Surviving Spouses, Spouses, Domestic Partners and Dependants* (previously defined as the "363 Motion").

17. The 363 Motion was brought under Sections 105(a), 363(b)(1) and 1108 of the Bankruptcy Code, despite the fact that it sought termination of retiree benefits. The 363 Motion was granted on December 10, 2010. Because the motion was brought pursuant to Section 363, there was no Retiree Committee formed and no one appeared for the Salaried Retirees at the hearing.

18. The International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, Communication Workers of America, AFL-CIO, CLC ("IUE-CWA"), appealed the Court's grant of the 363 Motion. The Court's decision was subsequently affirmed by the Delaware District Court.

19. The District Court decision—and this Court's underlying grant of the 363 Motion—were reversed by the Third Circuit Court of Appeals on July 13, 2010. *Visteon Corp. v. Visteon Corp.*, 2010 U.S. App. LEXIS 14307 (3d Cir. Del. July 13, 2010).

20. As of the date of this filing the Debtors have made no efforts to restore the Salaried Retirees' benefits and have indicated that they have no intention of doing so. As set out in a separate filing by the IUE-CWA [Docket No. 3713], the Debtors have indicated that they will comply with the Third Circuit's Order to restore benefits for that group of retirees (and that group only). However, as argued in the IUE-CWA filing, the Debtors have failed to comply with the Third Circuit's instruction to "immediately" restore benefits.

21. The Debtors' refusal to reinstate the Salaried Retirees' benefits drives the filing of this motion. The Debtors' stated inability to immediately restore the IUE-CWA retirement benefits drives home the immediacy of the relief sought. Simply put, every day is critical to the Salaried Retirees.

## Argument

**A.  A Retiree Committee Must Be Appointed As Soon As Practicable**

22. The rights of retirees in chapter 11 bankruptcies have been governed by Section 1114 of the Bankruptcy Code since its enactment as part of the Retiree Benefits Bankruptcy Protection Act of 1988. *See* 11 U.S.C. § 1114 *et al*. Section 1114 provides a framework to ensure that a debtor does not modify or eliminate retiree benefits without adhering to certain rules requiring good faith negotiations, providing relevant information to the retirees and establishing a verifiable basis for the relief it seeks. *Id*.

23. To achieve these goals, Section 1114 mandates creation of a retiree committee when a debtor seeks to modify or not pay retiree benefits. The Court may also direct appointment of a retiree committee on its own accord. The retiree committee is then authorized to act on behalf of all similarly situated retirees as a class. *See* 11 U.S.C. §1114(d).

24. Again, the Third Circuit held that "Section 1114 is unambiguous and clearly applies to any and *all retiree benefits*, including the ones at issue here." *Visteon Corp. v. Visteon Corp.*, 2010 U.S. App. LEXIS 14307 *23(3d Cir. Del. July 13, 2010) (emphasis added.). Accordingly, once Debtors filed their bankruptcy petitions, Section 1114(e) took effect and the trustee must "timely pay and . . . not modify any retiree benefits" except through the Section 1114 procedure. 11 U.S.C § 1114; *see also Visteon*, 2010 U.S. App. LEXIS 14307, *et al.*

25. The Salaried Retirees were denied their statutorily mandated "voice" earlier in this case. They were never afforded a mechanism to be represented by an official committee, they were not given access to legal counsel and/or other professionals, they were not afforded an opportunity to engage in discovery to review historical benefit documents, they were not provided with any "proposal" by the Debtors prior to termination of their benefits. Likewise, the Debtors were not required to and did not negotiate in "good faith" with the Salaried Retirees or otherwise demonstrate that modifications to the Salaried Retirees' benefits were "necessary to permit the reorganization of the debtor." *See generally* 11 U.S.C. § 1114.

26. The Debtors cannot now profit again from their decision not to comply with Section 1114 by claiming a waiver—a waiver by a group that was denied the

opportunity to defend itself the by Debtors and their strategic decision to 'roll the dice' under Section 363.

