# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| VISTEON CORPORATION, et al.,[1] | ) ) ) | Case No. 09-11786 (CSS) |
|  | ) ) | Jointly Administered |
| Debtors. | ) ) |  |

## VISTEON CORPORATION'S STATUS REPORT ON
## THE FOURTH AMENDED PLAN OF REORGANIZATION

Visteon and its affiliated debtors are ready to commence a largely consensual confirmation hearing on August 31, 2010,[2] with each class of claims and interests having voted by heavy majority to accept their Plan.[3] In addition to the voting returns, Visteon's unsecured note holders have delivered checks for more than $1.06 billion, thus exceeding the $950 million

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Visteon Corporation (9512); ARS, Inc. (3590); Fairlane Holdings, Inc. (8091); GCM/Visteon Automotive Leasing Systems, LLC (4060); GCM/Visteon Automotive Systems, LLC (7103); Infinitive Speech Systems Corp. (7099); MIG-Visteon Automotive Systems, LLC (5828); SunGlas, LLC (0711); The Visteon Fund (6029); Tyler Road Investments, LLC (9284); VC Aviation Services, LLC (2712); VC Regional Assembly & Manufacturing, LLC (3058); Visteon AC Holdings Corp. (9371); Visteon Asia Holdings, Inc. (0050); Visteon Automotive Holdings, LLC (8898); Visteon Caribbean, Inc. (7397); Visteon Climate Control Systems Limited (1946); Visteon Domestic Holdings, LLC (5664); Visteon Electronics Corporation (9060); Visteon European Holdings Corporation (5152); Visteon Financial Corporation (9834); Visteon Global Technologies, Inc. (9322); Visteon Global Treasury, Inc. (5591); Visteon Holdings, LLC (8897); Visteon International Business Development, Inc. (1875); Visteon International Holdings, Inc. (4928); Visteon LA Holdings Corp. (9369); Visteon Remanufacturing Incorporated (3237); Visteon Systems, LLC (1903); Visteon Technologies, LLC (5291). The location of the Debtors' corporate headquarters and the service address for all the Debtors is: One Village Center Drive, Van Buren Township, Michigan 48111.

[2] On June 25, 2010, after approving Visteon's fourth amended disclosure statement, the Court reserved two plan confirmation hearing dates—August 31, 2010 at 9:30 a.m. ET in the event that each class of unsecured claims and interests voted to accept the *Fourth Amended Joint Plan of Reorganization of Visteon Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 3519] (the "Plan") and September 28, 2010 at 9:30 a.m. E.T. in the event that each class of unsecured claims and interests did not vote to accept the Plan.

[3] Visteon intends to issue an official voting report on a debtor-by-debtor basis along with supporting declarations in the upcoming days after Kurtzman Carson Consultants LLC and Financial Balloting Group LLC, the Debtors' balloting agents, have fully audited and quality checked the ballots. While the voting results are not final, the Debtors believe that any changes in the results during the final stages of the quality check process will not result in material changes.

equity rights offering upon which toggle "A" of Visteon's Plan is premised. The note holders, who are party to the Court approved equity commitment agreement (the "ECA"),[4] are also in position to timely deliver commitments for an additional $300 million of junior capital pursuant to the direct purchase commitment under ECA. The Plan and the junior capital infusion will allow Visteon to significantly deleverage its prepetition capital structure and right size its going forward balance sheet, poising it to attract and retain customers as a reorganized entity.

Moreover, two of the most active protagonists in these proceedings—the term lenders and the ad hoc equity committee (the "AHEC")—each of which was preparing for a pitched confirmation battle on the complex issues of reinstatement and valuation, respectively, have now laid down their arms and are affirmatively supporting the Plan. In particular, the steering committee and administrative agent representing the term lenders agreed, among other things to: actively support the Plan; recommend to other term lenders that they support the Plan; and withdraw their pending appeal of the ECA[5] and confirmation discovery based on the Debtors' acknowledgment that they would not pursue reinstatement of the term loan and the Debtors' agreement to pay certain fees, expenses, and post-petition interest to the term lenders under the Plan. Unsurprisingly, all but one term lender has voted in favor of the Plan. For the AHEC's part, they agreed, among other things to: support the Plan; withdraw their pending appeal of the ECA; and suspend all confirmation discovery upon agreement of the investors backstopping the rights offering to allow the AHEC's members to participate in a portion of the $300 million

---

[4] See *Order Granting the Motion to File Under Seal Exhibit B, Exhibit C, and Exhibit D to the Debtors' Motion for an Order Authorizing the Debtors to Enter Into: (A) a Plan Support Agreement; (B) an Equity Commitment Agreement and to Pay Certain Fees in Connection Therewith; and (C) a Cash Recovery Backstop Agreement.*

