# THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| VISTEON CORPORATION, et al.,[1] | Case No. 09- 11786(CSS) |
|  | Jointly Administered |
| Debtors. | **Re: Docket Nos. 18, 93, 380, 599, 689, 792, 952, 1110, 1161, 1242, 1445, 1710, 2368, 2567, 2800, 3098, 3421, 3660** |

## SEVENTEENTH SUPPLEMENTAL INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL UNDER 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION UNDER 11 U.S.C. §§ 361, 362 AND 363 AND (III) SCHEDULING A FINAL HEARING UNDER BANKRUPTCY RULE 4001(B)

Upon the motion ("**Motion**"), dated May 28, 2009, of the above-captioned debtors and debtors in possession (collectively, "**Visteon**" or the "**Debtors**") in these chapter 11 cases ("**Cases**") under sections 361, 362, 363, and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 4001-2 and 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Visteon Corporation (9512); ARS, Inc. (3590); Fairlane Holdings, Inc. (8091); GCM/Visteon Automotive Leasing Systems, LLC (4060); GCM/Visteon Automotive Systems, LLC (7103); Halla Climate Systems Alabama Corp. (9188); Infinitive Speech Systems Corp. (7099); MIG-Visteon Automotive Systems, LLC (5828); SunGlas, LLC (0711); The Visteon Fund (6029); Tyler Road Investments, LLC (9284); VC Aviation Services, LLC (2712); VC Regional Assembly & Manufacturing, LLC (3058); Visteon AC Holdings Corp. (9371); Visteon Asia Holdings, Inc. (0050); Visteon Automotive Holdings, LLC (8898); Visteon Caribbean, Inc. (7397); Visteon Climate Control Systems Limited (1946); Visteon Domestic Holdings, LLC (5664); Visteon Electronics Corporation (9060); Visteon European Holdings Corporation (5152); Visteon Financial Corporation (9834); Visteon Global Technologies, Inc. (9322); Visteon Global Treasury, Inc. (5591); Visteon Holdings, LLC (8897); Visteon International Business Development, Inc. (1875); Visteon International Holdings, Inc. (4928); Visteon LA Holdings Corp. (9369); Visteon Remanufacturing Incorporated (3237); Visteon Systems, LLC (1903); Visteon Technologies, LLC (5291). The location of the Debtors' corporate headquarters and the service address for all the Debtors is: One Village Center Drive, Van Buren Township, Michigan 48111.

\15404525.3

Bankruptcy Court for the District of Delaware ("**Local Bankruptcy Rules**"), having sought, among other things:

> (i)     authorization for the Debtors to use the Cash Collateral (defined below) and any other Prepetition ABL Collateral (defined below) in which the Prepetition ABL Lenders (defined below) have an interest;

> (ii)    the granting of adequate protection to the Prepetition ABL Lenders for any diminution in the value of the Prepetition ABL Lenders' interests in the Prepetition ABL Collateral, whether from the use of the Cash Collateral or the use, sale, lease, depreciation or other diminution in value of the Prepetition ABL Collateral, or as a result of the imposition of the automatic stay under section 362(a) of the Bankruptcy Code;

> (iii)   approval of certain stipulations by the Debtors concerning the Prepetition ABL Credit Agreement (defined below) and the claims, liens and security interests arising from it;

> (iv)    subject only to and effective upon entry of the Final Order, the limitation of the Debtors' right to surcharge collateral under section 506(c) of the Bankruptcy Code;

> (v)     under Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-2, an interim hearing (the "**Interim Hearing**") on the Motion for the proposed interim order annexed to the Motion (the "**Interim Order**") authorizing the Debtors to use the Cash Collateral and granting the requested protection; and

2

(vi)　　a final hearing (the "**Final Hearing**") to be held within 21 days after entry of the Interim Order to consider entry of a final order (the "**Final Order**") authorizing (i) the Debtors' use of the Cash Collateral and (ii) the granting on a final basis of the requested adequate protection;

The Debtors having served notice pursuant to sections 102(1), 361, 362, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (c) and Local Bankruptcy Rule 2002-1(b) and 4001-2, of the Motion, the relief requested therein on an interim basis and the Interim Hearing on, among others, the Prepetition ABL Agent (defined below), the Prepetition ABL Lenders (defined below), Wilmington Trust FSB, as successor Administrative Agent (the "**Successor Prepetition Term Agent**") for the several lenders (the "**Prepetition Term Lenders**"; and together with the Successor Prepetition Term Agent, the "**Prepetition Term Secured Parties**") under that certain Amended and Restated Credit Agreement dated as of April 10, 2007 as amended, supplemented or modified (collectively, the "**Prepetition Term Credit Agreement**") in the original principal amount of $1,500,000,000 among Visteon Corporation, as borrower, the Prepetition Term Lenders and JPMorgan Chase Bank, N.A., as original administrative agent for the Prepetition Term Lenders (the "**Original Prepetition Term Agent**"; and together with the Successor Prepetition Term Agent, the "**Prepetition Term Agent**"), the Debtors' thirty largest unsecured creditors as set forth in the list filed by the Debtors pursuant to Bankruptcy Rule 1007(d) (the "**Thirty Largest Creditors List**"), the Indenture Trustee under that certain Amended and Restated Indenture dated May 10, 2004 between the Debtors and JPMorgan Chase Bank, N.A., as Indenture Trustee, dated May 10, 2004 (the "**Indenture Trustee**"), all known holders of liens on the Debtors' assets, and the Office of the United States Trustee for the District of Delaware;

\15404525.3

The Interim Hearing having been held by this Court on May 29, 2009, and this Court having entered an interim order, dated May 29, 2009 (the **"Interim Order"**), that, among other things, (i) authorized the Debtors' use of cash collateral, (ii) granted the adequate protection described in the Interim Order and (iii) scheduled the Final Hearing on June 19, 2009, to consider entry of the Final Order, as set forth in the Interim Order and the Motion filed with this Court;

The Debtors having timely served, within one (1) Court day after May 29, 2009, by overnight mail (i) a notice of the Final Hearing and the briefing schedule thereon as set forth below (the **"Final Hearing Notice"**), and (ii) copies of the Interim Order on: (a) the United States Trustee; (b) counsel for the Prepetition ABL Agent; (c) counsel for Prepetition Term Agent; (d) counsel for the Indenture Trustee; (e) the Thirty Largest Creditors List; (f) all parties in interest on whom service is required by the Debtors' order limiting notice entered in these Cases and their counsel; (g) all known holders of liens on the Debtors' assets; and (h) the other parties on whom the Court directed service on the record;

The Prepetition Term Agent having filed on May 29, 2009 its "Motion of Prepetition Term Agent for Adequate Protection for the Debtors' Use of the Prepetition Term Loan Collateral" (the **"Term Adequate Protection Motion"**), and the Official Committee of Unsecured Creditors (the **"Committee"**) having filed its "Objection of the Official Committee of Unsecured Creditors' to Debtors' Motion For Entry of a Final Order (A) Authorizing use of Cash Collateral and (B) Granting Adequate Protection to the Pre-Petition Secured Lender" (the **"Committee Objection"**);

\15404525.3

A hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a second interim cash collateral hearing on June 19, 2009 (the "**Second Interim Hearing**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a third interim cash collateral hearing on July 1, 2009 (the "**Third Interim Hearing**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a fourth interim cash collateral hearing on July 16, 2009 (the "**Fourth Interim Hearing**");

The Court having considered the Term Adequate Protection Motion contemporaneously with Fourth Interim Hearing and having entered and agreed form of Stipulation, Agreement, And Final Order On Consent (I) Authorizing Use Of Prepetition Term Loan Priority Collateral And Term Cash Collateral Under 11 U.S.C. § 361; And (II) Granting Adequate Protection Under 11 U.S.C. §§ 361, 362, and 363, as amended, (the "**Term Cash Collateral Order**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a fifth interim cash collateral hearing on July 28, 2009 (the "**Fifth Interim Hearing**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a sixth interim cash collateral hearing on August 13, 2009 (the "**Sixth Interim Hearing**");

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a seventh interim cash collateral hearing on September 9, 2009 (the "**Seventh Interim Hearing**");

\15404525.3

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as an eighth interim cash collateral hearing on October 9, 2009 (the **"Eighth Interim Hearing"**), and the Court having entered its Seventh Supplemental Interim Cash Collateral Order;

The Eighth Interim Hearing having been adjourned for the sole purpose of affording the Committee, the Debtors and Prepetition ABL Lenders to negotiate an agreement concerning the procedures governing the Committee's investigation of claims against the Prepetition ABL Lenders and their affiliates, and a holding date of October 21, 2009 for a continued Eighth Interim Hearing having been announced on the record of the Eighth Interim Hearing (the **"Continued Eighth Interim Hearing"**) if such negotiations were not successful;

The negotiations between the Committee, the Debtors and Prepetition ABL Lenders having continued past the October 21, 2009 holding date, and the Debtors, the Committee and Prepetition ABL Lenders having entered into an Amended Seventh Supplemental Cash Collateral Stipulation, which extended the deadline for the Committee's filing of 510 Claims and Defenses (as defined in the Seventh Supplemental Interim Order) from October 20, 2009 until November 12, 2009;

The Committee, the Debtors and Prepetition ABL Lenders having thereafter having agreed upon procedures governing the Committee's investigation of claims against the Prepetition ABL Lenders and their affiliates, and having presented upon certification of counsel an agreed Second Amended Seventh Supplemental Interim Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a ninth interim cash collateral hearing on November

6

12, 2009 (the **"Ninth Interim Hearing"**), and the Court having entered its Eighth Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a tenth interim cash collateral hearing on December 10, 2009 (the **"Tenth Interim Hearing"**), and the Court having entered its Ninth Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as an eleventh interim cash collateral hearing on January 21, 2010 (the **"Eleventh Interim Hearing"**), and the Court having entered its Tenth Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a twelfth interim cash collateral hearing on February 18, 2010 (the **"Twelfth Interim Hearing"**), and the Court having entered its Eleventh Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a thirteenth interim cash collateral hearing on March 16, 2010 (the **"Thirteenth Interim Hearing"**), and the Court having entered its Twelfth Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a fourteenth interim cash collateral hearing on April 13, 2010 (the **"Fourteenth Interim Hearing"**), and the Court having entered its Thirteenth Supplemental Interim Cash Collateral Order;

\15404525.3

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a fifteenth interim cash collateral hearing on May 12, 2010 (the **"Fifteenth Interim Hearing"**), and the Court having entered its Fourteenth Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a sixteenth interim cash collateral hearing on June 17, 2010 (the **"Sixteenth Interim Hearing"**), and the Court having entered its Fifteenth Supplemental Interim Cash Collateral Order;

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as a seventeenth interim cash collateral hearing on July 15, 2010 (the **"Seventeenth Interim Hearing"**), and the Court having entered its Sixteenth Supplemental Interim Cash Collateral Order (the foregoing Interim Order and the First through the Sixteenth Supplemental Interim Orders, collectively, the **"Interim Orders"**);

A further hearing having been conducted, at the request of the Debtors and with the consent of the Prepetition ABL Agent, as an eighteenth interim cash collateral hearing on August 17, 2010 (the **"Eighteenth Interim Hearing"**); and

The Debtor having filed a motion (the **"DIP Motion"**) for approval of Final Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 and 507: (A) Approving Senior Secured Superpriority Priming Postpetition Financing; (B) Granting Liens And Providing Superpriority Administrative Expense Status; (C) Granting Adequate Protection To Prepetition Secured Parties; (D) Authorizing The Use Of Cash Collateral; And (E) Modifying The Automatic Stay, which was heard concurrently with the Ninth Interim Hearing (the **"Final DIP Hearing"**), and the Court having entered an Order approving the DIP Motion (the **"DIP Order"**) and having

\15404525.3

approved a debtor in possession credit agreement and documents ancillary thereto (the **"DIP Documents"**);

Upon the record made by the Debtors at the Interim Hearing, the Second Interim Hearing, the Third Interim Hearing, the Fourth Interim Hearing, the Fifth Interim Hearing, the Sixth Interim Hearing, the Seventh Interim Hearing, the Eighth Interim Hearing, the Ninth Interim Hearing, the Final DIP Hearing, the Tenth Interim Hearing, the Eleventh Interim Hearing, the Twelfth Interim Hearing, the Thirteenth Interim Hearing, the Fourteenth Interim Hearing, the Fifteenth Interim Hearing, the Sixteenth Interim Hearing, the Seventeenth Interim Hearing, the Eighteenth Interim Hearing and the record in these Cases and the Declaration of William G. Quigley, III in support of First Day Pleadings, and after due deliberation and consideration and sufficient cause having been shown:

IT IS FOUND AND ORDERED that:

1.      *Disposition.* The Motion is granted on a eighteenth interim basis on the terms set forth in this Order (the **"Seventeenth Supplemental Interim Order"**). Any objection to the relief sought in the Motion that has not been previously resolved or withdrawn is overruled on the merits as respects the Interim Order, the Supplemental Interim Order, the Second Supplemental Interim Order, the Third Supplemental Order, the Fourth Supplemental Order, the Fifth Supplemental Interim Order, the Sixth Supplemental Interim Order, the Seventh Supplemental Interim Order, the Amended Seventh Supplemental Interim Order, the Second Amended Seventh Supplemental Interim Order, the Eighth Supplemental Interim Order, the Ninth Supplemental Interim Order, the Tenth Supplemental Interim Order, the Eleventh Supplemental Interim Order, the Twelfth Supplemental Interim Order, the Thirteenth Supplemental Interim Order, the Fourteenth Supplemental Interim Order, the Fifteenth

9

Supplemental Interim Order, the Sixteenth Supplemental Interim Order and this Seventeenth Supplemental Interim Order. This Seventeenth Supplemental Interim Order is valid, binding and enforceable on all parties in interest and fully effective immediately upon entry.