27. Given the Debtors intention to terminate benefits, as well as to allow effective communication with the Salaried Retirees (including about how to re-instate benefits), a Retiree Committee must be immediately formed. Additionally, the crush of matters attendant to the Debtors' desire to exit bankruptcy necessarily means that there are pleadings that may need to be filed to preserve the Salaried Retirees' rights and interests, such as the pending plan objection deadline and attendant voting and claim issues. See, for example, the IUE-CWA pleading filed on July 30, 2010 seeking a voting position [Docket Number 3774]. The Salaried Retirees would likely have the same claim too, but only if there is an entity that can assert and vote the claim on behalf of the group.

28. Because of the extreme urgency, both for the Salaried Retirees and for the Debtors themselves given their desire to emerge from bankruptcy, the Salaried Retirees submit that a Retiree Committee must be formed without delay. Accordingly, after being advised of the obligations and duties of the members of a Retiree Committee, the individually named Movants have all volunteered to serve on behalf of the Salaried Retirees. The proposed Committee Members were selected to reflect geographic diversity and the perspective of differing positions with Debtor entities before their retirement. This group is also diverse with respect to their ages, as some are Medicare eligible and some are not yet eligible for Medicare. Finally, these individuals held leadership positions during their careers at Ford/Visteon and are accustomed to serving on committees.

29. Further information regarding the proposed Committee Members, their positions with the Debtors, their dates of employment and retirement, contact information, etc. will be provided under separate cover to the United States Trustee for the District of Delaware prior to the hearing on this motion. It is respectfully requested that the Court order that the United Stated Trustee appoint these individuals to the Retiree Committee immediately unless the United States Trustee finds there to be good cause not to appoint them. For the Court's reference, the proposed Committee Members and their former positions at Visteon are Miriam Rosario (Human Resources Manager), Thomas Zurek (Purchasing and Information Technology), Michael Jarema, III (Manufacturing Management), William Shillingford (Plant Manager), and Robert Dudon (Engineer/Quality Supervisor).

**B.    Salaried Retiree Benefits Must Be Reinstituted**

30. The Third Circuit Judgment required, in pertinent part that, "Visteon Corporation to take whatever action is necessary to *immediately* restore *all* terminated or modified benefits to their pre-termination/modification levels…" (Ex. 2, p. 2) (emphasis supplied).

31. The Debtors have refused to reinstate the Salaried Retirees' benefits, contending that the Third Circuit decision applies only to the IUE-CWA. There is no good faith basis for this position.

32. The Third Circuit found that the Debtors could not modify retiree benefits outside of Section 1114. It would defy all logic to read that Opinion to say that the Debtors only have to comply with Section 1114 when there is a group that is able to finance an appeal. This is not a game of catch me if you can. This fallacy is even more

10

acute here when there was no Retiree Committee to speak for the Salaried Retirees because the Debtors chose to circumvent Section 1114 in the first instance.

33. As the Debtors themselves have intimated, restoring benefits is a process (although it is a mystery as to why the Salaried Retirees could not be put on COBRA since those benefits would be lifetime given the attempted termination in a bankruptcy). It is grossly unfair, and certainly unworkable to hope that the Debtors—who have shown no inclination to "immediately" restore benefits even for the IUE-CWA—will comply with the Third Circuit Order unless the Salaried Retirees have a Retiree Committee to make sure this happens.

34. Moreover, there will undoubtedly be issues relating to Salaried Retirees and their dependents caused by the Debtors termination of their benefits, but there is no legitimate reason that the Salaried Retirees' benefits cannot be restored in very short order. Beyond that, there is no reason that the Debtors and the Retiree Committee cannot work together to ensure that the Salaried Retirees and their families are not abruptly cut-off from their benefits again. There are myriad solutions, none easy, but nothing can be accomplished unless the Debtors have an entity to work with and unless the Salaried Retirees have a voice to speak for them.