[5] See *Notice of Appeal of Ad Hoc Equity Committee Pursuant to Bankruptcy Rule 8001(A) from Order Dated June 17, 2010 Authorizing Debtors to Enter into Equity Commitment Agreement, Plan Support Agreement and Related Agreements* [Docket No. 3445].

direct purchase commitment under the ECA and the payment of up to $4.25 million for actual, documented professional fees and out-of-pocket expenses of the AHEC and their advisors in the AHEC members' capacity as additional investors under the ECA.[6]

As the confirmation hearing approaches, Visteon is close to finalizing an exit financing facility—another key feature to Plan consummation.[7] After circulating a proposed exit financing structure and term sheet to potential lenders, Visteon received exit facility proposals from various lender groups earlier this month. Visteon is presently negotiating with those lender groups to select the most attractive proposal. Visteon expects that it will be in a position to finalize a commitment letter for the exit financing facility within the next several days, and will soon file a motion to seek Court approval of its entry into a final commitment letter and the payment of certain related fees and expenses.

Given these developments, Visteon believes the confirmation hearing should be relatively truncated—without the need for this Court to engage in extensive evidentiary findings regarding issues such as valuation. As is relatively typical in a case of this size, a number of parties filed plan confirmation objections, some of which are not resolved at this point.[8] Visteon believes that many of the objections, particularly those that focus on individual creditor issues pertaining to contract assumption issues or treatment of priority tax claims, involve language issues likely to be resolved prior to the confirmation hearing. However, certain objections raise valuation issues,

---

[6] On August 9, 2010, the Debtors filed a notice of amendment to the ECA to reflect the AHEC's right to participate in the direct commitment and payment of fees thereunder. See *Notice of Filing of Amendment of Equity Commitment Agreement* [Docket No. 3855]. While there are certain limited circumstances in which the AHEC could withdraw its support of the plan, the Debtors believe such scenarios are remote.

[7] As set forth in Article III.A of the Plan, the Rights Offering Sub Plan is premised, among other things, on obtaining an exit financing facility of no less than $450 million. Visteon's projections also contemplate procurement of an undrawn working capital facility upon emergence.

[8] Visteon received a total of eighteen objections to plan confirmation.

including one filed by Fulcrum Credit Partners, LLP ("Fulcrum") (the only remaining member of the now disbanded ad hoc trade committee) that specifically argues that the Bankruptcy Code's cram-down rules—particularly the absolute priority rule—apply irrespective of the Plan voting results.[9] Moreover, Fulcrum has also joined in the IUE-CWA's attempt to swing the general unsecured class vote, by securing the temporary allowance of a $100 million claim.[10] With a telephonic hearing scheduled for at 3:00 p.m. regarding the upcoming plan confirmation hearing, Visteon files this status report to confirm the August 31, 2010 date for commencement of the confirmation hearing, lay out its position on some confirmation issues, and request vital guidance from this Court regarding the appropriate parameters for a confirmation hearing for which all classes of claims and interests have accepted the Plan.

## II. Plan Voting Results

1. The deadline for creditors and shareholders to submit ballots to accept or reject the Plan was July 30, 2010. In accordance with the Court approved solicitation procedures (the "Solicitation Procedures"), this deadline was extended for the AHEC to allow for further negotiations to pave the way for a plan with the full consent of each voting class.[11] As the chart

---

[9] On July 28, 2010, the former ad hoc trade committee filed an objection to the Plan [Docket No. 3765]. On August 10, 2010, Fulcrum filed an amendment to such objection indicating that Fulcrum is now the sole party pursuing the objection. See *Amended Objection to the Confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization* [Docket No. 3866].

[10] See *Motion of IUE-CWA for Temporary Allowance of Claim or Interest for Voting Purposes* [Docket No. 3773]; *Fulcrum Credit Partners, LLC's Joinder in the Motion of IUE-CWA for Temporary Allowance of Claim for Voting Purposes* [Docket No. 3867].

[11] The solicitation procedures provide that "[t]he Debtors may extend the Voting Deadline without further order of the Court to a date no later than three (3) business days before the Confirmation Hearing." See Exhibit 5 to the *Order (A) Approving the Adequacy of the Debtors' Fourth Amended Disclosure Statement; (B) Approving Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Fourth Amended Plan of Reorganization; (C) Approving the Form of Various Ballots and Notices in Connection Therewith; and (D) Scheduling Certain Dates with Respect Thereto* [Docket No. 3491].