2.      *Jurisdiction and Venue.* This Court has jurisdiction over the Cases and the Motion as a core proceeding and over the affected parties and property under 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. No request has been made for the appointment of a trustee or examiner.

3.      *Notice.* Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, the Interim Hearing and all subsequent interim hearings pursuant to Bankruptcy Rule 4001(b) and Local Bankruptcy Rule 4001-2, constituted appropriate, due and sufficient notice thereof and complied with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules.

4.      *Conflicts.* The order is not intended to modify, diminish, or expand the relative rights, obligations, and priorities of the parties to the Intercreditor Agreement (defined below).

5.      *Prepetition Secured Facilities.* As of the Petition Date, the Debtors were parties to the following agreements:

(a)      Visteon Corporation and 23 of its domestic subsidiaries, all of which are Debtors in these Cases (collectively, the "**Borrowers**"), Ford Motor Company ("**Ford**"), as sole lender, and such other persons and entities as may hereafter acquire interests in the Prepetition ABL Obligations (collectively with Ford, the "**Prepetition ABL Lenders**"), JPMorgan Chase Bank, N.A., as Issuing Bank (the "**Prepetition ABL Issuing Bank**"), and The Bank of New

10

York Mellon, as Administrative Agent for the Prepetition ABL Lenders and the Prepetition ABL Issuing Bank (the "**Successor Prepetition ABL Agent**"), and successor to JPMorgan Chase Bank, N.A., as original administrative agent for the Prepetition ABL Lenders and the Prepetition ABL Issuing Bank (the "**Original Prepetition ABL Agent**"; together with the Successor Prepetition ABL Agent, collectively, the "**Prepetition ABL Agent**"; and together with the Prepetition ABL Lenders and the Prepetition ABL Issuing Bank collectively, the "**Prepetition ABL Secured Parties**"), are parties to that certain Credit Agreement dated as of August 14, 2006, as amended, supplemented or modified by that certain (i) First Amendment to Credit Agreement and Consent dated as of November 27, 2006; (ii) Second Amendment to Credit Agreement and Consent dated as of April 10, 2007; (iii) Third Amendment to Credit Agreement dated as of March 12, 2008; (iv) Fourth Amendment and Limited Waiver to Credit Agreement and Amendment to Security Agreement dated as of March 11, 2009; (v) Fifth Amendment to Credit Agreement dated as of May 13, 2009; (vi) Sixth Amendment to Credit Agreement dated as of May 13, 2009; (vii) Seventh Amendment to Credit Agreement dated as of May 21, 2009; and (viii) Eighth Amendment to Credit Agreement dated as of July 15, 2009 (thus amended, supplemented or modified, "**Prepetition ABL Credit Agreement**");

(b)     (i) Pledge and Security Agreement dated as of August 14, 2006, (ii) Trademark Security Agreement dated as of August 14, 2006, (iii) Patent Security Agreement dated as of August 14, 2006, and (iv) First Lien Aircraft Security Agreement dated as of March 28, 2008 (as amended, supplemented or otherwise modified before the Petition Date, "**Prepetition ABL Security Agreements**"; and together with all other security agreements, pledge agreements, fixture filings, mortgages, deeds of trust, control agreements, and all other collateral and ancillary documentation executed or delivered in connection with the Prepetition

11

ABL Credit Agreement, "**Prepetition ABL Security Documents**"), among the Borrowers and the Prepetition ABL Agent;

    (c)    The Prepetition Term Credit Agreement; and

    (d)    Intercreditor Agreement, dated as of June 13, 2006, as amended (the "**Intercreditor Agreement**"), among the Prepetition ABL Agent, the Prepetition Term Agent, Visteon and specified subsidiaries and affiliates of Visteon.

    6.    *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations in paragraphs 23 and 24 of this Seventeenth Supplemental Interim Order), the Debtors admit, stipulate and agree that:

    (a)    as of the Petition Date, (i) each Borrower was indebted and liable to the Original Prepetition ABL Agent and the Prepetition ABL Lenders, without defense, counterclaim or offset of any kind, concerning the revolving loans made by the Prepetition ABL Lenders to the Borrowers under the Prepetition ABL Credit Agreement in the aggregate principal amount of not less than $88,632,432.13 (plus accrued and unpaid interest), (ii) each Borrower was contingently liable to the Prepetition ABL Issuing Bank under the Prepetition ABL Credit Agreement and to the Prepetition ABL Lenders for an aggregate face amount of not less than $58,827,158.28 on account of the Borrowers' reimbursement obligations for letters of credit issued under the Prepetition ABL Credit Agreement, that remained outstanding as of the Petition Date ($38,521,734 of which have been drawn since the Petition Date), (iii) each Borrower was indebted and liable to the Original Prepetition ABL Agent, the Prepetition ABL Lenders and the Prepetition ABL Issuing Bank for fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses) that are chargeable or reimbursable under

12

the Prepetition ABL Credit Agreement, the Prepetition ABL Security Documents, any amendment, supplement or other modification of any of the foregoing, or any related agreement, instrument or other document executed or delivered in connection with them (the Prepetition ABL Credit Agreement and the Prepetition ABL Security Documents, collectively, "**Prepetition ABL Loan Documents**"), and for charges and other obligations incurred in connection with those loans and letters of credit in each case as provided in the Prepetition ABL Loan Documents, and (iv) the Borrowers were indebted, jointly and severally, in connection with Swap Obligations and Banking Services Obligations (all as defined in the Prepetition ABL Credit Agreement) (items (i) through (iv), collectively, "**Prepetition ABL Obligations**"); the Prepetition ABL Loan Documents and the Prepetition ABL Obligations constitute the legal, valid and binding obligations of the Borrowers, enforceable in accordance with their terms (other than any concerning stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition ABL Obligations is subject to avoidance, recharacterization, reduction, disallowance, impairment, recovery or subordination under the Bankruptcy Code or applicable nonbankruptcy law;

(b)     the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Original Prepetition ABL Agent, in its capacity as such, the Prepetition ABL Lenders, in their capacities as such, or their respective affiliates, subsidiaries, members, agents, officers, directors, employees and attorneys, arising under the Prepetition ABL Loan Documents or otherwise in regard to the Prepetition ABL Obligations;

(c)     the liens and security interests granted to the Original Prepetition ABL Agent (for the ratable benefit of the holders of the Prepetition ABL Obligations) under and in

13

connection with the Prepetition ABL Security Documents (including (i) liens and security interests securing any Banking Services Obligations (as defined in the Prepetition ABL Credit Agreement) provided or to be provided by the Original Prepetition ABL Agent or any former lender or other person under and as specified in the Prepetition ABL Credit Agreement and (ii) the setoff rights described in the Prepetition ABL Loan Documents and arising by operation of law) are valid, binding, perfected, enforceable, first-priority liens on the personal and real property described in the Prepetition ABL Security Documents (the **"Prepetition ABL Collateral"**), subject to subordination in certain instances to the liens of the Prepetition Term Agent for the ratable benefit of the Prepetition Term Lenders in accordance with the Intercreditor Agreement, but not subject to avoidance, recharacterization or subordination under the Bankruptcy Code or applicable nonbankruptcy law and subject and subordinate only to (i) the Carve Out (defined below) and (ii) valid, perfected and unavoidable liens permitted under the Prepetition ABL Loan Documents to the extent those liens are permitted to be senior to or *pari passu* with the liens of the Prepetition ABL Agent on the Prepetition ABL Collateral; and

(d)     the aggregate value of the Prepetition ABL Collateral exceeds the aggregate amount of the Prepetition ABL Obligations as of the Petition Date.

7.     Findings Regarding the Use of Cash Collateral.

(a)     Good cause has been shown for issuance of this Seventeenth Supplemental Interim Order. The Debtors do not have available sources of working capital and financing to carry on the operation of their businesses without the use of the Cash Collateral. The Debtors have an immediate need to use the Cash Collateral to enable them to, among other things, continue the operation of their businesses in an orderly manner, maintain business relationships

14

with customers, suppliers and vendors, make payroll, make capital expenditures and satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtors.

(b) Based on the record presented to the Court at the Interim Hearing, the Second Interim Hearing, the Third Interim Hearing, the Fourth Interim Hearing, the Fifth Interim Hearing, the Sixth Interim Hearing, the Seventh Interim Hearing, the Eighth Interim Hearing, the Ninth Interim Hearing, the Tenth Interim Hearing, the Eleventh Interim Hearing, the Twelfth Interim Hearing, the Thirteenth Interim Hearing, the Fourteenth Interim Hearing, the Fifteenth Interim Hearing, the Sixteenth Interim Hearing, the Seventeenth Interim Hearing, the Eighteenth Interim Hearing and the Final DIP Hearing, the terms of the use of Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration for the Prepetition ABL Lenders' consent.

(c) The Prepetition ABL Agent, the Prepetition ABL Lenders and the Debtors have negotiated in good faith and at arm's length regarding the Debtors' use of the Cash Collateral to fund the administration of the Debtors' bankruptcy estates and continued operation of their businesses. The Prepetition ABL Agent and the Prepetition ABL Lenders have agreed to permit the Debtors to use the Cash Collateral through the Expiration Date (as defined below) all subject to the terms and conditions set forth in this Seventeenth Supplemental Interim Order and in the Prepetition ABL Credit Agreement, including the protection afforded an entity acting in "good faith" under section 363(m) of the Bankruptcy Code.

\15404525.3

(d)     The Debtors have requested immediate entry of this Seventeenth Supplemental Interim Order under Bankruptcy Rule 4001(b)(2) and Local Bankruptcy Rule 4001-2. Use of Cash Collateral under the Sixteenth Supplemental Interim Order terminates as of August 19, 2010, and unless the relief sought by this Seventeenth Supplemental Interim Order is granted, the Debtors' bankruptcy estates will be immediately and irreparably harmed. The use of Cash Collateral in accordance with this Seventeenth Supplemental Interim Order and the Prepetition ABL Credit Agreement is in the best interests of the Debtors' bankruptcy estates.

(e)     The Prepetition ABL Lenders object to the use by the Debtors of the Prepetition ABL Collateral, including the Cash Collateral, except on the terms of this Seventeenth Supplemental Interim Order (or other order that may be issued by the Bankruptcy Court with the consent of the Prepetition ABL Agent and the Prepetition ABL Lenders). The Prepetition ABL Lenders are entitled, under section 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition ABL Collateral to the extent of diminution in value, including for the use of Cash Collateral; the use, sale, lease, depreciation or other diminution in value of the Prepetition ABL Collateral other than the Cash Collateral; and the imposition of the automatic stay under section 362 of the Bankruptcy Code. The Prepetition Term Agent and the Prepetition Term Lenders are entitled to adequate protection of their interests in the Prepetition Term Collateral to the extent of any diminution in the value of their interests in the Prepetition Term Collateral resulting from the use thereof by the Debtor, or the effect of the automatic stay, if any, but, in any case, only to extent permissible under the Intercreditor Agreement.