**C.     The Salaried Retirees Are Entitled To An Administrative Expense Claim**

35. Section 1114 "provides a status quo safeguard" that requires a debtor to pay its retiree benefit obligations unless they are modified in accordance with Section §1114(e)(1)(A) or (B). *See Official Comm. of Unsecured Creditors of Tower Auto. v. Debtors & Debtors in Possession* (*In re Tower Auto. Inc.*), 241 F.R.D. 162, 166 (S.D.N.Y. 2006); *In re Certified Air Techs., Inc.*, 300 B.R. 355, 370 (Bankr. C.D. Cal.

11

2003). Specifically, Section 1114 provides that "notwithstanding any other provision of this title, the debtor in possession…., shall timely pay and shall not modify any retiree benefits…" unless it meets all of the conditions of Section 1114(e). *See* 11 U.S.C. §1114(e)(1).

36. Because the Debtors did not comply with Section 1114(e), they were not relieved of their obligations to pay retiree benefits. As such, "payment for retiree benefits required to be made before a plan confirmed under section 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title." 11 U.S.C. 1114(e)(2).[2]

37. Accordingly the Salaried Retirees are entitled to allowed administrative expense claims *before* any plan of confirmation can granted under Section 1129 of the Bankruptcy Code.

38. The Salaried Retirees cannot determine the amount of the allowed administrative expense claim. Once more, a Retiree Committee to act on behalf of the Salaried Retirees to both determine and to allocate the claim amounts. Nevertheless, the Salaried Retirees ask that the Court instruct the Debtors to provide any and all information necessary to determine this claim amount as rapidly as possible.

---

[2] Likewise, if there are retiree benefit reductions arising out of an agreement with a Retiree Committee or by Court order under Section 1114, the reduction gives rise to an unsecured claim on behalf of the affected retirees. As stated in the legislative history of the Retiree Benefits Bankruptcy Protection Act of 1988, "retirees will . . . have an unsecured claim payable in accordance with the provisions of the Bankruptcy Code and the reorganization plan, for those retiree benefits lost as a result of section 1114 modification." RBBPA, S. Rep. No. 100-119, at 689 (1988) ("RBBPA Senate Report"); *see also In re Tower Auto. Inc.*, 241 F.R.D. 162, 167 (S.D.N.Y. 2006); *In re Ionosphere Clubs*, 134 B.R. at 527; *In re GF Corp.*, 120 B.R. 421, 423 n.1 (Bankr. N.D. Ohio 1999).

**Conclusion**

The relief sought in this motion is directed by the opinion of the Third Circuit Court of Appeals, as well as the underlying tenets of Section 1114 itself. The Salaried Retirees must have a Committee to provide them with a voice in these proceedings. That Committee will help them recover what was lost already, and will assist both sides in moving forward toward resolution. Accordingly, for the reasons set forth herein, the Salaried Retirees respectfully request that the Court enter the Order attached hereto and grant the immediate formation of a Retiree Committee, Order the Debtors to immediately restore retiree benefits to the Salaried Retirees, Order the Debtors to cooperate in the determination of an appropriate administrative claim for the Salaried Retirees, and for any other relief that this Court deems appropriate.

Date: July 30, 2010

/s/ Richard A. Barkasy
Richard A. Barkasy (#4683)
SCHNADER HARRISON SEGAL & LEWIS LLP
824 N. Market Street, Suite 800
Wilmington, DE 19801
(302) 888-4554

- and -

Trent P. Cornell (*pro hac vice* pending)
Jon D. Cohen (*pro hac vice* pending)
STAHL COWEN CROWLEY ADDIS LLC
55 West Monroe Street, Suite 1200
Chicago, Illinois 60603
Phone: (312) 641-0060
Facsimile: (312) 641-6959
tcornell@stahlcowen.com
jcohen@stahlcowen.com