below illustrates, the Plan has been overwhelmingly carried by each class of claims and interests entitled to vote.[12]

| Consolidated Voting Results | | | | | |
|---|---|---|---|---|---|
| Class | Claim or Interest | Number of Claims Voting | Accepting Percentage in Number | Amount of Claims Voting | Accepting Percentage in Amount |
| E | Term Loan Facility Claims | 145 | 99.31% | $1,450,237,379.94 | 98.62% |
| F | 7.0% and 8.25% Senior Notes Claims | 290 | 95.52% | $574,802,726.00 | 98.31% |
| G | 12.25% Senior Notes Claims | 44 | 100.0% | $168,784,000.00 | 100.% |
| H | General Unsecured Claims | 634 | 84.54% | $389,804,103.72 | 92.17% |
| J | Interests in Visteon Corporation | n/a | n/a | 60,585,110.3195 (shares) | 76.16% |

| Visteon Corporation Voting Results | | | | | |
|---|---|---|---|---|---|
| Class | Claim or Interest | Number of Claims Voting | Accepting Percentage in Number | Amount of Claims Voting | Accepting Percentage in Amount |
| E | Term Loan Facility Claims | 145 | 99.31% | $1,450,237,379.94 | 98.62% |
| F | 7.0% and 8.25% Senior Notes Claims | 290 | 95.52% | $574,802,726.00 | 98.31% |
| G | 12.25% Senior Notes Claims | 44 | 100.0% | $168,784,000.00 | 100.% |
| H | General Unsecured Claims | 468 | 85.68% | $311,986,759.16 | 90.84% |
| J | Interests in Visteon Corporation | n/a | n/a | 60,585,110.3195 (shares) | 76.16% |

2. As this Court is aware, on the July 30th voting deadline, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC (the "IUE-CWA") filed a motion for temporary allowance of a $100.0 million claim against two Debtors for voting purposes.[13] As

---

[12] As noted above, while the voting results are not final, the Debtors believe that any changes in the results during the final stages of the quality check process will not result in material changes.

[13] See *Motion of IUE-CWA for Temporary Allowance of Claim or Interest for Voting Purposes* [Docket No. 3773].

the Debtors have laid out in an objection filed with the Court, the Debtors believe that the IUE-CWA cannot establish that it has a general unsecured claim entitled to vote on the Plan.[14]

3. In addition, after the Debtors publicly announced in a press release that the Plan was accepted by all classes of claims and interests, Fulcrum—a claims buyer holding approximately $9.8 million in claims or approximately 3.1% of Class H claims that voted on the Plan—joined the IUE-CWA's motion.[15] In its joinder, Fulcrum baldly alleges the Debtors have engaged in selective vote counting. Fulcrum is wrong. In soliciting and counting votes on the Plan, the Debtors have strictly complied with the provisions of the Solicitation Procedures—to which Fulcrum did not object—without regard to whether such compliance would lead to more favorable voting results.[16] Indeed, at Fulcrum's request, the Debtors made available to Fulcrum the full balloting report for Class H claims, even though not finalized, and PDF copies of each Class H ballot. The Debtors will, of course, defend the integrity of the balloting report and the balloting process at the confirmation hearing if challenged.

## IV. Plan Objections

4. While the Plan is fully consensual on a class basis, the Debtors received, as is typical in any large chapter 11 case, a number of individual plan confirmation objections—eighteen to be exact. The Debtors believe that the vast majority of these objections will not

---

[14] See *Debtors' Objection to the Motion of IUE-CWA for Temporary Allowance of Claim or Interest for Voting Purposes* [Docket No. 3876].

[15] See *Fulcrum Credit Partners, LLC's Joinder in the Motion of IUE-CWA for Temporary Allowance of Claim for Voting Purposes* [Docket No. 3867].

[16] In its joinder, Fulcrum focuses on an allegedly unliquidated COBRA litigation claim, filed by a group of class action claimants, to suggest some voting irregularity. Consistent with the Solicitation Procedures, the COBRA claimants were sent a ballot in the amount of the liquidated claim asserted, $73,127,915.64, as were all claimants that asserted some liquidated claim amount. See Bankruptcy Rule 3001(f) (a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.")

require any evidence to the extent they remain contested at the time of the confirmation hearing and are hopeful that they can be resolved consensually through the addition of language to the plan or confirmation order.[17]

5. Of these objections, two (those of Fulcrum and Andrew Shirley) contest the Debtors' valuation and, one (that of Fulcrum), insists that the Debtors must still meet the Bankruptcy Code's cram-down requirements notwithstanding each class' acceptance of the Plan. In particular, Fulcrum asserts that unsecured note holders are receiving more than a 100% recovery under the Plan and that the absolute priority rule prevents this result, regardless of voting results. That is not the law. In the Adelphia case, a group of dissident note holders in an accepting impaired class made this exact argument—that creditors being paid in stock were receiving more than a 100% recovery—and the court found that the provisions of section 1129(b), including the fair and equitable standard (a.k.a. absolute priority rule), did not apply. See In re Adelphia Commc'ns Corp., 368 B.R. 140, 258 (S.D.N.Y. 2007) (rejecting argument that section 1129(b) applies to a plan consented to by each class to prohibit creditors from receiving greater than 100% recovery).[18] Fulcrum has not cited any authority to challenge the plain language of section 1129(b)(2), which provides that such section's requirements apply only

---

[17] Attached hereto as **Exhibit A** is chart summarizing each of the objections, five of which have been resolved as of the filing of this status report. The Debtors will file an updated chart, which will include responses to each of the objections, with their brief in support of confirmation.