\15404525.3

8.    *The Cash Collateral.*

(a)    Deposited Funds.  To the extent any funds were on deposit with the Prepetition ABL Agent, or were on deposit with any financial institution subject to the Prepetition ABL Security Documents as of the Petition Date (regardless of whether, at that time, those funds had been collected or made available for withdrawal by any Debtor), those funds ("**Deposited Funds**") are subject to rights of setoff in favor of the Prepetition ABL Agent to the extent set forth in the Prepetition ABL Credit Agreement or as provided by applicable law.  By virtue of those setoff rights and section 553 of the Bankruptcy Code, the Prepetition ABL Obligations are secured by the Deposited Funds for the purposes of these Cases under section 506(a) of the Bankruptcy Code.

(b)    Cash Collateral.  The Debtors' cash, including all cash and other amounts on deposit or maintained in any account subject to control in favor of the Prepetition ABL Agent or Prepetition ABL Lenders, including but not limited to deposit accounts subject to a deposit account control agreement with the Prepetition ABL Agent or in the concentration accounts maintained with the Prepetition ABL Agent (or any of their respective affiliates) (collectively, the "**Collateral Accounts**") and any proceeds of the Prepetition ABL Collateral (including the Deposited Funds or any other funds on deposit at any other institution as of the Petition Date), are "cash collateral" of the Prepetition ABL Lenders within the meaning of section 363(a) of the Bankruptcy Code.  The Debtors' cash, the Deposited Funds, the funds in the Collateral Accounts, all proceeds of Prepetition ABL Collateral and any other Prepetition ABL Collateral (but excluding any proceeds of the Term Loan Priority Collateral), constitutes the Prepetition ABL Lenders' cash collateral within the meaning of Bankruptcy Code §363(a) and are referred to as

17

"**Cash Collateral**." For the purposes of clarity, DIP Proceeds (as such term is defined in the DIP Order) do not constitute Cash Collateral.

(c)     Prepetition Term Lenders' Claimed Cash Collateral.  Prepetition Term Agent and the Prepetition Term Lenders and the Debtors have agreed upon and the Court has entered the Term Cash Collateral Order, which governs the Debtors' use of any proceeds of the Term Loan Priority Collateral ("**Term Cash Collateral**").  Subject to the Intercreditor Agreement, the Prepetition ABL Lenders reserve all rights and arguments with respect to the Term Cash Collateral.  The segregation of, or failure to segregate alleged Term Cash Collateral pursuant to the Term Cash Collateral Order shall not be deemed to support or vitiate the classification of such claimed Term Cash Collateral as Term Priority Collateral or ABL Priority Collateral, the classification of which shall in all cases be governed by the Intercreditor Agreement.

9.     *Use of Cash Collateral.*  Subject to compliance with the Budget (defined below) and the terms and conditions of this Seventeenth Supplemental Interim Order and in the Prepetition ABL Credit Agreement (other than with respect to reimbursement obligations of Letters of Credit provisions), the Debtors are authorized, during the period from the Petition Date through and including the Expiration Date (defined below) to (i) use the Cash Collateral generated from the operation of the Debtors' businesses in the ordinary course through the collection of accounts receivable and the proceeds of other Prepetition ABL Collateral; (ii) use the Cash Collateral in the Collateral Accounts, subject to the limitations and adjustments contained in this Seventeenth Supplemental Interim Order for the purposes authorized pursuant to the Budget or under the terms of this Seventeenth Supplemental Interim Order; (iii) subject to the terms of this Seventeenth Supplemental Interim Order, use up to no more than $20,000,000

18

of Cash Collateral in accordance with the Currency Contracts Order (as defined below) to provide credit support under the Currency Contracts (**"Permitted Currency Contract Deposits"**) as defined in the Order Authorizing The Debtors To Enter Into And Provide Credit Support Under Currency Contracts entered November 12, 2009 (the **"Currency Contracts Order"**); and (iv) subject to the terms of this Seventeenth Supplemental Interim Order, use up to no more than $40,000,000 of Cash Collateral (**"Permitted DIP LC Deposits"**) for the purposes of securing DIP Letter Of Credit Obligations as defined in the "Order Approving Post-Petition Secured Letter Of Credit Facility And Authorizing The Debtors To Pay Certain Fees And Costs Related Thereto" entered November 12, 2009 (the **"DIP LC Order"**). The term **"Expiration Date"** means the earlier of (x) October 20, 2010 or, such later date to which the Prepetition ABL Lenders who hold amounts of the Prepetition ABL Obligations sufficient to issue such a consent pursuant to the Prepetition ABL Credit Agreement (the **"Required Prepetition ABL Lenders"**), may consent in writing, (y) the Effective Date of the Fourth Amended Joint Plan of Reorganization of Visteon Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, Docket No. 3738, or (z) the date specified as the expiration date in any notice of an Event of Default (as defined below) delivered by the Prepetition ABL Agent (acting at the direction of the Required Prepetition ABL Lenders) to the Debtors, the Prepetition Term Agent, the Office of the United States Trustee, and the Committee appointed in these Cases, which Expiration Date must be at least three (3) Business Days (the first day after the date considered which is not a Saturday, Sunday, or Federally observed holiday being defined as a **"Business Day"**) after delivery of such notice. The Debtors must use any cash (except Term Cash Collateral, if any Term Cash Collateral exists) that is not Cash Collateral before using Cash Collateral, and any non-Cash Collateral must be used only for the same purposes as permitted for

19

Cash Collateral in accordance with the terms and conditions of this Seventeenth Supplemental Interim Order and the Budget. If Required Prepetition ABL Lenders and the Debtors consent to an extension of the Expiration Date, they shall notify the Committee and the Prepetition Term Agent. The Required Prepetition ABL Lenders and the Debtors may mutually consent to one or more extensions of the Expiration Date of this Seventeenth Supplemental Interim Order (or a subsequent Supplemental Interim Order) or to the modification of the Budget. The Committee or the Prepetition Term Agent may object to the extension of the Expiration Date established by a Final Order (or a subsequent Supplemental Interim Order) or to the modification of the Budget within 3 Business Days thereafter, and the Debtors may move on 4 Business Days' notice to the Committee and the Prepetition Term Agent for an Order authorizing the extension of the Expiration Date or approval of the Budget as modified.

(a)     Subject to the limitations of this Seventeenth Supplemental Interim Order, including the Budget and the Variance (as defined below), so long as the Expiration Date has not occurred and no Event of Default has occurred and is continuing, the Debtors may use Cash Collateral by delivering to the Prepetition ABL Agent, on a weekly basis, (x) a written request for release of Cash Collateral (**"Cash Collateral Request"**) in the form acceptable to Required Prepetition ABL Lenders and Prepetition ABL Agent in their sole discretion and (y) a certificate, prepared in accordance with the criteria applicable to Borrowing Base Certificates as defined in the Prepetition ABL Credit Agreement, (each, a "**Collateral Base Certificate**"), calculating and classifying the Debtors' accounts receivable and inventory (the "**Collateral Base**") using the same methodology as used by the Debtors prepetition to calculate the Borrowing Base (as defined in the Prepetition ABL Credit Agreement), and providing the supporting information and as had been provided by the Debtors to the Prepetition ABL Secured Parties prepetition, each

20

duly executed by a representative of the Debtors authorized to do so by the Prepetition ABL Credit Agreement and each of which will be deemed to be the Debtors' representation and warranty that (i) the Cash Collateral Request is necessary to fund the Debtors' operating expenses after utilization and application of all other available non-Cash Collateral of the Debtors, (ii) the intended uses thereof are consistent with the terms of this Seventeenth Supplemental Interim Order and the Budget and are necessary, after utilization and application of all other available cash of the Debtors, in order for the Debtors to satisfy their obligations in the ordinary course of business or as otherwise permitted under this Seventeenth Supplemental Interim Order, the Budget, and the Prepetition ABL Credit Agreement; (iii) the Debtors have observed and performed in all material respects all applicable obligations and requirements contained in this Seventeenth Supplemental Interim Order, and satisfied each condition to the continued use of Cash Collateral contained in this Seventeenth Supplemental Interim Order and the Prepetition ABL Credit Agreement to be observed, performed or satisfied by them, and (iv) no Event of Default under this Seventeenth Supplemental Interim Order or the Prepetition ABL Credit Agreement (other than any default thereunder occurring solely as a result of the commencement of these Cases), and no event or condition that with notice or the lapse of time, or both, would constitute an Event of Default, has occurred and is continuing under this Seventeenth Supplemental Interim Order.

(b)     Notwithstanding the provisions of any order entered in these Cases, the Debtors' expenditures of Cash Collateral shall be governed by this Seventeenth Supplemental Interim Order and the Budget, subject to the Variance; provided, however, that the Debtors may pay the (i) reasonable fees and expenses of the Original Prepetition ABL Agent incurred during

21

the term of its appointment, and (ii) reasonable fees and expenses of the Successor Prepetition ABL Agent incurred during the term of its appointment.

10.    Budget

(a)    Format of Budget.    Debtors may use the Cash Collateral solely as provided in this Seventeenth Supplemental Interim Order and the Prepetition ABL Credit Agreement.  The Debtors will only use the Cash Collateral for the payment of the costs and expenses associated with the operation of the Debtors' businesses and the conduct of the Cases in the amounts and categories of the Debtors' Projected Expenditures, Revenues and Collateral Base Forecast delivered to and agreed by the Prepetition ABL Agent and the Required Prepetition ABL Lenders prior to entry of this Seventeenth Supplemental Interim Order and attached hereto as Exhibit "1A" (the "**Existing Budget**") and Exhibit "1B" (the "**Extended Budget**", and together with the Existing Budget, the "**Budget**") and the additional items set forth in this Seventeenth Supplemental Interim Order, including, but not limited to, the Permitted DIP LC Deposits, the Permitted Currency Contract Deposits, and the fees and expenses set forth in Section 9(b) and 11(f) hereof.  The Budget shall set forth by line item net cash flow (including cash receipts and cash disbursements), expenditures (accounts payable) and collateral values projected by the Debtors for the time period from the Petition Date through November 5, 2010 (it being understood that notwithstanding the end date of the Budget, that Cash Collateral is authorized for use only through the earlier of (a) October 20, 2010 and (b) the Effective Date of the Fourth Amended Joint Plan of Reorganization of Visteon Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, Docket No. 3738.

\15404525.3

(b)     Reporting.     Debtors will provide the Prepetition ABL Agent, the Prepetition ABL Lenders with any written financial information or reporting on the same terms as provided in the Prepetition ABL Credit Agreement or any other Prepetition ABL Loan Document. In addition:

(i)     From and after entry of this Seventeenth Supplemental Interim Order, on each Thursday, beginning with Thursday of the first week following entry of this Seventeenth Supplemental Interim Order, Debtors shall deliver to Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a rolling 13 week forecast by line item of net cash flow (including cash receipts and cash disbursements), expenditures (accounts payable) and Collateral Base (each a "**Thirteen Week Forecast**"), which Thirteen Week Forecast shall be subject to the reasonable consent of Required Prepetition ABL Lenders.

(ii)     From and after entry of this Seventeenth Supplemental Interim Order, on each Thursday, beginning with Thursday of the first week following entry of this Seventeenth Supplemental Interim Order, the Debtors shall deliver to Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a report, for the week ending on the preceding Thursday, of actual net cash flow (including cash receipts and cash disbursements), expenditures (accounts payable) and an updated weekly Collateral Base, in each case comparing the Debtors' actual performance to the Budget and to most recent the Thirteen Week Forecast, in a form reasonably satisfactory to the Required Prepetition ABL Lenders, and a certification from a Financial Officer (defined in the Prepetition ABL Credit Agreement), certifying that the reports fairly

23

present the financial condition and results of operations of the Debtors for such period (each an "**Actual Cash Flows and Collateral Base Report**").

(iii)    From and after entry of this Seventeenth Supplemental Interim Order, on each Business Day, beginning on the Business Day following the entry of this Seventeenth Supplemental Interim Order, the Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a report, as of the close of the immediately preceding Business Day, stating the Debtors' actual cash balances.

(iv)    No later than three business days after a request by Prepetition ABL Agent or Required Prepetition ABL Lenders (a single request may be issued by them no more than one time per week), the Debtors shall provide the Prepetition ABL Agent with a report as of the close of business on the date of such request as to the aggregate amount of all collateral securing all Currency Contracts and, if such aggregate amount is in excess of $20.0 million, a description of the Debtors' plans to reduce such aggregate amount.