[18] See also Kane v. Johns-Manville Corp. (In re Johns Manville Corp.), 843 F.2d 636, 650 (2d Cir. 1988) ("It is clear from [the] language [of section 1129(b)(2)(B)] that a plan need only be fair and equitable to classes that voted against the plan . . . . Since class 4 accepted the Plan, the requirements of section 1129(b) need not be fulfilled with respect to that class."); In re United Marine, Inc., 197 B.R. 942, 948 (Bankr. S.D. Fla. 1996) ("Under the Bankruptcy Code, the absolute priority rule applies only in the context of cramdown of an impaired *rejecting* class under [section] 1129(b).") (emphasis in original); In re Winters, 99 B.R. 658, 663 (Bankr. W.D. Pa. 1989) ("Under the confirmation standards of § 1129(a), if the requisite majority . . . of creditors in each class have accepted the plan, then the plan need not comply with the absolute priority rule. The absolute priority rule is now applicable only when the proponent of the plan seeks to 'cram-down' the plan under the alternative confirmation standard contained in § 1129(b) on a *class* that is impaired and has rejected the plan.") (emphasis in original).

to "each class of claims or interest that is impaired under, <u>and has not accepted</u>, the plan." See 11 U.S.C. § 1129(b)(2) (emphasis added). In fact, each case which Fulcrum cites in support of its argument is a cram-down case where section 1129(b)(2) was actually triggered by an impaired class' rejection of the plan. Here, that is not the case.

6. Thus, the Debtors do not anticipate presenting a full valuation argument at the confirmation hearing, notwithstanding Fulcrum's insistence otherwise. As the Court will recall, August 31, 2010 was reserved as a standby confirmation hearing date in the event all classes approved the Plan. That is precisely what has occurred. Visteon's pre-confirmation preparation will require a much greater expenditure of effort and expense by the Debtors' management and professionals, as well as the professionals of a number of other parties, should there be uncertainty as to the necessity of a full blown valuation in this non-cram-down scenario. Thus, the Debtors respectfully submit that clarity is appropriate—indeed required—as to the scope of the triable issues at the confirmation hearing.[19]

7. Mr. Shirley, an individual shareholder, also argues that the Plan fails the best interests test under section 1129(a)(7) of the Bankruptcy Code. The Debtors will be prepared to present an evidentiary record on this issue to the extent Mr. Shirley insists on pressing the issue at the confirmation hearing. The Debtors are certain that a contest on best interests can be fully tried within the time reserved by this Court at the end of August.

8. The objections filed to the Plan based on treatment of OPEB and retiree benefits do not involve evidentiary issues at all, but rather, relatively simple questions as to the Debtors' fulfillment of OPEB obligations in light of the Third Circuit's recent ruling that a debtor cannot

---

[19] Fulcrum also contends that separate classification and treatment of Class F claims (7.00% Senior Notes Claims and 8.25% Senior Notes Claims) and Class H claims (General Unsecured Claims) violates section 1122(a) of the Bankruptcy Code. The Debtors will be prepared at the confirmation hearing to establish the sound business justification underlying the separate classification and treatment of Class F and Class H claims.

terminate OPEB—even if the benefits are unvested—without engaging in a section 1114 process. As the Debtors have laid out in recent pleadings filed with the Court, they are in the process of ensuring compliance with the Third Circuit's ruling by having initiated the intricate process of reinstating OPEB for the IUE-CWA retirees that appealed to the Third Circuit and will honor any administrative claims allowed by this Court for the post-petition period during which OPEB was terminated.

9. The Debtors do not believe that any of the other objections filed will require an evidentiary hearing or present an obstacle to confirmation and plan to proceed at the confirmation hearing as set forth in this status report.

Dated: August 13, 2010

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: ljones@pszjlaw.com
joneill@pszjlaw.com
tcairns@pszjlaw.com

- and -

KIRKLAND & ELLIS LLP
James H. M. Sprayregen, P.C. (IL 6190206)
Marc Kieselstein, P.C. (IL 6199255)
James J. Mazza, Jr. (IL 6275474)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
E-mail: james.sprayregen@kirkland.com
marc.kieselstein@kirkland.com
james.mazza@kirkland.com

*Attorneys for the Debtors and Debtors in Possession*