(v)    No later than three business days after a request by Prepetition ABL Agent or Required Prepetition ABL Lenders (a single request may be issued by them no more than one time per week), the Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a statement of the amount of letters of credit issued under the DIP LC Order and which were outstanding as of the date of such request.

24

(vi)     From and after entry of this Seventeenth Supplemental Interim Order, on each Tuesday, beginning with Tuesday of the second week following entry of this Seventeenth Supplemental Interim Order, the Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a reasonably detailed explanation for any Variance in the Actual Cash Flows and Collateral Base Report from the Budget and the most recent Thirteen Week Forecast which was delivered to the Prepetition ABL Lenders on the previous Thursday, in a form reasonably satisfactory to the Required Prepetition ABL Lenders (each, a "**Budget Variance Report**").

(vii)     From and after entry of this Seventeenth Supplemental Interim Order, on the first Business Day after the 15th day of each month, Debtors shall provide Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee its preliminary monthly results for the immediately preceding month.

(viii)     From and after entry of this Seventeenth Supplemental Interim Order, on the 30th day of each month (if a Business Day, otherwise extended to the next Business Day), Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a report (a) identifying the customers (if any) that have executed Accommodation Agreements, the value in dollars of the financial accommodations received from each customer pursuant to the Accommodation Agreement, and the amount of accounts receivable due from each customer, and (b) providing an update regarding the operations of the Debtors, including, without limitation, material information regarding relationships with carriers, suppliers and vendors after the Petition Date.

\15404525.3

(ix)     From and after entry of this Seventeenth Supplemental Interim Order, on the 30th day after the close of each month (if a Business Day, otherwise extended to the next Business Day), Debtors shall provide to Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a report identifying the Debtors' inventory, in the form used by the Debtors prior to the Petition Date showing production and non-production inventory, adjusted for reserves as calculated in the Debtors' ordinary course; provided, however, that for any month that is the close of a fiscal quarter such report will be provided by the 60th day after the close of the month.

(x)     From and after entry of this Seventeenth Supplemental Interim Order, on the 30th day after the close of each month (if a Business Day, otherwise extended to the next Business Day), Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee a report reflecting the age of the Debtors' accounts receivable listed by account debtor as of the close of the prior month; provided, however, that for any month that is the close of a fiscal quarter such report will be provided by the 60th day after the close of the month.

(xi)     From and after entry of this Seventeenth Supplemental Interim Order, on the 30th day after the close of each month (if a Business Day, otherwise extended to the next Business Day), Debtors shall deliver to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee an accounts payable aging report by vendor identifying post-Petition payables accrued at the time of the close of the prior month; provided, however, that for any month that is the close of a fiscal quarter such report will be provided by the 60th day after the close of the month.

\15404525.3

(xii)     On the 30th day after the close of each month (if a Business Day, otherwise extended to the next Business Day) the Debtors shall provide to the Prepetition ABL Agent, Prepetition ABL Lenders, the Prepetition Term Agent and the Committee, internal basis (i.e., not GAAP-compliant) financial statements for the prior month in the format provided by the Debtors pursuant to the Prepetition ABL Credit Agreement prior to the Petition Date; provided, however, that for any month that is the close of a fiscal quarter such financial statements will be provided by the 60th day after the close of the month.

(xiii)     Any and all reports given or provided under the Term Cash Collateral Order, contemporaneously with the delivery thereof to the Prepetition Term Agent or the Prepetition Term Lenders.

(xiv)     Any and all reports given or provided under any Permitted DIP Financing, contemporaneously with the delivery thereof to the Administrative Agent thereof or the lenders under such Permitted DIP Financing.

(xv)     The Required Prepetition ABL Lenders and the Committee are each permitted to retain expert consultants, counsel, and financial advisors as reasonably required under the circumstances, and the Debtors shall be responsible, jointly and severally for paying the reasonable invoiced expenses of such expert consultants and financial advisors, as, with respect to the Required Prepetition ABL Lenders, to the extent set forth in the Prepetition ABL Credit Agreement.  The Debtors will permit the expert consultants, counsel, of financial advisors retained by the Required Prepetition ABL Lenders and the Committee to have reasonable access to the Debtors' premises and non

27

privileged records during normal business hours upon reasonable notice and will cooperate, consult with and provide the Required Prepetition ABL Lenders' and the Committee's consultants and advisors all non-privileged information and reports as may be reasonably requested by their respective consultants and advisors. (Sub-paragraphs 10(b)(i)–(xv), collectively, the "**Reporting Requirements**").

(c)    Approved Variance to the Budget and Projections:

(i)    Cash Flow. As measured commencing with results shown for the second Post-Petition week of the Budget, as shown in the Budget Variance Reports and Monthly Variance Reports provided, and as reported and measured weekly thereafter at the times set forth in subclause b above, the Debtors' actual cumulative net cash flow for the two (2) full weekly periods preceding and inclusive of the weekly period being considered, divided by two (2), shall not be less than 90% of the cumulative net cash flow set forth on the Budget for the two (2) full weekly periods immediately preceding the weekly period being considered, divided by two (2) (the "Variance").

(d)    Compliance with Budget and Variance. Subject to the Variance, and unless otherwise ordered by the Court after notice and a hearing, the Debtors shall comply with the Budget. The Budget was prepared by the Debtors and it represents the Debtors' actual good faith projection of its net cash flow (including cash receipts and cash disbursements), expenditures (accounts payable) and collateral values post-petition, and the Monthly Cash Collateral Forecast will present the Debtors' actual good faith forecast of their anticipated Cash Collateral needs under this Seventeenth Supplemental Interim Order and the effect, giving effect to such anticipated Cash Collateral usage, on the Collateral Base. The intent and purpose of the

28

Budget is to provide a standard for determining whether the financial performance of the Debtors meet the criteria of the Prepetition ABL Agent and the Prepetition ABL Lenders, for purposes of determining whether there has been a default such that the use of Cash Collateral under this Seventeenth Supplemental Interim Order should terminate and Prepetition ABL Agent and the Required Prepetition ABL Lenders, should be free to pursue default remedies under the terms of this Seventeenth Supplemental Interim Order. Unless the Court orders otherwise after notice and a hearing, the Debtors will not use any Cash Collateral to fund the operations or expenditures of any non-debtor affiliate except in the ordinary course of the Debtors' businesses (i.e., LERA and Maquilladora payments) in accordance with the Budget, and as otherwise agreed in writing by the Required Prepetition ABL Lenders.

(e) Debtors agree with the Prepetition ABL Agent and the Prepetition ABL Lenders that: (i) the Debtors shall not enter into any Currency Contract if immediately after giving effect to such Currency Contract the Debtors would be required to grant security interests to third-parties in, or post or deposit with third-parties, cash collateral and other assets of the Debtors of more than $20.0 million in aggregate as security for all then outstanding Currency Contracts; and (ii) if at any time such aggregate security nonetheless does exceed $20.0 million, the Debtors shall use commercially reasonable efforts to reach agreement with one or more Counterparties to terminate one or more Currency Contracts (or individual transactions thereunder) so as to reduce such aggregate security to an amount less than or equal to $20.0 million within 30 days of such aggregate security first exceeding such amount.

(f) [Reserved].

\15404525.3

(g)     Each party performing Banking Services (defined in the Prepetition ABL Credit Agreement) is authorized to comply with any instructions originated by the Prepetition ABL Agent directing disposition of funds, without further consent of the applicable Debtor, including instructions delivered by the Prepetition ABL Agent (acting at the written direction of the Required Prepetition ABL Lenders) to a party performing Banking Services before the Petition Date. The Debtors and the financial institutions where the Debtors' cash collection accounts are maintained are authorized to implement and/or continue in accordance with the Prepetition ABL Loan Documents daily cash sweeps from the cash collection accounts to Collateral Accounts. The automatic stay is modified and vacated to permit the actions permitted under this Seventeenth Supplemental Interim Order. Except as otherwise provided in this Seventeenth Supplemental Interim Order or in any other Order, the Debtors shall maintain their pre-Petition Date cash management and accounts receivable collection systems, including the Collateral Accounts.

11.     *Adequate Protection.* The Prepetition ABL Agent, the Prepetition ABL Lenders and their affiliates are entitled to adequate protection of their interest in the Prepetition ABL Collateral, including the Cash Collateral, under section 363(e) of the Bankruptcy Code, for and equal in amount to the aggregate diminution in the value of the Prepetition ABL Lenders' interest in the Prepetition ABL Collateral, including any diminution resulting from (x) the Debtors' use of the Cash Collateral under section 363(c) of the Bankruptcy Code, (y) the sale, lease or use by the Debtors (or other decline in value) of the Prepetition ABL Collateral, and/or (z) the imposition of the automatic stay under section 362 of the Bankruptcy Code (the amounts of any diminution are **"ABL Adequate Protection Obligations"**). As adequate protection, the Debtors grant the following:

30

(a)     <u>Prepetition ABL Secured Parties' Adequate Protection Liens</u>.  To secure the ABL Adequate Protection Obligations, the Debtors grant to the Prepetition ABL Agent (for the benefit of the Prepetition ABL Lenders) (effective and perfected retroactively to the Petition Date and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a valid, binding, enforceable and perfected replacement security interest in, and lien on (**"Adequate Protection ABL Liens"**), all of the Debtors' right, title and interest in, to and under all present and after-acquired property and proceeds of the Debtors of the nature and type of the Prepetition ABL Collateral, including the ABL Priority Collateral, Common Collateral and Term Loan Priority Collateral (each term having the meaning defined in the Intercreditor Agreement), and including all cash (except DIP Proceeds) and cash collateral of the Debtors (whether maintained with the Prepetition ABL Agent, any Prepetition ABL Lenders or other financial institution), whether now existing or later acquired and all assets in or on which the Prepetition ABL Agent was granted liens pursuant to the DIP Order (collectively, **"Postpetition ABL Collateral,"** which, for the avoidance of doubt, excludes property owned by Texas Instruments Incorporated and provided to the Debtors on a consignment basis).  Subject to the Carve Out (as defined below) the Adequate Protection ABL Liens granted to the Prepetition ABL Agent (for the ratable benefit of the Prepetition ABL Lenders) shall be (x) a first priority, senior and perfected lien on that portion of the Postpetition ABL Collateral of the same nature as the ABL Priority Collateral (as that term is defined in the Intercreditor Agreement) that is not subject to a validly perfected lien or security interest, with priority over the Prepetition ABL Agent's liens on the Prepetition ABL Collateral and Common Collateral as of the Petition Date and (y) second priority, junior perfected lien on Postpetition ABL Collateral of the same nature and to the same extent as the Prepetition ABL Collateral that

31

is subject to a lien that is senior to the liens securing the Prepetition ABL Obligations (e.g., Term Loan Priority Collateral, as defined in the Intercreditor Agreement, or as provided in the DIP Order), provided, however, that the Adequate Protection ABL Liens shall not include Avoidance Actions (as defined below) and the proceeds thereof;

(b)     Term Secured Parties' Adequate Protection Liens.    To secure the diminution, if any, in the Prepetition Term Lenders' subordinate interests in the Cash Collateral (the amount of any diminution are, "**Term Adequate Protection Obligations**"), the Debtors hereby grant a valid, enforceable, binding and perfected adequate protection lien, which shall be subject and subordinate to the Adequate Protection ABL Liens and the Prepetition ABL Liens, on that portion of the Postpetition ABL Collateral that is of the same nature as the ABL Priority Collateral to the Prepetition Term Agent, for the benefit of the Prepetition Term Lenders (the "**Adequate Protection Term Liens**" and together with the Adequate Protection ABL Liens, the "**Adequate Protection Liens**").   The Adequate Protection Term Liens shall be entitled to distributions on the same basis and subject to the same limitations that are provided in the DIP Order and the Intercreditor Agreement, provided, however, that the Adequate Protection Term Liens shall not include Avoidance Actions and the proceeds thereof.

(c)     The rights of the Prepetition Term Agent and the Prepetition Term Lenders and the Prepetition ABL Agent and the Prepetition ABL Lenders to seek or exercise any rights or remedies (whether in these Cases or any subsequently converted cases) relating to the Adequate Protection Liens and other liens granted in this Seventeenth Supplemental Interim Order shall be governed by the Intercreditor Agreement;

32

(d)    In the event of a conflict between the extent and priority of the liens granted to the Prepetition ABL Secured Parties pursuant to subparagraph 11(a) and the extent and priority of the liens granted to the Prepetition Term Secured Parties pursuant to subparagraph 11(b), or pursuant the Term Cash Collateral Order, the terms of the Intercreditor Agreement shall control. For the avoidance of doubt, any property and proceeds of the Debtors of whatever nature that were not Common Collateral as defined in the Intercreditor Agreement ("**Unencumbered Assets**") prior to the Petition Date shall not be encumbered by the Adequate Protection ABL Lien or the Adequate Protection Term Lien granted herein or in any such Term Cash Collateral Order. Debtors agree that they will not pledge, hypothecate or otherwise encumber any Unencumbered Assets except in connection with a Permitted DIP Financing.

(e)    *Section 507(b) Claims.* The ABL Adequate Protection Obligations and Term Adequate Protection Obligations shall constitute, subject in each case to the payment of the Carve Out on the terms specified in this Seventeenth Supplemental Interim Order, superpriority claims as provided in section 507(b) of the Bankruptcy Code in favor of (i) the Prepetition ABL Agent and the Prepetition ABL Lenders (and their affiliates) and (ii) the Prepetition Term Agent and the Prepetition Term Lenders (and their affiliates), with priority in payment (but subject, in each case, to the payment of the Carve Out) over any and all administrative expenses of the kinds specified or ordered under any provision of the Bankruptcy Code, including sections 105, 326, 328, 330, 331, 503, 506(c) (subject in the case of §506(c) to a Final Order), 507(a), 552, 726, 1113 or 1114 of the Bankruptcy Code, and at all times senior to the rights of the Debtors, any successor trustee or any creditor in these Cases or, to the extent permitted by applicable law, any subsequent proceedings under the Bankruptcy Code (the "**507(b) Claims**"). No cost or expense of administration under sections 105, 503(b), 507(b) or otherwise, including any such cost or

33

expense resulting from the conversion of these Cases under section 1112 of the Bankruptcy Code arising or accruing prior to the Expiration Date may be senior to, or pari passu with, the 507(b) Claims of the Prepetition ABL Agent and the Prepetition Term Agent. Any 507(b) Claims that exist on account of the diminution in value of the Prepetition ABL Agent's and the Prepetition ABL Lenders' interest in the Term Loan Priority Collateral shall be subordinate to (i) the Carve Out, (ii) to the Prepetition Term Agent's and Prepetition Term Lenders' claims under section 364(c)(1) or section 507(b) of the Bankruptcy Code, if any, relating to the diminution in value, if any, of the Prepetition Term Lenders' interest in the Term Loan Priority Collateral which constitutes Term Loan Priority Collateral and (iii) the DIP Agent's and DIP Lenders' claims under section 364 (c)(1) of the bankruptcy Code pursuant to the DIP Order. Any 507(b) Claims that exist on account of the diminution in value of the Prepetition Term Agent's and the Prepetition Term Lenders' interest in the Prepetition ABL Priority Collateral shall be subordinate to the Carve Out and to any claim under section 507(b) of the Bankruptcy Code, if any, in favor of the Prepetition ABL Agent relating to the diminution in value, if any, of the Prepetition ABL Lenders' interest in the Prepetition ABL Priority Collateral and, pursuant to the DIP Order, to DIP Agent's and DIP Lenders section 364(c)(1) claim. As between (i) the Prepetition ABL Agent and the Prepetition ABL Lenders (and their affiliates), (ii) the Prepetition Term Agent and the Prepetition Term Lenders (and their affiliates), and (iii) the DIP Agent and the DIP Lenders, the 507(b) Claims of the ABL Adequate Protection Obligations and Term Adequate Protection Obligations, and the Section 364(c)(1) claims of the DIP Agent and the DIP Lenders shall have the rights and relative priorities as provided in the Intercreditor Agreement;

(f) *Interest, Fees and Expenses.* As further adequate protection for the Debtors' incurrence of ABL Adequate Protection Obligations, the Prepetition ABL Agent (for

34

the benefit of the Prepetition ABL Lenders and any of their affiliates and the Prepetition ABL Issuing Bank under the Prepetition ABL Credit Agreement) will receive from the Debtors (i) to the extent not previously paid pursuant to the Interim Orders, within one Business Day after the entry of this Order, payment of all billed, accrued and unpaid interest on the Prepetition ABL Obligations for the period ending on the Petition Date at the rates applicable immediately before the Petition Date under the Prepetition ABL Loan Documents and all billed, accrued and unpaid letter of credit fees for the period ending on the Petition Date at the rate applicable immediately before the Petition Date under the Prepetition ABL Credit Agreement; (ii) from time to time after the Petition Date, and in no event later than five business days after Debtors' receipt of an invoice therefor, current cash payment of all accrued and unpaid fees and expenses incurred before the Petition Date and all fees and expenses incurred after the Petition Date payable to the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition ABL Issuing Bank or any of their respective affiliates under the Prepetition ABL Loan Documents, including the reasonable fees and disbursements of counsel, financial advisors and other consultants for the Prepetition ABL Agent or the Required Prepetition ABL Lenders, promptly after receipt of invoices from these professionals; and (iii) on the first business day of each month, current cash payment of (x) all accrued and unpaid postpetition interest on the Prepetition ABL Obligations at the rate equal to the Alternate Base Rate plus 3% per annum and (y) letter of credit and other fees at the applicable contract rates applicable on the Petition Date or made applicable thereafter pursuant to the fees customarily charged therefor by the Successor ABL Agent or the Prepetition ABL Issuing Bank, as applicable (collectively, "**Adequate Protection Payments**"), subject, in each case, to (A) the Prepetition ABL Agent's and Required Prepetition ABL Lenders' reservation of their rights to assert claims for the payment of any other amounts provided for in

\15404525.3

the Prepetition ABL Loan Documents, and without prejudice to the rights of any other party to contest these assertions, and (B) the right of the Committee to file a motion on notice to compel the Prepetition ABL Agent's and Required Prepetition ABL Lenders to apply postpetition payments to reduce the principal amount of the Prepetition ABL Obligations pursuant to 11 U.S.C. §506(b) or to avoid and recover such postpetition payments in the event and to the extent that the liens and security interests securing the Prepetition ABL Obligations are avoided, recovered and preserved for the benefit of the estates herein pursuant to one or more Avoidance Actions (as defined below) and the provisions of Section 22 and 23 of this Seventeenth Supplemental Interim Order. None of the fees, costs and expenses payable under this paragraph are subject to separate or prior approval by this Court (but the Court will resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of these payments shall be required to file a motion or interim or final fee application. The Debtors will provide to the Committee appointed in these Cases and the Office of the United States Trustee, within ten days of receipt, a copy of the monthly invoices for the Prepetition ABL Agent's and the Required Prepetition ABL Lenders' professionals, who may object to the reasonableness thereof pursuant to 11 U.S.C. §506(b) by a motion on ordinary notice to the Debtors and Prepetition ABL Agent and the Required Prepetition ABL Lenders. The Committee's objections to Prepetition ABL Agent's or Prepetition ABL Lenders' or Prepetition ABL Issuing Bank's professionals' fees and expenses, if any shall be made no later than the later to occur of (i) thirtieth day after the Expiration Date or (ii) the fifth day after the Debtors provides the Committee with a copy of Prepetition ABL Agent's, Prepetition ABL Issuing Bank's or Prepetition ABL Lenders' professionals' invoices, and any objection not timely made shall be deemed waived.

36

(g)     *Prepayments of DIP Advances.*  To the extent that the DIP Order or the DIP Documents require a prepayment of DIP Obligations (as defined in the DIP Order) from the proceeds of any transaction, any proceeds of ABL Priority Collateral that are received by the Debtors as part of such transaction shall be either, at the Debtors' option, (i) applied to reduce the then-outstanding Prepetition ABL Obligations or (ii) be retained by the Debtors as Cash Collateral and used pursuant to the terms of this Seventeenth Supplemental Interim Order, but shall not, in any event, be used to pay or reduce DIP Obligations.

(h)     *Reporting Requirements.*  The Debtors performance of the Reporting Requirements established in paragraph 10(b) of this Seventeenth Supplemental Interim Order are also required as a part of the Debtors' performance of their Adequate Protection Obligations.

12.    *Carve Out.*  For purposes hereof, the "**Carve Out**" shall mean the sum of:

(a)     all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in subparagraph (c) below) ("**Court and UST Fees**");

(b)     fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in subparagraph (c) below) (the "**Reserved Chapter 7 Trustee Fees**");

(c)     to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code, the

37

Committee, and any other statutory committee hereafter appointed in these Cases (collectively, the "**Professional Persons**") at any time before or on the first Business Day following delivery by the Prepetition ABL Agent (acting at the written direction of the Required Prepetition ABL Lenders) of a Carve Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice ("**Allowed Pre-Trigger Notice Fees**");

(d)     after the first Business Day following delivery by the Prepetition ABL Agent (acting at the written direction of the Required Prepetition ABL Lenders) of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of Professional Fees of Professional Persons ("**Post-Carve Out Trigger Notice Professional Fees**") in an aggregate amount not to exceed $15 million (the amounts set forth in this clause (d) being the "**Post-Carve Out Trigger Notice Cap**"), provided that the Post-Carve Out Trigger Notice Professional Fees shall not include any success, transaction or completion fee or any other similar fee of any Professional Persons retained by the Committee; and

(e)     For the avoidance of doubt, the Carve Out provided in this Seventeenth Supplemental Interim Order, the Carve Out provided in the Term Cash Collateral Order and the Carve Out provided in the DIP Order constitute a single Carve Out.

13.     For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by the DIP Agent, Prepetition Term Agent or Prepetition ABL Agent to the Debtors, the Debtors' counsel, the United States Trustee, the Prepetition ABL Agent, or the

\15404525.3

Prepetition Term Agent or DIP Agent, as the case may be, and counsel to the Committee, which notice may be delivered only after the Expiration Date.

14.     For the avoidance of doubt and notwithstanding anything to the contrary herein, in the DIP Order, the Term Cash Collateral Order, the Prepetition ABL Loan Documents, in the Prepetition Term Credit Agreement, or in any other loan documents executed by and among the parties, the Carve Out shall be senior to (i) all liens securing the Prepetition ABL Obligations, (ii) the Adequate Protection ABL Liens, (iii) the Adequate Protection Term Liens and the liens of the Prepetition Term Secured Parties, (v) the 507(b) Claims, and (iv) any and all other forms of adequate protection, liens or claims securing the Prepetition ABL Obligations or the Prepetition Term Liens with regard to the Carve Out.

15.     Beginning on the first Business Day following the issuance of a Carve Out Trigger Notice, the Debtors shall deposit the Post-Carve Out Trigger Notice Cap amount, the amount of the Chapter 7 Trustee Reserve, and, as and when capable of ascertainment, the amount of the Court and UST Fees (the "**Carve Out Reserve**"), and hold such Carve Out Reserve in a segregated account at a depository to be designated by the Debtors, in trust, to pay the Carve Out.

(a)     If a Carve Out Trigger Notice is issued jointly by the DIP Agent, Prepetition ABL Agent and the Prepetition Term Agent (or by (i) either the DIP Agent or Prepetition Term Agent, and (ii) the Prepetition ABL Agent) each of (x) the ABL Cash Collateral and (y) the Term Cash Collateral and proceeds of the DIP Facility shall be the source of fifty percent (50%) of the funding for the Carve Out Reserve.

\15404525.3

(b)     If a Carve Out Trigger Notice is issued solely by the Prepetition ABL Agent, and not by the Prepetition Term Agent, only the Cash Collateral shall be the source of the funding for the Carve Out Reserve.

(c)     If a Carve Out Trigger Notice is issued solely by one or more of the Prepetition Term Agent and DIP Agent and not by the Prepetition ABL Agent, only the Term Cash Collateral and the proceeds of the DIP Facility shall be the source of the funding for the Carve Out Reserve.   Subclauses a), b) and c) shall be collectively referred to as the **"Carve Out Allocation"**.

(d)     The Debtors' obligations to deposit the Carve Out Reserve and to satisfy the Carve Out shall be senior to (i) all liens securing the Prepetition ABL Obligations, (ii) the Adequate Protection ABL Liens, (iii) the Adequate Protection Term Liens and the liens of the Prepetition Term Secured Parties, (iv) the 507(b) Claims, and (v) any and all other forms of adequate protection, and any other prepetition obligations or claims granted in favor of the Prepetition Term Lenders or the Prepetition ABL Lenders; provided, however, that upon deposit in full of the Post-Carve Out Trigger Notice Cap to the Carve Out Reserve and payment in full of Allowed Pre-Trigger Notice Fees, the foregoing subordination of the liens and claims of the Prepetition Term Agent and the Prepetition ABL Agent shall be limited to the amounts deposited into the Carve Out Reserve, it being understood that such requirements of the deposit of the Post-Carve Out Trigger Notice Cap and payment of the Allowed Pre-Trigger Notice Fees shall not delay, limit or otherwise affect the Prepetition Agent's or Prepetition Term Agent's exercise of remedies under this Seventeenth Supplemental Interim Order or the Term Cash Collateral Order, and that the proceeds of such exercise of remedies shall at all times remain subject to the Carve Out irrespective of their application to the Prepetition ABL Obligations Prepetition Term

40

Obligations, Term Adequate Protection Obligations or the ABL Adequate Protection Obligations. In the event of the liquidation of the Debtors' estates, the amount of the Carve Out not previously deposited into the Carve Out Reserve shall be so deposited prior to any distributions. All rights, liens, and claims of the Prepetition ABL Lenders are subordinated to the payment in full of the Carve Out (whether or not funds in respect thereof are on deposit in the Carve Out Reserve). All funds in the Carve Out Reserve shall be used first to pay the Court and UST Fees and the Reserved Chapter 7 Fees, until paid in full, and then, to the extent the Carve Out Reserve has not been reduced to zero, to pay the Post-Carve Out Trigger Notice Professional Fees up to the Post-Carve Out Trigger Notice Cap. Any excess remaining in the Carve Out Reserve after paying such obligations shall be paid to the Prepetition ABL Agent for the benefit of the Prepetition ABL Lenders, the Prepetition Term Agent for the benefit of the Prepetition Term Lenders, and the DIP Agent for the benefit of the DIP Lenders, in proportion to their respective Carve Out Allocation(s), until the Prepetition ABL Obligations, the Prepetition Term Obligations and the DIP Obligations, as applicable, have been paid in full, in which case any such excess shall be returned to the Debtors.

16.    For the avoidance of doubt, (i) disbursements by the Debtors from the Carve Out Reserve shall not increase or reduce the Prepetition ABL Obligations in and of themselves (although they shall be deemed to increase the ABL Adequate Protection Obligations), (ii) the failure of the Carve Out Reserve to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out, and (iii) so long as a Carve Out Trigger Notice has not been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. § 330 and § 331, as the same may be due and payable, and such payments shall not reduce the Carve Out.

41

(a)    For the avoidance of doubt, the Historical Claims and Defenses Committee Carve Out (as defined below) shall be paid from the Budget and shall not reduce the Professional Fee Carve Out to the extent of fees and expenses incurred prior to a Carve Out Trigger Notice but shall be considered Post-Carve Out Trigger Notice Professional Fees and be paid from the Post-Carve Out Trigger Notice Cap to the extent incurred after a Carve Out Trigger Notice.

17.    *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve Out, no expenses of administration arising or accruing during the term of this Seventeenth Supplemental Interim Order, whether asserted during these Cases or any future proceeding that may result from the Cases, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against or recovered from the Prepetition ABL Collateral or Postpetition ABL Collateral under section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition ABL Agent and the Required Prepetition ABL Lenders, and no consent of the Prepetition ABL Agent may be implied from any other action, inaction, or acquiescence by the Prepetition ABL Agent or the Required Prepetition ABL Lenders (including, without limitation, approval of a Budget).

18.    Reservation of Rights of the Required Prepetition ABL Lenders.

(a)    Under the circumstances known to the Required Prepetition ABL Lenders as of the Petition Date (and consistent with the rights of the Required Prepetition ABL Lenders under section 506(b) of the Bankruptcy Code), and based upon the Required Prepetition ABL Lenders' consent, the adequate protection provided in this Seventeenth Supplemental Interim Order is reasonable and sufficient to protect the interests of the Prepetition ABL Lenders.

42

Notwithstanding any other provision of this Seventeenth Supplemental Interim Order, the grant of adequate protection to the Prepetition ABL Agent and the Prepetition ABL Lenders is without prejudice to the Prepetition ABL Agent's or the Required Prepetition ABL Lenders' rights to request modification of, or further or different adequate protection, and the Debtors' or any other party's objection to a request for other or further adequate protection or to challenge the adequate protection provided hereunder only with respect to prospective adequate protection after the date of such challenge is made.

(b)     Except on the terms as provided in this Seventeenth Supplemental Interim Order, at all times before the Expiration Date, the Debtors are enjoined and prohibited from (i) using the Cash Collateral; (ii) using the Prepetition ABL Collateral; (iii) using Postpetition ABL Collateral; and (iv) applying to any court for an order authorizing the use of the Cash Collateral, Prepetition ABL Collateral or the Postpetition ABL Collateral except for the DIP Order and the DIP LC Order (to which orders the Prepetition ABL Agent and the Required Prepetition ABL Lenders have consented), or one or more other debtor-in-possession financing or letter of credit facilities consented to by the Required Prepetition ABL Lenders, in their sole discretion ("**Permitted DIP Financing**").

19.     Perfection of Adequate Protection Liens.

(a)     The Required Prepetition ABL Lenders are authorized, but not required, to file or record financing statements, trademark filings, copyright mortgages, patent mortgages, real property mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them in this Seventeenth Supplemental Interim Order and the

43

DIP Order. The Adequate Protection Liens granted in this Seventeenth Supplemental Interim Order constitute valid and duly perfected security interests and liens, and the Prepetition ABL Agent and the Prepetition Term Agent and the Prepetition ABL Lenders are not required to file or record financing statements, trademark filings, copyright mortgages, patent mortgages, real property mortgages, notices of lien or similar instruments that otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect security interests and liens, and these liens and security interests are deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, on the dates of entry of this Seventeenth Supplemental Interim Order. The failure of the Debtors to execute any documentation relating to the enforceability, priority or perfection of the Adequate Protection Liens will in no way affect the validity, perfection or priority of the Adequate Protection Liens granted to the Prepetition ABL Agent under this Seventeenth Supplemental Interim Order and the DIP Order.

(b)     If the Prepetition ABL Agent, (acting at the written direction of, and in the sole discretion of the Required Prepetition ABL Lenders), elects to file financing statements, trademark filings, copyright mortgages, patent mortgages, real property mortgages, notices of lien or similar instruments, or otherwise to confirm perfection of Adequate Protection ABL Liens, (i) the Debtors will cooperate with and assist in these efforts, (ii) the stay imposed under section 362 of the Bankruptcy Code is lifted to permit the filing and recording of a certified copy of this Seventeenth Supplemental Interim Order, or any financing statements, trademark filings, copyright mortgages, patent mortgages, real property mortgages, notices of lien or similar instruments, (iii) all documents relating to perfection of the Adequate Protection Liens shall be deemed filed and recorded at the time of and on the date of the Interim Order, and (iv) the

Debtors agree that the reasonable expense thereof shall be payable as an expense reimbursable pursuant to the Prepetition ABL Credit Agreement. Any error, omission or other defect in any Adequate Protection Lien perfection filing will not affect the validity, enforceability, priority or perfection of any Adequate Protection Lien granted under this Seventeenth Supplemental Interim Order and the DIP Order.

(c)     Prepetition ABL Agent, (acting at the written direction of, and in the sole discretion of the Required Prepetition ABL Lenders) may file with or record a certified copy of this Seventeenth Supplemental Interim Order and the DIP Order in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing or recording offices are hereby authorized to accept such certified copy of this Seventeenth Supplemental Interim Order and the DIP Order for filing and recording.

20.     *Termination of Use of Cash Collateral.*     The following occurrences and conditions, unless waived by the Required Prepetition ABL Lenders, constitute Events of Default under this Seventeenth Supplemental Interim Order and the Required Prepetition ABL Lenders may cause the Prepetition ABL Agent to give notice of an Expiration Date, if any such occurrence or condition is not cured within any applicable grace period set forth below:

(a)     The Debtors fail to make any Adequate Protection Payments or other payment to the Prepetition ABL Agent or the Prepetition ABL Lenders, in their capacities as such, as and when required by this Seventeenth Supplemental Interim Order;

(b)     an order is entered reversing, amending, supplementing, staying for a period in excess of 10 days, vacating or otherwise modifying this Seventeenth Supplemental

45

Interim Order, without the prior written consent of each Prepetition ABL Secured Party, or this Seventeenth Supplemental Interim Order ceases for any reason to be in full force and effect;

(c) an Event of Default occurs under the Term Cash Collateral Order and, as a result thereof, the Prepetition Term Lenders discontinue the Debtors' use of the Term Cash Collateral;

(d) an Expiration Date occurs under the Term Cash Collateral Order or the Termination Date occurs under the DIP Order;

(e) if, at any time when (i) any DIP Proceeds are on deposit in the Controlled Accounts (as defined in the DIP Order) and (ii) the amount of Cash Collateral (exclusive of any DIP Proceeds) in Collateral Accounts is less than $150,000,000 in the aggregate, the Debtors use any additional Cash Collateral, unless within two (2) Business Days thereafter DIP Proceeds, in the amount of the lesser of (x) the amount then on deposit in the Controlled Accounts and (y) $150,000,000, minus the amount of then existing amount of Cash Collateral, are expended by the Debtors pursuant to the Budget;

(f) if any Cash Collateral is deposited in the Controlled Accounts, unless such Cash Collateral has been withdrawn from the Controlled Accounts and either (i) deposited to Collateral Accounts or (ii) expended pursuant to the Budget within two (2) Business Days thereafter;

(g) a Budget is approved for the Term Cash Collateral Order or the DIP Order which is not reasonably acceptable to the Required ABL Lenders;

46

(h)     any investigation of the Prepetition ABL Agent or the Prepetition ABL Lenders (except in relation to Term Loan Priority Collateral) is funded using Term Cash Collateral or DIP Proceeds, including but not limited to any portion of the funds allocated for the investigation of the claims and liens of the Prepetition Term Agent or the Prepetition Term Lenders as provided in the Term Cash Collateral Order;

(i)     a plan is confirmed in any of the Cases that does not provide for payment in full in cash of outstanding obligations pursuant to the Prepetition ABL Credit Agreement  on the effective date of a plan of reorganization or liquidation, or any order is entered that dismisses any of the Cases and which order does not provide for such payment, or any Debtors seek support or fail to contest the filing or confirmation of a plan or the entry of an order that does not provide for full and immediate payment and satisfaction of all Obligations under the Prepetition ABL Credit Agreement;

(j)     the Debtors fail to comply with this Seventeenth Supplemental Interim Order, except as otherwise specifically provided herein;

(k)     the exclusive period of the Debtors in the Cases under 11 U.S.C. § 1121(b) terminates;

(l)     the filing of a motion, pleading, or proceeding by any Debtor or their affiliates that could reasonably be expected to result in a material impairment of the rights or interest of any one or more Prepetition ABL Secured Party or a determination by a court with respect to a motion, pleading or proceeding brought by another party that results in a material impairment of the rights, claims and liens relating to the Prepetition ABL Obligations;

47

(m)    except as provided in the Term Cash Collateral Order, which provides such superpriority claims and liens to the extent permissible by the Intercreditor Agreement, any other superpriority administrative expense claim or lien (other than the Carve Out or in connection with a Permitted DIP Financing) which is *pari passu* with or senior to the claims or liens of the Prepetition ABL Secured Parties is granted in the Cases without the written consent of the Prepetition ABL Lender;

(n)    any of the Cases are dismissed or converted to a chapter 7 case; or a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers relating to the operation of the business of any of the Debtors (powers beyond those set forth in 11 U.S.C. §§ 1106(a)(3), (4)) is appointed in any of the Cases, which is not reversed within 30 days of such appointment;

(o)    the Debtors' use of Cash Collateral is not in compliance with the Budget, subject to the Variance;

(p)    the Debtors fail to comply in any material respect with any of the Reporting Requirements and the failure continues unremedied for more than three Business Days, after notice thereof to Debtors from the Prepetition ABL Agent;

(q)    any representation or warranty made in writing by the Debtors in the Reporting Requirements or in any Collateral Base Certificate (other than projected financial information) proves to be incorrect in any material respect when made;

(r)    this Court enters an order granting relief from the automatic stay to the holder or holders of a security interest to permit foreclosure (or the granting of a deed in lieu of

foreclosure or the like) on any assets of any Debtor which have an aggregate value in excess of $5,000,000;

(s)     except as may be provided in the Term Cash Collateral Order and in Permitted DIP Financing, which may provide such superpriority claims and liens to the extent permissible by the Intercreditor Agreement, any of the Debtors creates, incurs or causes to exist any postpetition liens or security interests other than (i) those granted pursuant to this Seventeenth Supplemental Interim Order or under the Permitted DIP Financing, (ii) carriers', mechanics', warehousemen's, repairmen's or other similar liens arising in the ordinary course of business, (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation, (iv) deposits to secure the payment of any post-Petition Date statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; provided that the aggregate value of the liens, pledges or deposits referred to in clauses (iii) and (iv) do not exceed $5,000,000 at any one time; (v) liens or security interests permitted in the ordinary course of the Debtors' business under the Prepetition ABL Credit Agreement, excepting, however, liens or security interests permissible under Section 6.02(dd) of the Prepetition ABL Credit Agreement to the extent that such liens and security interests otherwise permissible under such Section 6.02(dd) exceed $5,000,000 at any time.

(t)     any judgment in excess of $5,000,000 as to any post-Petition Date obligation not covered by insurance is rendered against any Debtor and the enforcement of the judgment has not been stayed;

49

\15404525.3

(u)     the occurrence of a default under paragraph 3 of the Currency Contracts Order;

(v)     the occurrence of a default under paragraph 3 of the DIP LC Order;

(w)     any of the Debtors (or any of their successors and assigns, but excluding the Committee) files a motion or application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition ABL Obligations or any other cause of action against and/or relating to the Prepetition ABL Obligations, the prepetition liens securing the Prepetition ABL Obligations, the Prepetition ABL Agent or the Prepetition ABL Lenders;

(x)     the failure or refusal by the Debtors to continue to cooperate in the ordinary course of business in accordance with the Master Services Agreement between Visteon Corporation and Automotive Components Holdings LLC's ("**ACH**") dated as of September 30, 2005 or to cooperate in the transition of ACH from the Debtors' computer systems in order to cause the transition to be completed on or before the expiration of the Master Services Agreement;

(y)     the failure or refusal by any of the Debtors to manufacture component parts or service parts for Ford or ACH, as the case may be, in the ordinary course of business at prices provided for in current purchase orders or the filing of a motion to reject or the filing of any other motion that has the substantive impact of breaching or modifying without the prior written consent of ACH or Ford, as the case may be, any purchase order for the manufacture of component parts or service parts;

50

(z)     the failure or refusal by any of the Debtors to timely pay or reimburse Ford or ACH, as the case may be, for any wage, benefit or "retiree benefit" (having the meaning established in section 1114 of the Bankruptcy Code) expense that any of the Debtors is contractually obligated to pay Ford or ACH (irrespective of the time at which such payment is to be paid), unless so ordered by a final and non-appealable order of the Bankruptcy Court, which Debtors shall not request or support;

(aa)     the failure or refusal by Debtors to lease employees to ACH in accordance with the terms and conditions of the Visteon Salaried Employee Lease Agreement between Visteon Corporation and ACH dated as of October 1, 2005 and amended on March 30, 2006; and

(bb)     the failure of the Debtors to have filed with the Court and obtained the Final Order on or before October 20, 2010, provided, however, that for the convenience of the Court, such period shall be deemed extended to the first Business Day upon which the Court can, in its convenience, hear proceedings on the issuance of the Final Order.

The Debtors must promptly provide written notice to the Prepetition ABL Agent (with a copy to counsel for the Committee appointed in the Cases, the Prepetition Term Agent, the DIP Agent and the United States Trustee) if it becomes aware of any facts relating to the occurrence of any Event of Default or any event that upon notice, lapse of time or both would become and Event of Default.

21.     Remedies on Expiration Date.

(a)     *Remedies Available Without Notice.*     On the Expiration Date, without further Order of the Court, and the automatic stay having been hereby lifted for such purposes,

(i) the Debtors' right to use the Cash Collateral on the terms and conditions set forth in this Seventeenth Supplemental Interim Order shall terminate automatically, and (ii) the unpaid balance of the Prepetition ABL Obligations (and any unpaid and accrued interest) and Adequate Protection Payments shall automatically become immediately due and payable.

(b) *Remedies Available Upon Five Business Days' and Thirty Calendar Days' Notice.* Prepetition ABL Agent and the Required Prepetition ABL Lenders may, after five Business Days' written notice to the Debtors (with a copy to counsel for the Committee (and any other statutory committee appointed in these Cases), the Prepetition Term Agent, the DIP Agent and the United States Trustee), exercise the rights and remedies available under this Seventeenth Supplemental Interim Order or applicable law, including (i) setoff against the Prepetition ABL Obligations of (a) amounts in any account of the Debtors maintained with the Prepetition ABL Agent or any other financial institution subject to the Prepetition ABL Security Documents, respectively, and (b) any accounts payable of Ford, ACH or any of their respective affiliates for amounts otherwise payable to the Debtors relating to obligations under a purchase order or invoice, conditioned, however, on no order prohibiting these actions having been entered by this Court during the five Business Day notice period, the automatic stay being hereby lifted for such purposes, subject to such notice; and provided further, that nothing herein shall preclude the Debtors from seeking an emergency hearing in the Court on at least two Business Day's notice to the Prepetition ABL Agent solely to determine whether an Event of Default has occurred; and (ii) upon 30 calendar days notice to the Debtors, the Committee and the Prepetition Term Agent (the latter, as required by the Intercreditor Agreement), Prepetition ABL Agent may move for relief from the automatic stay to exercise any other rights and remedies available under this Seventeenth Supplemental Interim Order or applicable law, including foreclosing on and selling

\15404525.3

all or a portion of the Prepetition ABL Collateral or Postpetition ABL Collateral in order to collect the Prepetition ABL Obligations and the ABL Adequate Protection Obligations.

(c)     Subject to the funding of the Carve Out Reserve, the Prepetition ABL Agent and the Prepetition ABL Lenders are entitled to apply the payments or proceeds of the Prepetition ABL Collateral and Postpetition ABL Collateral in accordance with the provisions of the Prepetition ABL Loan Documents, and in no event will the Prepetition ABL Agent or any of the Prepetition ABL Lenders be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition ABL Collateral, the Postpetition ABL Collateral or otherwise. Notwithstanding the occurrence of the Expiration Date, all of the rights, remedies, benefits and protections provided to the Prepetition ABL Agent and the Prepetition ABL Lenders under this Seventeenth Supplemental Interim Order survive the Expiration Date.

22.     Preservation of Rights Granted Under the Order.

(a)     Subject to the Carve Out, and unless ordered by the Court after notice and hearing, and except as may be provided in the Term Cash Collateral Order or Permitted DIP Financing, which may provide such superpriority claims and liens to the extent permissible by the Intercreditor Agreement, no claim or lien having a priority superior to or *pari passu* with those granted by this Seventeenth Supplemental Interim Order to the Prepetition ABL Agent and the Prepetition ABL Lenders may be granted or allowed while any portion of the Prepetition ABL Obligations or the ABL Adequate Protection Obligations remain outstanding, and (ii) the Adequate Protection ABL Liens will not be (x) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' bankruptcy estates under section 551

53

of the Bankruptcy Code or (y) subordinated to or made *pari passu* with any other lien or security interest, whether under sections 363 or 364 of the Bankruptcy Code or otherwise.

(b)     Intentionally omitted.

(c)     If a provision of this Seventeenth Supplemental Interim Order is subsequently reversed, modified, vacated or stayed, the reversal, modification, vacatur or stay will not affect the validity of any Adequate Protection ABL Obligations incurred before the actual receipt of written notice by the Prepetition ABL Agent of the effective date of the reversal, modification or vacating of the stay, or the validity or enforceability of any lien or priority authorized or created by this Seventeenth Supplemental Interim Order relating to any Adequate Protection ABL Obligations.  Notwithstanding reversal, modification, vacatur or stay of this Seventeenth Supplemental Interim Order, any Adequate Protection ABL Obligations incurred by the Debtors to the Prepetition ABL Agent or the Prepetition ABL Lenders before the actual receipt of written notice by the Prepetition ABL Agent of the effective date of reversal, modification, vacatur or stay, will be governed in all respects by the original provisions of this Seventeenth Supplemental Interim Order, and the Prepetition ABL Agent and the Prepetition ABL Lenders are entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code and this Seventeenth Supplemental Interim Order relating to the Adequate Protection ABL Obligations.

(d)     Except as expressly provided in this Seventeenth Supplemental Interim Order, the Adequate Protection ABL Liens, to the fullest extent permissible under the Bankruptcy Code and existing law, the 507(b) Claims and all other rights and remedies of the Prepetition ABL Agent and the Required Prepetition ABL Lenders granted by the provisions of

54

this Seventeenth Supplemental Interim Order will survive, and will not be modified, impaired or discharged by the entry of an order converting any of the Cases to a case under Chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, or the entry of an order confirming a plan in any of the Cases. The terms and provisions of this Seventeenth Supplemental Interim Order, unless otherwise ordered by the Court after a notice and a hearing, will continue in these Cases, in each of these Cases if they cease to be jointly administered, or in any superseding Chapter 7 cases under the Bankruptcy Code, and the Adequate Protection ABL Liens, the 507(b) Claims and all other rights and remedies of the Prepetition ABL Agent and the Required Prepetition ABL Lenders granted by the provisions of this Seventeenth Supplemental Interim Order will continue in full force and effect until the Adequate Protection ABL Obligations (including any accrued and unpaid interest) are indefeasibly paid in full.

23.     *Effect of Stipulations on Third Parties.*  Unless by (i) the earlier of (A) October 20, 2010, and (B) the Effective Date of the Fourth Amended Joint Plan of Reorganization of Visteon Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, Docket No. 3738, (ii) a later date as agreed to, in writing, by the Required Prepetition ABL Lenders, or (iii) such later date as may be established by the Court, for cause arising solely from the refusal to respond or unreasonable delay in responding on the parts of the Debtors or the Required Prepetition ABL Lenders Defense Group (as defined below) to timely and reasonable information requests made by the Committee pertaining to Committee Historical Claims and Defenses (as defined below), the Committee having  waived the right to seek further extensions from the Court on any basis other than such unreasonable refusal or delay (the "**Committee Historical Claims and Defenses Investigatory Period**") (a) the Committee appointed in these

55

Cases timely files with the Court and serves on the Prepetition ABL Agent, Prepetition ABL Lenders, the Debtors, and Term Lenders a motion seeking derivative standing (a **"Historical Claims and Defenses Derivative Standing Motion"**) to file on behalf of the estate an adversary proceeding or contested matter seeking any affirmative or negative relief against the Required Prepetition ABL Lenders, ACH or any of their respective affiliates or subsidiaries, or any of their respective present or past members, representatives, attorneys, employees, agents, consultants, or directors (collectively and individually, the **"Required Prepetition ABL Lenders Defense Group"**), including but not limited to, (i) damages, (ii) reimbursement, (iii) rescission, (iv) disallowance, recharacterization or equitable subordination of any of Required Prepetition ABL Lenders Defense Group's claims, including but not limited the Prepetition ABL Obligations, (v) avoidance and recovery of fraudulent transfers, (vi) imposition of control liability, (vii) any 510 Claims and Defenses as defined in the Second Amended Seventh Supplemental Interim Cash Collateral Order or (viii) any other any claims, counterclaims or causes of action, objections, contests or defenses arising from or relating to the historical relations between any one or more of the members of the Required Prepetition ABL Lenders Defense Group and the Debtors, including but not limited to their former ownership relationship, asset and technology transfers, expense and employee sharing relationships, or other historical relationships and transactions between the Required Prepetition ABL Lenders Defense Group, on one side, and the Debtors, or any one or more of them, or any of their affiliates, on the other side (collectively, the **"Historical Claims and Defenses"** and, to the extent asserted by the Committee, **"Committee Historical Claims and Defenses**), (b) the Court grants the Committee Historical Claims and Defenses Derivative Standing Motion and (c) a final and non-appealable order has been entered in favor of the Committee in an adversary proceeding or contested matter filed and prosecuted by the

\15404525.3

Committee pursuant to a Historical Claims and Defenses Derivative Standing Motion (the **"Committee Historical Claims and Defenses Litigation"**) sustaining the Committee Historical Claims and Defenses against the Required Prepetition ABL Lenders Defense Group, then, solely as to the Committee, and any creditor whose rights, claims or interests are or could have been represented by the Committee, in whole or in part, such Committee Historical Claims and Defenses shall, except as otherwise provided in the final order(s) concluding the Committee Historical Claims and Defenses Litigation, all Committee Historical Claims and Defenses shall be extinguished, barred, waived, released and discharged (the **"Committee Historical Claims and Defenses Bar"**). The Committee Historical Claims and Defenses Bar shall not bar, limit, or otherwise affect any Historical Claims and Defenses, if any, which may be asserted by the Debtors or any chapter 7 or 11 trustee as may hereafter be appointed, subject, however, to the Debtor's stipulations set forth in paragraphs 5 and 6 hereof (**"Debtor's Reserved Historical Claims"**) but it shall bar Historical Claims and Defenses which are or may be asserted derivatively by any creditor or creditors whose rights, claims or interests are or could have been represented in whole or in part by the Committee.

(a)     If, prior to the end of the Committee Historical Claims and Defenses Investigatory Period, the Committee files and diligently prosecutes a Historical Claims and Defenses Derivative Standing Motion, the Committee Historical Claims and Defenses Investigatory Period shall be extended until the Historical Claims and Defenses Derivative Standing Motion is heard and decided, and if the Historical Claims and Defenses Derivative Standing Motion is granted, the Committee shall be required to file the Committee Historical Claims and Defenses Derivative Litigation within thirty (30 days thereafter (or such later date(s) as may be agreed to in writing by the Required Prepetition ABL Lenders) or otherwise the

57

Committee Historical Claims and Defenses Derivative Litigation shall be timed barred (the **"Committee Historical Claims and Defenses Bar Date"**). If no Historical Claims and Defenses Derivative Standing Motion is timely filed, or if no Committee Historical Claims and Defenses Litigation has been filed on or prior to the Committee Historical Claims and Defenses Bar Date, and except as otherwise provided by final and non-appealable judgment(s) entered in favor of the Committee in Committee Historical Claims and Defenses Litigation, then the Committee Historical Claims and Defenses will be deemed extinguished, barred, waived, released and discharged, and all claims of the Required Prepetition ABL Lenders Defense Group, including, but not limited to, the Prepetition ABL Obligations, shall be deemed to be held free of any Historical Claims and Defenses

(b)     For the avoidance of doubt:

(i)     Committee Historical Claims and Defenses are separate from and independent of any claims set forth in the Committee's Motion Requesting Authorization to Prosecute Certain Claims on Behalf of the Debtors' Estates, Docket Entry 988, and Reservation of Rights to Object to Certain Liens Which May Be Asserted by Prepetition ABL Secured Parties by the Committee, Docket Entry 989, filed on September 16, 2009, (the **"Existing Committee Reservation and Motion"**), and the Committee Historical Claims Investigatory Period shall not be deemed to extend the Investigatory Period with respect to the Existing Committee Reservation and Motion;

(ii)     the Committee Historical Claims and Defenses Investigatory Period and the Committee Historical Claims and Defenses Bar Date apply only to the giving of notice concerning and the commencement of adversary proceedings or

58

contested matters concerning Committee Historical Claims and Defenses, and nothing herein shall affect or limit in any manner the rights of the Committee, using resources other than Cash Collateral or Term Cash Collateral, to investigate or commence any cause of action against the Prepetition Secured Parties (or any other party) relating to matters other than Committee Historical Claims and Defenses and the matters set forth in the Existing Committee Reservation and Motion (or any litigation commenced pursuant thereto by the Committee pursuant thereto (the **"Prepetition ABL Claims and Defenses"**); and

(iii)     The Required Prepetition ABL Lenders Defense Group reserves and retains (a) all objections to the Historical Claims and Defenses Derivative Standing Motion and (b) any objection to Professional Fees of a Professional Person incurred in investigating Committee Historical Claims and Defenses, prosecuting or opposing the Historical Claims and Defenses Derivative Standing Motion, prosecuting Committee Historical Claims and Defenses Litigation, prosecuting any Prepetition ABL Claims and Defenses or any other contested matter or adversary proceeding assert claims or defenses against any of the Required Prepetition ABL: Lenders Defense Group.

(iv)     In consideration of the Required Prepetition ABL Lenders' agreement to the Debtors' retention of the Debtor's Reserved Historical Claims notwithstanding their agreement to fund the Committee Historical Claims and Defenses Committee Carve Out and the establishment of the Committee Historical Claims and Defenses Bar Date, the Committee and the Debtors agree to the entry of a Final ABL Cash Collateral Order on substantially the terms and conditions of this Seventeenth Supplemental Interim Order.

\15404525.3

24.     *Limitation On Use of Collateral.*     Except as otherwise provided in this Seventeenth Supplemental Interim Order or in a subsequent order of this Court, no Cash Collateral, Term Cash Collateral, DIP Proceeds, ABL Priority Collateral, or the Carve Out may be used to assert the Prepetition ABL Claims and Defenses Derivative Standing Motion, the Prepetition ABL Claims and Defenses, the Committee Historical Claims and Defenses, or Historical Claims and Defenses Derivative Standing Motion, or to seek to modify materially and to their disadvantage any of the rights granted to the Prepetition ABL Agent or the Prepetition ABL Lenders pursuant to any of the Interim Orders previously entered herein or this Seventeenth Supplemental Interim Order without  the Required Prepetition ABL Lenders' prior written consent, provided that up to $500,000 of Cash Collateral in the aggregate may be used to pay the allowed fees and expenses of Professional Persons retained by the Committee incurred and recorded by the Committee's Professional Persons prior to the end of the Committee Historical Claims and Defenses Investigatory Period, directly in connection with investigating Committee Historical Claims and Defenses (the **"Committee Historical Claims and Defenses Committee Carve Out"**).  The Committee Historical Claims and Defenses Committee Carve Out shall be used solely for investigation of Historical Claims and Defenses and shall not used for the purpose of prosecuting any of the Existing Committee Reservation and Motion, the Historical Claims and Defenses Derivative Standing Motion or the Committee Historical Claims and Defenses Litigation.

(a)     All Committee Professionals shall bill to billing and expense sub-files specific to the investigation of Committee Historical Claims and Defenses, and only time and expense matters categorized as investigatory, and actually constituting investigation of

\15404525.3

Committee Historical Claims and Defenses, may be paid from the Historical Claims and Defenses Committee Carve Out.

(b)     Nothing herein shall authorize (i) the Committee to use the Historical Claims and Defenses Committee Carve Out to investigate other claims or causes of action other than Historical Claims and Defenses against any of the Required Prepetition ABL Lenders Defense Group; or (ii) authorize the use of the Historical Claims and Defenses Committee Carve Out to investigate or initiate claims or causes of action of the types otherwise described in the Term Cash Collateral Order for which Term Cash Collateral may be used.

(c)     Nothing herein shall affect or limit in any manner the rights of the Committee (using resources other than the Historical Claims and Defenses Committee Carve Out, the Carve Out, Cash Collateral, DIP Proceeds or Term Cash Collateral) (i) to investigate or commence any other cause of action against any of the Required Prepetition ABL Lenders Defense Group, any other Prepetition Secured Parties, or any other party relating to matters other than Existing Committee Reservation and Motion and the Committee Historical Claims and Defenses, or (ii) to investigate or commence any other cause of action against the Prepetition Term Agent, Prepetition Term Lenders, the Required Prepetition ABL Lenders Defense Group (or any other party) for any of the purposes described in sub-paragraphs 20(e)(i),(ii) or (iii) of the Term Cash Collateral Order.

25.     *Priority Among Prepetition Secured Parties.*  Notwithstanding anything to the contrary herein or in any other order of this Court, the relative priorities and rights of the Prepetition ABL Agent and the Prepetition ABL Lenders, the Prepetition Term Agent and Prepetition Term Lenders (collectively, the "**Prepetition Secured Parties**" and individually,

\15404525.3

each, a "**Prepetition Secured Party**") (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to the adequate protection granted hereunder), and the DIP Agent and the DIP Lenders under Permitted DIP Financing shall continue to be governed by the Intercreditor Agreement. The relative adequate protection rights granted hereunder to the Prepetition ABL Secured Parties, under the Term Cash Collateral Order to the Prepetition Term Secured Parties, shall (taking into consideration whether such claims are secured and the entity(ies) against which such liens and claims are held or not held) be governed by the Intercreditor Agreement, which survives and is fully applicable as between them pursuant to section 510 of the Bankruptcy Code and remains in full force and effect, constituting enforceable, valid and binding obligations of the Prepetition ABL Agent, the Prepetition Term Lender, the Prepetition ABL Lenders, the Prepetition Term Lenders, as applicable, under section 510(a) of the Bankruptcy Code.

26. *Binding Effect; Successors and Assigns.* To the fullest extent permissible under the Bankruptcy Code and existing law, the provisions of the Interim Orders and this Seventeenth Supplemental Interim Order, including all findings, are binding on all parties in interest in these Cases, including the Prepetition ABL Agent, the Prepetition ABL Lenders, the Committee appointed in these Cases, and the Debtors and their respective successors and assigns (including any Chapter 7 or Chapter 11 trustee subsequently appointed or elected for the bankruptcy estate of any of the Debtors) and inures to the benefit of the Prepetition ABL Agent, the Prepetition ABL Lenders and the Debtors and their respective successors and assigns; provided that the Prepetition ABL Agent and the Prepetition ABL Lenders have no obligation to extend any financing to any Chapter 7 trustee or similar responsible person appointed for the bankruptcy estates of the Debtors. Except as modified by this Seventeenth Supplemental Interim Order or

\15404525.3

the Prepetition ABL Credit Agreement, and subject to the Bankruptcy Code, the Prepetition ABL Loan Documents and the Intercreditor Agreement and the terms and provisions of these documents remain in full force and effect as they relate to the Prepetition ABL Obligations. To the extent that there is a conflict among the Motion, the Prepetition ABL Loan Documents, Interim Orders, and this Seventeenth Supplemental Interim Order, this Seventeenth Supplemental Interim Order will govern and control.

27. *Final Hearing.* The Final Hearing will be held on September 16, 2010 at 11:30 a.m. (prevailing Eastern Time) before this Court.

28. *Service of Order and Objections.* Notice Of Final Hearing And Final Cash Collateral Order. The Debtors shall, within one (1) Court day after the entry of this Seventeenth Supplemental Interim Order, mail by overnight mail (i) a notice of the Final Hearing and the briefing schedule thereon as set forth below and (ii) copies of this Seventeenth Supplemental Interim Order on: (a) the United States Trustee; (b) counsel for the Prepetition ABL Agent; (c) counsel for Term Agent; (d) counsel for the Indenture Trustee; (e) the thirty largest unsecured creditors as set forth in the list filed by the Debtors pursuant to Bankruptcy Rule 1007(d); (f) all parties in interest on whom service is required by the Debtors' order limiting notice entered in these Cases and their counsel; (g) all known holders of liens on the Debtors' assets; (h) counsel to the Committee; and (i) the other parties on whom the Court directed service on the record. Objections by any party in interest to the Final Cash Collateral Order shall be filed with this Court and served by overnight mail or personal delivery to the parties listed below at the addresses set forth below no later than September 10, 2010 at 4:00 p.m. (prevailing Eastern time) subject to extension. At the Final Hearing, this Court will consider the objections properly filed and served. Any party in interest objecting to the relief sought at the Final Hearing must serve a

63

written objection on (i) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, Attn: Marc Kieselstein, attorneys for the Debtors; (ii) McGuireWoods LLP, 625 Liberty Avenue, 23rd Floor, Pittsburgh, PA 15222, Attn: Mark E. Freedlander and Miller Canfield Paddock and Stone, P.L.C., 150 W. Jefferson Avenue, Suite 2500, Detroit, MI 48226, Attn: Stephen S. LaPlante, attorneys for the Prepetition ABL Lenders; (iii) Bingham McCutchen LLP, One State Street, Hartford, CT 06103, Attn: Michael Reilly, Amy Kyle, and Peter Bruhn, counsel to the ad hoc committee of Prepetition Term Lenders; (iv) William P. Bowden and Gregory A Taylor, Ashby & Geddes, P.A., 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899 and Robert J. Stark, Brown Rudnick LLP, Seven Times Square, New York, NY 10036 and Howard L. Siegel, Brown Rudnick LLP, City Place 185 Asylum Street, Hartford, CT 06103 and (v) the Office of the United States Trustee for the District of Delaware, and file the objection with the Clerk of the United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by parties who are required to be served objections no later than September 10, 2010 at 4:00 p.m. (prevailing Eastern time).

Date: August 7, 2010

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

\15404525.3